IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

    Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ,
WILLIAM J. GOLZ,
MARCUS J. GOLZ,
MATTHEW J. GOLZ, and
UNKNOWN HEIRS AND CLAIMANTS OF THE ESTATE OF VERNA
    MAE GOLZ,

    Defendants.

---

**PLAINTIFF'S RESPONSE TO DR. GOLZ'S
MOTION FOR SUMMARY JUDGEMENT**

---

Dr. Golz's motion to dismiss the Estate should be denied. In his motion, Dr. Golz contends that the United States' foreclosure claim against the Estate is untimely under a state probate statute. Doc. 103 at 10, 11. But that state probate statute does not apply to mortgages and it does not apply to claims brought by the United States.

Dr. Golz also contends that the claim against the Estate should be dismissed because he has recently executed a personal representative's deed transferring the Estate's property to himself. Doc. 103 at 10, 11. But that transfer does not extinguish the United States' claim against the Estate.

Finally, Dr. Golz argues that the property that is the subject of this foreclosure action remained his mother's principal residence during her lifetime. Doc. 103 at 5, 8-9. Construing

1

this argument liberally, Dr. Golz might be seeking to dismiss the foreclosure claim to the extent one event of default occurred when Ms. Golz ceased to reside at the property. To the extent Dr. Golz's motion seeks to dismiss Plaintiff's claim that an event of default occurred when the Property ceased to be Ms. Golz's "principal residence," a genuine issue of material fact precludes summary judgment for Dr. Golz.[1]

## BACKGROUND

When Verna Mae Golz passed away in 2014, she owed the Department of Housing and Urban Development ("HUD") more than $250,000 to pay back withdrawals she had made under a Home Equity Conversion Mortgage loan, referred to as a "reverse mortgage." The debt was secured by Deeds of Trust on 130 Beaver Creek Drive in Nederland, Colorado (the "Property").

After Ms. Golz passed away, the Property was kept by her son Dr. Golz. Dr. Golz is the personal representative and sole heir of the Estate. He lives in Arizona, but uses the Property as a second home. *See* Doc. 64 (Amended Answer) at ¶ 12. The debt has not been repaid.

In its complaint, HUD alleges two separate events of default, each of which was sufficient on its own to trigger the obligation to repay the loan. One event of default was Ms. Golz's death. Doc. 31 (Amended Complaint) at ¶ 47. The other event of default occurred when Ms. Golz was still alive: Years before her death, Ms. Golz moved out of the Property and went to live in Arizona, breaching the terms of her reverse mortgage. Doc. 31 ¶¶ 49-51.

---

[1] The Court converted Dr. Golz's motion to a motion for summary judgment, ordering that Plaintiff's response be filed no later than 21 days after service of the motion. Doc. 105. Plaintiff received notice of the motion through the Court's ECF Notice of Electronic Filing transmitted on April 26, 2018. Dr. Golz has not otherwise served Plaintiff. Plaintiff's response was therefore due, at the soonest, on May 17, 2018. *See* Fed. R. Civ. P. 5(b)(3). The Court extended that deadline to May 24, 2018. Doc. 114.

The notes and deeds for Ms. Golz's mortgage provide that the "Lender may require immediate payment in full … if: [t]he Property ceases to be the principal residence of a Borrower…" Doc. 31-2 at § 7(B)(i); Doc. 31-4 at § 9(b)(i). The term "principal residence" is defined in the loan agreement to mean "the dwelling where the Borrower maintains his or her permanent place of abode, and typically spends the majority of the calendar year." Doc. 31-1 at § 1.8. These provisions protect the lender against absentee borrowers, who might let the property deteriorate, decreasing the value of the security for the loan.

The Property in Nederland ceased to be Ms. Golz's principal residence years before she died. On May 19, 2010, Ms. Golz signed her last will and testament, stating that she was "Verna Mae Golz, of Scottsdale, Arizona." Ex. 1 at 1. The will was signed and notarized in Arizona. When Ms. Golz died in 2014, Dr. Golz submitted a sworn statement to the Arizona probate court stating that Ms. Golz was "domiciled in Maricopa County, State of Arizona." Ex. 2 at ¶ 2.

## **DISPUTED FACTS**

This Court's practice standards require parties to comply with the presiding Article III Judge's practice standards for any motion for summary judgment. MEH Practice Standards, III.F. Judge Jackson's practice standards "limit motions for summary judgment and responses to 20 pages (replies 5 pages)." RBJ Practice Standards at 2. This Court's practice standards (III.F) also provide that responses to summary judgment motions shall include specific responses admitting or denying each of the moving party's undisputed facts. In this instance, however, the pending motion was converted from a motion to dismiss to a motion for summary judgment, and does not include a statement of undisputed facts. Plaintiff therefore addresses the documents that Dr. Golz attached to his motion, and sets forth pertinent additional facts as follows:

**Dr. Golz's documents**

1.    *The living will* –  Ms. Golz's 2009 living will, attached as Exhibit A to Dr. Golz's motion, stated that Ms. Golz was "a resident of and domiciled in the County of Boulder." But the living will was signed by Ms. Golz in Arizona. And even if the living will was evidence of Ms. Golz's Colorado residency in June of 2009, it is directly contradicted by Ms. Golz's sworn statement in her last will and testament in May 2010, in which she stated that she was "Verna Mae Golz, of Scottsdale, Arizona," Ex. 1, and by Dr. Golz sworn statement in 2014 that Ms. Golz was "domiciled in Maricopa County, State of Arizona." Ex. 2 at ¶ 2.

2.    *The PO Box* –  A July 2010 post office receipt, attached as Exhibit B to Dr. Golz's motion, reflects that a personal check was used to pay for a post office box under Ms. Golz's name on July 29, 2010. There is no evidence that it was her personal check that was used, or that she appeared in person at the post office.

3.    *An occupancy letter* –  A 2012 certification of occupancy letter, attached as Exhibit C to Dr. Golz's motion (a slightly more legible copy of the letter is attached as Exhibit 3 to this response), does not establish that Ms. Golz was actually spending time at the Property. Notably, the certification letter was sent by the loan servicer to Ms. Golz's lawyer at The Cohen Law Group, at a PO Box in Nederland (a different PO Box than the one on the receipt at Ex. B) on January 4. It was not signed by Ms. Golz until January 12. It was not submitted by Ms. Golz, but by her lawyer. And it was not sent back to the loan servicer until January 17 (with a copy to Dr. Golz, but not to Ms. Golz). *See* Doc. 103, Ex. C at 1. Those gaps were sufficient time for the letter to have been forwarded to Ms. Golz in Arizona and for her to have signed it and sent it back to her lawyer in Nederland.

4.      *The photos and driver license* – Dr. Golz has also submitted two pictures of Ms. Golz in Colorado (Exhibit D) and a copy of her Colorado driver license (Exhibit E). The two photos purport to show Ms. Golz and two companions in front of a restaurant near Nederland and outside the Property in Nederland. Both photos were taken on April 20, 2013. Doc. 103 at 9. The driver license was issued on April 26, 2013, a few days after the two photos. Assuming that Ms. Golz appeared in person at the DMV to obtain the license, the driver license and the photos together show that she was in Colorado for 7 days.

### Plaintiff's additional facts

There is substantial evidence that the Property in Nederland ceased to be Ms. Golz's principal residence years before she died, including the following.

1.      On May 19, 2010, Ms. Golz signed her last will and testament, stating that she was "Verna Mae Golz, of Scottsdale, Arizona." The will was signed and notarized in Arizona. Ex. 1 at 1.

2.      The timing of withdrawals from Ms. Golz's reverse mortgage account indicate that she may have moved to Arizona as early as 2009. On or about May 20, 2009, Dr. Golz purchased his home in Scottsdale, Arizona. *See* Ex. 4 at 3, 5. That same week, there was an unscheduled distribution of $4,800 drawn from Ms. Golz's reverse mortgage. Ex. 5 at 1. Over the next two weeks, there were two more unscheduled disbursements from Ms. Golz's mortgage, one for $3,950 and another for $27,719. *Id*. And in early July 2009 there was another unscheduled draw of $31,026. *Id*. Within less than two months of Dr. Golz buying his home in Scottsdale, unscheduled disbursements totaling $67,495 (nearly 40% of all principal withdrawn from the loan) were drawn from Ms. Golz's account.

3. In May 2010, Ms. Golz gave her car to Dr. Golz. Ex. 6 at 1. Dr. Golz registered it in Arizona later that month. Ex. 6 at 3.

4. In August 2011, Ms. Golz conveyed a parcel of land to Dr. Golz. The deed for that conveyance states that Ms. Golz is a resident of Colorado, but the deed was signed by Ms. Golz before a notary in Maricopa County, Arizona. Ex. 7.

5. When Ms. Golz died in 2014, Dr. Golz submitted a sworn statement to the Arizona probate court stating that Ms. Golz was "domiciled in Maricopa County, State of Arizona." Ex. 2 at ¶ 2.[2]

## ARGUMENT

The Court's order converting Dr. Golz's motion to dismiss the Estate to a motion for summary judgment described Dr. Golz's contentions as two-fold: "that any claims against the Estate of Verna Mae Golz are time-barred and that the property belonging to the Estate has been transferred to [Dr. Golz]." Doc. 105. Documents that Dr. Golz attached to his motion concerning Ms. Golz's place of residence are also considered part of the motion. Doc. 112.

As the movant, Dr. Golz has the burden to show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Dr. Golz cannot meet this burden.

*First*, as to Dr. Golz's contention that the United States' claim is untimely, Dr. Golz is not entitled to judgment as matter of law: The United States' claims are not time-barred.

---

[2] Under Arizona law, to establish domicile in Arizona one must "inten[d] to abandon the former domicile..." *DeWitt* v. *McFarland*, 537 P.2d 20, 21 (Ariz. 1975); *accord Vilaysane* v. *Vilaysane*, 1CA-CV 17-0245 FC, 2018 WL 1601757, at *1 (Ariz. Ct. App. April 3, 2018) (quoting *DeWitt*).

*Second*, Dr. Golz's transfer of the Property to himself does not extinguish the United States' claim against the Estate.

*Finally*, there is a genuine issue of material fact as to where Ms. Golz was living before she died.

**I.      The United States' claims are not time barred.**

Dr. Golz asserts that the United States' claims are barred by a Colorado state probate statute, C.R.S. § 15-12-803, referred to as a "nonclaim statute." *See* Doc. 103 at 10. That section of the Colorado probate code bars most creditor claims if not brought within one year of a decedent's death. C.R.S. § 15-12-803(1)(a)(III). But that statute does not apply to mortgages. Part 3 of the statute states: "Nothing in this section affects or prevents: (a) Any proceeding to enforce any mortgage, pledge or other lien upon property of the estate." C.R.S. § 15-12-803(3).[3]

Furthermore, state nonclaim statutes do not apply to claims brought by the United States. The Supreme Court addressed this very issue in *United States* v. *Summerlin*, 310 U.S. 414 (1940). In *Summerlin*, the Federal Housing Administrator sought to collect a claim against a decedent's estate. The state court had held that the United States' claim was barred by the state's nonclaim statute, which provided that "[a]ny ... claim or demand [against an estate] not so filed within eight months from the time of the first publication of the notice to creditors shall be void." The Supreme Court reversed, noting that "if the statute, as sustained by the state court, undertakes to invalidate the claim of the United States, so that it cannot be enforced at all, because not filed within eight months, we think the statute in that sense transgressed the limits of

---

[3] The Arizona probate code includes a similar provision with a similar exclusion for mortgages. *See* A.R.S. § 14-3803(D)(1).

state power." *Id.* at 417.  The Supreme Court therefore held "that the state statute in this instance requiring claims to be filed within eight months cannot deprive the United States of its right to enforce its claim." *Id*. at 418.

The expiration of time under the state nonclaim statute may deprive the state probate court of jurisdiction, *see Summerlin* 310 U.S. at 418, but it does not bar the United States' claim in this court. *Id.*[4]

## II. The United States' claim against the Estate was not extinguished by transfer of title to the Property.

Dr. Golz has recently executed a personal representative's deed transferring the Property from the Estate to himself.  Doc. 103, Ex. F.  The claim against the Estate, seeking a foreclosure sale of the property, was not extinguished by the transfer of title.

### A. A foreclosure claim is properly asserted against the defaulting party, but seeks foreclosure on a specific property.

Foreclosure actions are "frequently spoken of as actions *quasi in rem*, because, though brought against persons, they only seek to subject certain property of those person to discharge of the claims asserted." *Freeman* v. *Alderson*, 119 U.S. 185, 187 (1886).  As the name suggests, *quasi in rem* actions partake aspects of both *in personam* and *in rem* actions.  In the case of a

---

[4] This action is timely under federal law.  Title 28 U.S.C. § 2415(a) provides generally that "actions for money damages brought by the United State or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years."  But Title 28 U.S.C. § 2415(c) provides that "[n]othing herein shall be deemed to limit the time for bringing an action to establish title to, or right of possession of, real or personal property."  Accordingly, courts, including the Tenth Circuit, have held that there is no statute of limitations for foreclosure actions filed by the United States.  *See United States* v. *Ward*, 985 F.2d 500, 503 (10th Cir. 1993) ("If the government is barred from enforcement of the mortgage, the limitation must come from federal law.  No such limitation exists."); *see also United States* v. *Thornburg*, 82 F.3d 886, 893 (9th Cir. 1996) (collecting cases).

mortgage foreclosure, the action is a claim for breach of the mortgage agreement against the borrower to establish an event of default (*in personam*) and to force a sale of the property in satisfaction of that claim (*in rem*). *See Johnson* v. *Home State Bank*, 501 U.S. 78, 84 (1991) (describing foreclosure "as a 'right to an equitable remedy' for the debtor's default on the underlying obligation"). The borrower and others having an interest in the property are typically indispensable parties. *See* 25 Fed. Proc., L. Ed. § 59:162.

Here, Ms. Golz is the borrower. She entered into the reverse mortgage and took on an obligation to repay the loan. *See* Doc. 31-2 at §§ 2, 3 ("Borrower promises to pay"; "Borrower's promise to pay is secured by a mortgage … [that] protect the Lender from losses which might result if Borrower defaults"); Doc. 31-4 at 1 ("Borrower has agreed to repay"). Under the terms of the mortgage, the lender could "require immediate payment in full" if the property ceased to be Ms. Golz's principal residence or if Ms. Golz died. Doc. 31-2 at § 7; Doc. 31-4 at § 9. And on the occurrence of either of those events, the "Borrower [Ms. Golz] shall pay all outstanding principal and accrued interest." Doc. 31-2 at 4(A); Doc. 31-4 § 1 ("Borrower shall pay when due the principal of and interest on the debt evidenced by the Note").

The debt at issue in this case is Ms. Golz's debt, and the obligation to repay is Ms. Golz's obligation. *See* Doc. 31-2 at §§ 2, 3, 4(A); Doc. 31-4 § 1. That the loan is nonrecourse does not change the nature of that obligation. The Supreme Court addressed a borrower's obligation on a nonrecourse mortgage in *Commissioner* v. *Tufts*, 461 U.S. 300 (1983). After noting that the loan in that case was a "loan on a nonrecourse basis," *id.* at 302, the Court stated that: "The only difference between that [nonrecourse] mortgage and one on which the borrower is personally liable is that the mortgagee's remedy is limited to foreclosing on the securing property. This

9

difference does not alter the nature of the obligation; its only effect is to shift from the borrower to the lender any potential loss caused by devaluation of the property." *Id.* at 311-12.

Ms. Golz's loan documents provide a remedy for default: sale of the property. If the borrower does not pay, then the lender is able to "enforce the debt only through sale of the Property." Doc. 31-2 at 4(C); Doc. 31-4 at § 10 (same). But Ms. Golz's personal liability for payment of the debt is limited by the terms of the reverse mortgage. The loan documents provide that the "[b]orrower shall have no personal liability for payment of the debt." Doc. 31-2 at 4(C); *see also* Doc. 31-4 at § 10 ("No Deficiency Judgments. Borrower shall have no personal liability for payment of the debt"). The reverse mortgage is a nonrecourse loan: the lender cannot seek a judgment requiring the borrower to pay the mortgage balance.

This nonrecourse is a limitation on the remedy, not on the claim. *See* Restatement (Third) of Property § 1.1 cmt. ("If personal liability is entirely excluded by the parties' agreement, the effect is to restrict the mortgagee's remedy for nonperformance to foreclosure of the mortgage."). In *Johnson*, the Supreme Court considered a foreclosure claim after a debtor had been through Chapter 7 bankruptcy. The Court observed that a "mortgage interest that passes through a Chapter 7 liquidation … has the same properties as a nonrecourse loan." 501 U.S. at 86. This means that the debtor's personal liability had been extinguished, but "the creditor's surviving right to foreclosure on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." *Id.* at 84. The claim is still against the borrower, but if the borrower does not pay, the lender "shall enforce the debt only through sale of the Property." Doc. 31-2 at 4(C).

### B. The Estate remains a proper defendant.

Because Ms. Golz has died, her Estate is a proper defendant. Under federal law in the Tenth Circuit, an estate is a legal entity. *See United States* v. *Stubbs*, 776 F.2d 1472, 1475 (10th Cir. 1985). As reflected in default judgments enforcing HUD foreclosures on reverse mortgages against borrowers' estates in the United States District Courts of Wyoming and Montana, a borrowers' estate may be made a party in such foreclosure actions. *See United States* v. *Estate of Louise Halderman*, 11-cv-160J, Doc. 12 (D. Wyo. Aug. 18, 2011) (default judgment enforcing HUD foreclosures on reverse mortgage was against borrowers' estate); *United States* v. *Estate of Helga Dominik*, 15-98BLG-SPW, Docs. 24, 26 (D. Mont. June 10, 2016) (same). And the Estate was properly named as a defendant.[5]

Thus, this action proceeds against Ms. Golz, in the form of her Estate, to establish the debt and event of default; and that liability is satisfied by a judgment ordering foreclosure against the property, whoever may be in possession of it at the time.

---

[5] Naming the Estate "in its common name" was appropriate under Federal Rule of Civil Procedure 17(b)(3)(A). "After a default, HUD has a statutory and contractual right to foreclosure." *United States* v. *Yellowbird*, C-3-82-570, 1992 WL 1258511, at *4 (S.D. Ohio Dec. 23, 1992); *see also* 43 U.S.C.§ 3535 ("the Secretary is authorized to – (1) foreclose on any property or commence any action to protect or enforce any right conferred upon him by law, contract, or other agreement"). A substitution of Dr. Golz, in his capacity as personal representative of the Estate, for the Estate is possible, but would not change the substance of the claims or resolve the issue of whether Dr. Golz can proceed *pro se* on behalf of the Estate. *See United States* v. *Snyder*, 207 F.Supp. 189, 191 (E.D. Pa. 1962) (United States recovers against executor and residual legatee for claims against decedent who wrongfully received annuity from United State during his lifetime); *see also M'Knight* v. *Craigs Administrator*, 10 U.S. (6 Cranch) 183, 187 (1810) (administrator "can only plead what the intestate could have pleaded"); *In re Brandts Estate*, 190 P.2d 497 (Ariz. 1948) ("There is such a privity between a decedent and the personal representative of his estate that an estoppel arising by reason of the decedent's conduct may be asserted against his representative."); *Guest* v. *Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (considering whether administrator of estate may proceed *pro se*).

### C. The claim was not extinguished by closure of the Arizona probate.

On May 2, 2018, Dr. Golz (representing himself without a lawyer) filed a Closing Statement in the Arizona probate court. *See* Doc. 108, Ex. B.[6]

Distribution of an estate's assets, even when approved by a state probate court, does not extinguish the United States' claims. *See United States* v. *Snyder*, 207 F.Supp. 189, 191 (E.D. Pa. 1962). The United States' claims against the decedent may be enforced against the administrator and even against heirs. *Id*. In *Synder*, the United States sought to recover annuities paid to a decedent during his life. The basis of the United States' claim was that the decedent was not entitled to payments because he had concealed that he was employed. Even though the estate had been distributed and a final decree issued by the probate court before the United States brought its claim in federal court, the United States could recover on its claims against the decedent from the residual legatee. *Id.*

Indeed, Dr. Golz concedes that "Plaintiff's lien securing the note and the concomitant right to foreclose follows the Property no matter to whom the Estate's Personal Representative would distribute the Property." Doc. 103 at 11.

---

[6] The Closing Statement Dr. Golz filed did not disclose the existence of the United States' pending claim. The Closing Statement includes a section requiring disclosure of any claims that have not been paid or settled:

> **3. Administration of Estate.** The Estate has been fully administered by making payment, settlement or other disposition of all expenses of administration, and all taxes and claims that have accrued against the Estate with the following exceptions: (List the exceptions.)
> _____
> _____
> _____

Dr. Golz did not list any exceptions. *See* Doc. 108, Ex. B at 1.

### D. Dr. Golz is personally liable for transferring the Property to himself.

Although the transfer of the Property does not extinguish the Estate's liability, it does create a new liability: making Dr. Golz personally liable to the United States.

The Federal Priority Statute, 31 U.S.C. § 3713, grants the United States priority over the assets of deceased debtors. Under the statute, the distribution of property of an estate before payment of debts to the United States triggers personal liability for the personal representative up to the value of the distribution. This is so even if the distribution is not made to pay other debts. For example, the Second Circuit held an executor personally liable under 31 U.S.C. § 3713 for distributing assets of an estate before paying the Government:

> While [the executor] did not defeat the Government's tax claim against the estate by paying a debt of the estate, he depleted the assets of his father's estate by distributing them to himself and his family, thereby preventing payment of the tax debt. Such conduct certainly falls within the broad prohibitions of the federal insolvency statute.
> -- *United States* v. *Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996)

Many other courts have likewise held personal representatives liable for failing to pay debts owed to the United States. *See e.g., United States* v. *Askegard*, 357 F.Supp.2d 1152, 1160 n.9 (D. Minn. 2005) (personal representative liable for transferring title to property from decedent's estate to himself and his family); *United States* v. *Bartlett*, 186 F.Supp.2d 875, 885-86 (C.D. Ill. 2002) (same); *United States* v. *Estate of Dickerson*, 189 F.Supp.2d 622, 626 (W.D. Tex. 2001) (sole heir and executor liable for distributing real estate before paying decedent's debt to United States).[7]

---

[7] While the Federal Priority Statute speaks in terms of liability for "debts" paid out of the estate, the statute is construed liberally in favor of the United States and includes distributions from estates to heirs. *See Coppola*, 85 F.3d at 1020; *see also United States* v. *Renda*, 709 F.3d 472, 481-82 (5th Cir. 2013) (collecting cases instructing to "give the Priority Statute a liberal

### III. A genuine issue of material fact exists as to whether and when Ms. Golz maintained the Property as her principal residence.

Dr. Golz's motion attached documents concerning Ms. Golz's place of residence that are also considered part of the motion. *See* Doc 103, Exs. A-E; Doc. 112. To the extent Dr. Golz's motion seeks to dismiss Plaintiff's claim that an event of default occurred when the Property ceased to be Ms. Golz's "principal residence," there is a genuine issue of material fact that precludes summary judgment for Dr. Golz.

For purposes of Ms. Golz's reverse mortgage, the term "principal residence" is defined by the Loan Agreement. Section 1.8 of the Loan Agreement provides that: "Principal Residence means the dwelling where the Borrower maintains his or her permanent place of abode, and typically spends the majority of the calendar year. A person may have only one principal residence at any one time." Doc. 31-1 at § 1.8 Thus, in order for the Property to be Ms. Golz's principal residence, it had to be her permanent place of abode *and* she had to typically spend the majority of the calendar year there.

Dr. Golz argues that "[a]n arbitrary measure of days, weeks or months that a person lives away from, or lives at, their property is not, however, the criterion used to establish a person's home." Doc. 103 at 8. But a measure of time spent in a home – the majority of the calendar year – is one of the express criteria for maintaining a "principal residence" and avoiding an event of default under the terms of Ms. Golz's reverse mortgage. The requirement that a borrower actually spend the majority of the calendar year in the home is important because it protects the

---

construction"); *cf. Want* v. *Commissioner*, 280 F.2d 777, 783 (2d Cir. 1960) (Friendly, J.) (under Federal Priority Statute (then codified at 31 U.S.C. § 192) "a fiduciary may be liable for a distribution of funds that is not, strictly speaking, the payment of a debt").

lender (and HUD as insurer) against absentee borrowers who might allow the property to deteriorate, thereby diminishing the value of the collateral securitizing the loan.

Dr. Golz submitted several documents that he claims establish "his late-mother's intent as to her home." Doc. 103 at 9, Exs. A-E. Intent addresses, at most, only half of the principal residence requirement.[8] Dr. Golz does not contend that Ms. Golz typically spent the majority of the year at the Property in Nederland, Colorado. Dr. Golz therefore fails to carry his initial burden of producing evidence to negate that an event of default occurred. *See Trainor* v. *Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) ("the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact").

When evaluating the evidence on a motion for summary judgment, the court "views the record and draws all favorable inference in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc.* v. *Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Viewing the evidence in the light most favorable to Plaintiff, the evidence shows that Ms. Golz had ceased to maintain the Property as her principal residence years before she died.

The documents that Dr. Golz submitted do not show that Ms. Golz typically spent the majority of the year at the Property after 2009. As discussed at pages 4 and 5 above: (i) the 2009 living will (Ex. A to Dr. Golz's motion) was signed in Arizona and is contradicted by the

---

[8] The Colorado case that Dr. Golz cites for the definition of a place of abode, *Zivian* v. *Brooke-Hitching*, 28 P.3d 970, 973 (Colo. App. 2001), is an election case. Residence is defined for purposes of elections by particular Colorado statutes governing qualifications of electors. *See* C.R.S. § 1-2-102(1)(b); C.R.S. § 31-10-201(3)(a). The Colorado Supreme Court recently clarified that "the principal-or-primary-home test [for such statutes] rejects a scenario in which a person can subjectively declare a second address to be his true home, without considering whether there is objective evidence supporting that declaration." *Kuhn* v. *Williams*, -- P.3d --, 2018 WL 2187793, at *11 (Colo. Apr. 23, 2018 *modified*, May 14, 2018).

2010 last will and testament in which Ms. Golz swore that she was "Verna Mae Golz of Scottsdale, Arizona," Ex. 1 at 1; (ii) the PO Box receipt and the occupancy letter (Exs. B and C to Dr. Golz's motion) do not show that Ms. Golz was actually spending time at the Nederland Property; and the photos and driver license (Exs. D and E to Dr. Golz's motion) are close in time, showing only that Ms. Golz was in Colorado for a week in 2013.

In any event, the documents attached to this response defeat the motion for summary judgment by setting out evidence creating a genuine factual dispute on the issue of whether Ms. Golz was living at the Property. *See Trainor*, 318 F.3d at 982-83 ("even if we were to assume that defendants carried their initial burden on their motion for summary judgment, [plaintiff] defeated that motion by setting out evidence which, when viewed most favorably to him, created a factual dispute on the critical issue"). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard is favorable to the nonmoving party. For summary judgment to be granted, the evidence must be so much in the movant's favor that "there can be but one reasonable conclusion as to the verdict." *Id*. at 250. If reasonable minds could differ as to the import of the evidence, summary judgment cannot be granted. *Id.* at 205-51.

There is substantial evidence showing Ms. Golz had moved out of the Property in Nederland and went to live with Dr. Golz in Arizona. This evidence, as set forth above at pages 5 and 6, includes the reverse mortgage withdrawals from Ms. Golz's account coinciding with Dr. Golz's purchase of a home in Scottsdale, Arizona in 2009; Ms. Golz's giving up her car in 2010; her sworn statement in her last will and testament in 2010 that she was "Verna Mae Golz,

16

of Scottsdale, Arizona" (Ex. 1 at 1); and Dr. Golz's sworn statement in 2014 that Ms. Golz was "domiciled in Maricopa County, State of Arizona." (Ex. 2 at ¶ 2)[9]

Because the documents that Dr. Golz has submitted fail to carry his initial burden of producing evidence to negate that an event of default occurred, and because the evidence that Plaintiff has submitted with this response raises a genuine dispute on the issue of whether Ms. Golz maintained the Property as her principal residence, summary judgment should be denied on this ground as well.

## CONCLUSION

Dr. Golz's motion should be denied. Dr. Golz is not entitled to summary judgment. Dr. Golz is not entitled to judgment as a matter of law because the state probate statute that he says makes HUD's claims untimely does not apply to mortgages or to claims brought by the United States. His transfer of the Property to himself does not extinguish HUD's foreclosure claim against the Estate. Mortgages remains effective and may be executed against real estate in the hands of a transferee. *See* Restatement (Third) of Property § 5.2. And there is a genuine dispute of material fact concerning his mother's principal residence.

---

[9] There has been no discovery in this case. There may be additional facts presently unavailable to Plaintiff that would further show that Ms. Golz ceased to maintain the Property as her principal residence. However, Plaintiff is not seeking to defer consideration of Dr. Golz's motion under Federal Rule of Civil Procedure 56(d) because the evidence presently available enables Plaintiff to present facts essential to justify its opposition to Dr. Golz's motion for summary judgment and to show that there is a genuine issue of fact as to issue of whether Ms. Golz maintained the Property as her principal residence.

Dated this 17th day of May 2018.

                                              ROBERT C. TROYER
                                              United States Attorney
                                              District of Colorado

                                              s/Jasand Mock
                                              ***Jasand Mock***
                                              Assistant United States Attorney
                                              1801 California Street, Suite 1600
                                              Denver, Colorado 80202
                                              (303) 454-0100
                                              (303) 454-0411 (facsimile)
                                              jasand.mock@usdoj.gov
                                              *Counsel for Benjamin S. Carson,*
                                              *Secretary of Housing and Urban Development*

# CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2018, I filed the foregoing and the attached exhibits with the Clerk of Court using the CM/ECF system, which will send notification of such filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

I hereby further certify that I will send the foregoing, all unpublished cases cited therein, and the attached exhibits to the following non-CM/ECF participants in the manner indicated by each non-participant's name:

>William J. Golz, Ph.D. (by U.S. mail and e-mail)
>29714 N. 152nd Way
>Scottsdale, AZ 85262
>wgolz@alumni.lsu.edu
>
>Marcus J. Golz (by U.S. mail and e-mail)
>552 Hillsdale Street
>Helena, Montana 59601
>golzmj@gmail.com
>
>Matthew J. Golz (by U.S. mail and e-mail)
>565 Congress Avenue
>Havre De Grace, Maryland 21078
>threecando@gmail.com

s/Jasand Mock
*Jasand Mock*
Assistant United States Attorney