IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

    Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ and
WILLIAM J. GOLZ,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Verna Mae Golz took out a reverse mortgage that was secured by her property in Nederland, Colorado.  Ms. Golz's loan became due and payable upon her death, but it was not paid off by her estate, family members, or other heirs.  Accordingly, the sole lienholder, Plaintiff Benjamin S. Carson, Secretary of Housing and Urban Development ("HUD"), initiated this foreclosure action, alleging an unpaid loan balance of $288,260.83.  Although Plaintiff sued a number of Defendants, only two remain after entry of default judgments: (1) Ms. Golz's son, Dr. William J. Golz, who represents that he is the personal representative of the Estate and Ms. Golz's sole heir; and (2) the Estate (collectively, "Defendants").

In their Amended Answer, Defendants  allege that the failure to pay off the loan stemmed from HUD's own failure to schedule a timely appraisal, which was necessary because the appraisal performed at the time of the loan's origination did not account for material construction defects that were obscured by snow; had that appraisal been performed as required, Defendants would have satisfied the debt by paying an appropriate percentage of the revised valuation.  Defendants also

assert the following affirmative defenses: (1) the foreclosure is avoidable and contrary to Regulations of the National Housing Act ("NHA") and the Federal Housing Administration ("FHA"); (2) Plaintiff fails to state a claim; (3) estoppel; (4) laches; (5) waiver; (6) Plaintiff's final agency action is arbitrary, capricious, and contrary to law; and (7) unclean hands.  Am. Answer ¶¶ 132–41, ECF No. 64.  The stated goal of these affirmative defenses is to preclude HUD from capitalizing on its own neglect and misdeeds through a grant of foreclosure.

Plaintiff has filed a Motion to Strike Defendants' Affirmative Defenses to Plaintiff's Foreclosure Claim, which contends that none of these affirmative defenses are "legally valid."  Mot. to Strike at 3, ECF No. 71.  Plaintiff argues that some of the affirmative defenses are no more than boilerplate recitals that do not provide adequate notice as to their grounds, whereas others cannot succeed because they are legally insufficient.  *Id.* at 3.  For the reasons that follow, I respectfully recommend that the motion be **granted** in its entirety**.**

## BACKGROUND

### I.     Facts

When Verna Mae Golz was seventy-five years old, mounting expenses led her to seek a reverse mortgage.  Am. Answer ¶ 73.  On January 18, 2002, she entered into a federally insured Home Equity Conversion Mortgage ("HECM") loan with a private lender named Financial Freedom Senior Funding Corp. ("Financial Freedom").  Am. Compl. ¶¶ 2, 29,  ECF No. 31; *see also*  ECF No. 31-1 (loan agreement); ECF No. 31-2 (promissory note with Financial Freedom); ECF No. 31-4 (deed of trust listing Financial Freedom as beneficiary).  After issuing the loan, Financial Freedom assigned its deed of trust to Mortgage Electronic Registration Systems, Inc. ("MERS").  Am. Compl. ¶ 37; *see also* ECF No. 31-6 (assignment to MERS).  The assignment was duly recorded with the Boulder County Clerk.  Am. Compl. ¶ 37.

The loan, which is commonly referred to as a "reverse mortgage," allowed Ms. Golz to

convert the equity in her home into cash by providing her with periodic advance payments. *Id.* ¶¶ 19–20. The mortgage holder's only recourse for this type of loan is to foreclose on the property, as opposed to the borrower's other assets. *Id.* ¶¶ 21–22. Here, the loan was secured by real property in Nederland, Colorado. *Id.* ¶ 1. The home on that property was constructed back in 1963. Am. Answer ¶ 72. To alleviate the risk of nonpayment, Financial Freedom obtained mortgage insurance from HUD. Am. Compl. ¶¶ 27, 36. Pursuant to that transaction, Ms. Golz executed a second promissory note with HUD and provided HUD with its own deed of trust. *Id.* ¶¶ 30–32; *see also* ECF No. 31-3 (promissory note with HUD); ECF No. 31-5 (deed of trust listing HUD as beneficiary). There was some initial confusion because the lender mistakenly encumbered a different lot known as "Lot 2"; that error was not corrected in full until 2011. Am. Answer ¶¶ 76–79.

After executing the loan, Ms. Golz received loan advances for years. Am. Compl. ¶¶ 38–40. By the end of 2011, she had accrued a loan balance of over $241,080. *Id.* ¶ 40. At that time, Financial Freedom submitted an insurance claim based on the size of the loan balance and assigned its rights and interests under the mortgage to HUD in exchange for payment of $242,013.06 on the claim in December 2011. *Id.* ¶¶ 42–43. Likewise, MERS assigned its deed of trust to HUD. *Id.* ¶ 43; *see also* ECF No. 31-7 (assignment to HUD). Here, too, the assignment was duly recorded with the Boulder County Clerk. Am. Compl. ¶ 43. HUD currently holds both promissory notes and deeds of trust. *Id.* ¶ 44.

Ms. Golz did not repay any of the loan balance after the assignment; meanwhile, interest and fees continued to accrue. *Id.* ¶ 45. The notes and deeds specify that the loan balance is in default, and thus becomes immediately due and payable, upon Ms. Golz's death. *Id.* ¶ 47 (listing specific provisions). She passed away on May 16, 2014. *Id.* ¶ 48. The notes and deeds also state that the loan is in default, and immediately due and payable, if Ms. Golz ceases to principally reside on the

property. *Id.* ¶ 49 (listing specific provisions). Plaintiff alleges the latter event occurred when Ms. Golz became a domiciliary of Maricopa County, Arizona—the county where Dr. Golz later filed a probate action on September 11, 2014. *Id.* ¶ 50; *see also* ECF No. 31-8 (application for probate).

The parties present differing accounts as to what happened regarding the debt after Ms. Golz's death. Plaintiff alleges it advised the Estate that the loan was fully due and payable and tried to recover the balance owed without proceeding to foreclosure. Am. Compl. ¶¶ 53–54. According to Plaintiff, the loan servicer notified the Estate that HUD might consider accepting a deed in lieu of foreclosure or a short sale for ninety-five percent of the appraised value of the property under certain conditions, which were never satisfied. *Id.* ¶ 56. Plaintiff also alleges that Dr. Golz requested an appraisal on behalf of the Estate but did not cooperate in getting it scheduled, such that HUD was unable to procure an appraisal despite numerous attempts. *Id.* ¶¶ 58–62. Plaintiff further alleges that it sent notice to Dr. Golz on May 18, 2015, informing him that HUD was referring the loan for foreclosure. *Id.* ¶ 63. Plaintiff states that the amount owing, due, and payable under the note was $288,260.83 as of August 18, 2017, with interest and fees continuing to accrue until entry of judgment. *Id.* ¶ 65.

By contrast, Defendants allege that Dr. Golz was the one pushing for a prompt appraisal. They were eager for an appraisal because the one performed on November 30, 2001 (shortly before the loan's origination) is inaccurate because it does not account for two material construction defects that were obscured by snow at the time of inspection. Am. Answer ¶¶ 72–73, 77, 79. Those defects are (1) a hand-dug well, which ran dry after a historic drought in 2004, leaving the site with no potable water; and (2) a lodgepole foundation for the entryway that rests on the ground. *Id.* Had the appraiser noticed the defects, Defendants contend, the appraisal would have been "as repaired" or the loan would have been conditioned on repairing these defects (i.e., digging a deep well and rebuilding the lodgepole foundation) per a HUD handbook. *Id.* ¶¶ 74–75.

4

Defendants further allege that the loan servicer (Deval, Inc.) and HUD failed to respond to Dr. Golz's repeated inquiries about the loan balance and his ongoing requests for an appraisal, thereby frustrating Defendants' efforts to pay off the loan. *Id.* ¶¶ 80–121. They state that Dr. Golz promptly notified Deval of his mother's death and asked for the payoff balance for the loan, but Deval did not respond to his repeated inquiries. *Id.* ¶¶ 80–84. Therefore, Dr. Golz next contacted HUD at its Denver Home Ownership Center. *Id.* ¶ 84. Again receiving no response, he contacted HUD at its National Servicing Center, precipitating a series of communications that were plagued with administrative errors such as missing enclosures in mailings. *Id.* ¶¶ 86–87. Dr. Golz unilaterally provided several deadlines for an appraisal, none of which were met. *Id.* ¶¶ 88–92. HUD ultimately contacted Dr. Golz about an appraisal, but Dr. Golz resisted the dates proffered and asked to defer the foreclosure, citing his desire to first obtain an engineering inspection and his concerns about the weather and the accumulating snow. *Id.* ¶¶ 94–103.

Ultimately, Defendants hired an appraiser on their own to inspect the property on May 6, 2015. *Id.* ¶ 104. Then, on June 3, 2015, they sought to exercise their "right" to purchase the property by paying ninety-five percent of the most recent appraisal value. *Id.* ¶ 109. The total amount tendered was $118,750. *See* ECF No. 71-6 at 4. HUD rejected their attempt to purchase the property on the ground that it only accepts appraisals that are ordered by and delivered directly to HUD or its loan servicer. Am. Answer ¶ 112. Defendants unsuccessfully disputed HUD's position through counsel. *See id.* ¶¶ 120–21.

On three occasions in May and June 2015, HUD's new servicer, Novad Management Consulting LLC, entered the property and placed unspecified documents on the door of the home. *Id.* ¶ 122. Dr. Golz accused Novad and HUD of criminal trespass and demanded that their agents not come on the property again. *Id.* ¶¶ 122–26. But a federal contractor forcibly entered the home on December 2, 2016, and installed a "HUD lock" to exclude Defendants. *Id.* ¶¶ 128–29. BLM

Companies LLC acquired the property from HUD during this timeframe.  *See id.* ¶¶ 129–30.

Defendants allege that BLM staff and HUD administrators committed a number of crimes by

forcibly entering the home and taking possession of the property.  *Id.* ¶ 131.

## II.   Procedural History

Plaintiff initiated this foreclosure action against Defendants on May 9, 2017, *see* ECF No.

1, and then filed the operative Amended Complaint on August 18, 2017, *see* ECF No. 31.  Two

Defendants—Estate of Verna Mae Golz and William Golz—filed an Answer and Counterclaims to

the Amended Complaint on September 25, 2017, *see* ECF No. 46, and later filed the operative

Amended Answer on November 29, 2017, *see* ECF No. 64—dropping the counterclaims and raising

seven affirmative defenses.  Default has been entered against the remaining Defendants: Marcus J.

Golz, Matthew J. Golz, and the Unknown Heirs and Claimants of the Estate.  *See* ECF Nos. 30, 33.

Despite the entry of default, these Defendants were listed in the caption of the Amended Complaint;

however, they did not file an Answer, nor have they filed (or joined in) any briefs in this case.

On December 13, 2017, Plaintiff filed this Motion to Strike Defendants' Affirmative

Defenses.  ECF No. 71.  Defendants filed their Response on February 2, 2018.  ECF No. 81.

Plaintiff then filed a Reply on February 16, 2018.  ECF No. 84.

## LEGAL STANDARDS

An "affirmative defense" is "[a] defendant's assertion of facts and arguments that, if true,

will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."

Black's Law Dictionary (10th ed. 2014).  Rule 8(c) of the Federal Rules of Civil Procedure instructs,

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense

. . . ."  Fed. R. Civ. P. 8(c).  Additionally, Rule 8(b)(1)(A) requires that, in responding to a pleading,

a party must "state in short and plain terms its defenses to each claim asserted against it."  Fed. R.

Civ. P. 8(b)(1)(A).  Although Rule 8(b)(1)(A) does not require that the pleading show entitlement

to relief, "the defenses must be stated so as to give notice to a claimant, 'who can then use the discovery process to investigate more fully the factual basis supporting the defense.'" *United States Welding, Inc. v. Tecsys, Inc.*, No. 14-cv-00778-REB-MEH, 2015 WL 3542702, at *2 (D. Colo. June 4, 2015) (quoting *Michaud v. Greenberg & Sada, P.C.*, No. 11-cv-01015-RPM-MEH, 2011 WL 2885952, at *4 (D. Colo. July 18, 2011)).

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court—on its own or on motion by a party—to strike from a pleading an "insufficient" defense. Fed. R. Civ. P. 12(f). "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." *Unger v. U.S. West, Inc.*, 889 F. Supp. 419, 422 (D. Colo.1995); *see also S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006) ("A motion to strike an affirmative defense is adjudicated under the same standard as a motion to dismiss: namely, the Court must strike the defense only if it cannot be maintained under any set of circumstances."); *Malibu Media, LLC v. Butler*, No. 13-cv-02707-WYD-MEH, 2014 WL 4627454, at *1 (D. Colo. Sept. 16, 2014) (characterizing the appropriate inquiry for whether to strike a defense as whether the defense "could succeed as a matter of law").

Generally, courts "do not consider whether a defendant has presented evidence in support of a particular defense" when applying this standard; instead, courts "decide the motion on the basis of the pleadings alone." *Quick v. Grand Junction Lodging, LLC*, No. 13–cv–02917–RBJ, 2014 WL 7205417, at *2 (D. Colo. Dec. 18, 2014). But when both parties have submitted evidence outside the pleadings in connection with a Rule 12(f) motion to strike, as they have done here, the Court will consider "both legal insufficiency and factual insufficiency on the record before the Court." *Id.* at *2–3. In so doing, the Court looks to the standard applied in considering a summary judgment motion. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."). The Court considers the factual record and all inferences derived therefrom in the light most favorable to the non-moving party. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).

"The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *Kimpton Hotel & Rest. Grp., LLC v. Monaco Inn, Inc.*, No. 07–cv–01514–WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008) (quoting *United States v. Smuggler–Durant Mining Corp.*, 822 F. Supp. 873, 875 (D. Colo.1993)). Striking a portion of a pleading is "a severe remedy," so it is "generally disfavored." *Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006); *see also Quick*, 2014 WL 7205417, at *2 (explaining that a Rule 12(f) motion "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense" (quoting *Dixie Yarns, Inc. v. Forman*, No. 91 CIV. 6449 (CSH), 1993 WL 227661, at *4 (S.D.N.Y. June 21, 1993))). Even so, whether to strike an affirmative defense rests within the sound discretion of the trial court. *Anderson v. Van Pelt*, No. 09–cv–00704–CMA, 2010 WL 5071998, at *1 (D. Colo. Dec. 7, 2010) (citing *Vanderhurst v. Colo. Mountain Coll. Dist.*, 16 F. Supp. 2d 1297, 1303 (D. Colo. 1998)).

## ANALYSIS

Plaintiff asks the Court to strike all of Defendants' affirmative defenses as being insufficient as a matter of law under Fed. R. Civ. P. 12(f). Plaintiff challenges the second and sixth affirmative defenses as boilerplate and contends they do not provide the requisite notice as to their grounds. Plaintiff challenges the first, third, fourth, fifth, and seventh affirmative defenses as legally invalid because they cannot succeed under any circumstances. Defendants do not address the affirmative defenses in an orderly fashion. The bulk of Defendants' response reiterates their theory that Plaintiff failed to conduct a prompt appraisal and then misled Defendants to believe they would be able to purchase the subject property for a fraction of the payoff price, to be calculated based on current

appraisal value.   Defendants touch briefly on the related estoppel/laches/waiver/unclean-hands defenses, but do not address the purported deficiencies of the second affirmative defense head-on. I consider each of the affirmative defenses in turn, combining my analysis where appropriate.

**I.**     **First and Sixth Affirmative Defenses**:   **The Foreclosure Is Avoidable and Contrary to NHA and FHA Regulations, and Plaintiff's Final Agency Action Is Arbitrary, Capricious, and Contrary to Law**

The first affirmative defense is that "foreclosure is avoidable and contrary to NHA and FHA regulations."  Am. Answer ¶¶ 132–35.  To support this defense, Defendants allege that Plaintiff failed to comply with the time requirements for a prompt appraisal, as spelled out in the "HECM Servicing Frequently Asked Questions (FAQs)."  *See id.* ¶¶ 134–35.  Those FAQs provide guidance on 24 C.F.R. § 206.125(b) and (c),[1] among other topics.  More specifically, Defendants allege that Plaintiff violated one of HUD's regulations, 24 C.F.R. § 206.125, as interpreted in a HUD handbook.

The sixth affirmative defense appears to be based on the same purported violations, though it is lacking in details.  Defendants state generally,  "The FAD that Ms. Potts issued on September 8, 2015 as program counsel for the Office of Insured Housing is a final agency action that is arbitrary, capricious and contrary to law."  Am. Answer ¶ 140.  The factual basis for this affirmative defense must be pieced together from the rest of the responsive pleading.  Millicent Potts is alleged to be the Associate General Counsel for the Office of Insured Housing.  *See id.* ¶ 112.  She purportedly corresponded with Defendants' former attorney, Mark Cohen.  *See id.* ¶¶ 87, 106–117. The "FAD" referenced is the final agency determination that HUD was going to foreclose on the property.  *See id.* ¶ 117.  The legal basis for this defense seems to stem from the scope of review for agency decisions, which is set forth in 5 U.S.C. § 706(2)(A).

The Court might choose to strike the sixth defense based on its lack of specificity and failure

---

[1] This regulation was amended effective September 19, 2017.  The parties' briefs rely on the pre-September 2017 version because of the timing of the underlying events, so I do the same.

to provide fair notice alone.  *See Qarbon.com Inc. v. Ehelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) (stating that "[a] reference to a doctrine, like a reference to statutory provisions, is insufficient notice" of the grounds for a defense).  But the first and sixth defenses seem to be inextricably linked, and the preceding allegations in the Amended Answer arguably provide the minimal short and plain terms.  Therefore, I choose to consider these related defenses in tandem and to resolve whether both are sufficient as a legal matter, rather than recommending that the latter be stricken based on a pleading deficiency.  Though this is a complicated area of law, replete with regulations and agency interpretations thereof, it seems clear to me after a painstaking review that neither the first nor the sixth affirmative defense can succeed under any circumstances for a host of reasons.

First, as a threshold matter, Defendants seek to apply Section 206.125 out of context.  This regulation is part of HUD's HECM insurance-claim procedure, which mortgage lenders must follow to submit an insurance claim to HUD.  *See* 24 C.F.R. §§ 206.123–129 (discussing claim procedures for the payment of mortgage insurance benefits); *see, e.g.*, *id.* § 206.125(b) ("The mortgagee shall obtain an appraisal of the property no later than 30 days after the mortgagor is notified that the mortgage is due and payable, or no later than 30 days after the mortgagee becomes aware of the mortgagor's death . . . ").  An entirely different section of the regulations addresses HUD's responsibility to mortgagors.  *See* 24 C.F.R. §§ 206.117–121.

Second, looking beyond context and to the text, it is evident from the language of Section 206.125 and the related regulations that they govern lenders, as distinguished from HUD, and thus do not apply to Defendants' scenario.  Granted, "mortgagee" is not defined within 24 C.F.R. §§ 206.123–129, and the parties spar over whether the lender or HUD is the "mortgagee" here.  But the remaining language of Section 206.125, its context, and historical documents all clearly support Plaintiff's position that the lender is the mortgagee.  Of particular note, the terms "mortgagee" and

10

"HUD" are not used interchangeably in these sources.   Both terms often appear in the same sentence, reflecting the fact that the mortgagee and HUD are effectively counterparties to a mortgage insurance contract.   *See, e.g.*, 53 Fed. Reg. 43,156-01,  43,159-60 (Oct. 25, 1988) (discussing the mortgagee's initiation of a foreclosure action and differentiating between the mortgagee and HUD in stating that "[t]he mortgagee may delay foreclosure up to three months, or longer without HUD consent, without affecting its rights under the insurance contract"); *see also Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047, 1057 (Ct. Cl. 1981) (noting in the context of non-HECM regulations that "the distinct terms 'Commissioner' and 'mortgagee' are used in contrast to each other" and thus are not "interchangeable").   In my opinion, Defendants' response dodges the critical question:   Is HUD the mortgagee for purposes of Section 206.125?   I conclude that HUD and the "mortgagee" are not one and the same within that regulation.

Third, Defendants rely extensively on an outdated, non-binding HUD handbook.   Without responding to Plaintiff's textual argument, Defendants cite to handbook excerpts that refer to HUD as a mortgagee in the course of discussing HUD's post-assignment responsibilities.   *See* Resp. at 8–10.   Plaintiff counters that the handbook cited is outdated and establishes that it does not even address the applicable version of the regulation.   Reply at 5–6.   Plaintiff also correctly points out that HUD's handbooks are not binding.   *See id.* at 8–9.   The Supreme Court has characterized handbooks and booklets issued by HUD as containing mere "instructions," "technical suggestions," and "items for consideration."   *Thorpe v. Housing Auth. of City of Durham*, 393 U.S. 268, 275 (1969).   And the Tenth Circuit has reaffirmed, "[T]he HUD Handbook . . . is not law."   *United States v. Hauck*, 980 F.2d 611, 614 (10th Cir. 1992).   Rather, it is "intended for internal use for the information and guidance of HUD officials" and "has no binding force."   *Id.* (quoting *Burroughs v. Hills*, 741 F.2d 1525, 1529 (7th Cir. 1984)); *accord Williams v. Hanover Hous. Auth.,* 871 F. Supp. 527, 531–34 (D. Mass. 1994) (collecting cases that show how "[c]ourts have consistently held that government

11

agenc[ie]s' handbooks are not legally binding, but merely advisory").

Fourth, it seems beyond dispute that the regulation relied upon by Defendants does not confer any benefits upon them, as the heir and estate of the borrower.  Decades ago, the Supreme Court emphasized that the appraisal system was designed primarily to protect the government and its insurance funds, that the mortgage insurance program was not designed to insure anything but the repayment of loans made by lender-mortgagees, and that the FHA and the individual mortgagor do not have a legal relationship.  *United States v. Neustadt*, 366 U.S. 696, 709 (1961) (citing legislative history); *see also Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) (explaining that § 206.125 was "intended to protect the lenders"); *Fed. Nat'l Mortg. Ass'n v. Takas*, No. 2:17-CV-204-DAK, 2017 WL 3016785, at *5 (D. Utah July 14, 2017)  (citing cases for the proposition that no private right of action exists under the NHA).  More recently, the Fifth Circuit aptly explained in *Johnson v. World Alliance Financial Corporation*, 830 F.3d 192, 196 (5th Cir. 2016), that "HUD regulations govern the relationship between the reverse-mortgage lender and HUD as insurer of the loan."  They do not, however, "give the borrower a private cause of action *unless the regulations are expressly incorporated into the lender-borrower agreement*." *Id.* (emphasis added).  The record shows that is not the case here.  *See* ECF Nos. 31-1, 31-2, 31-4.  Similarly, the Tenth Circuit has rejected the argument that the regulations "impose an obligation on HUD to any party in a mortgage transaction other than the mortgagee."  *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 114 (10th Cir.1983).  If the HUD regulations do not confer a cause of action on a borrower under such circumstances, I do not see how they could confer an affirmative defense to a borrower's heir or estate as a means of averting foreclosure when a reverse mortgage becomes due and payable.

Fifth, and finally, these two affirmative defenses cannot succeed because their viability depends on Defendants' ability to pay off the outstanding loan balance by tendering only ninety-five

percent of the appraised value of the property, based on an appraisal they procured themselves. HUD has provided a policy clarification on a "borrower's recourse for repayment of HECM loan debt and termination of a HECM mortgage," which seems to state that this type of partial payment is not even permissible. *See* Mot. to Strike, Exh. 71-5 at 2 (HUD Mortgagee Letter 2008-38, dated Dec. 5, 2008). The clarification addresses a statement from the HUD handbook on HECMs, which provides: "The HECM is a 'non-recourse loan.' This means that the HECM borrower (or his or her estate) will never owe more than the loan balance or value of the property, whichever is less . . . ." *Id.* (quoting ¶ 1-3C of the handbook). HUD goes on to interpret that statement in a way that rejects Defendants' position that the Estate could have paid off the loan balance for less than the full amount due:

> Some program participants mistakenly infer from this language that a borrower (or the borrower's estate) could pay off the loan balance of a HECM for the lesser of the mortgage balance or the appraised value of the property while retaining ownership of the home. This is not correct and is not the intended meaning of the quoted provision. Non-recourse means simply that if the borrower (or estate) does not pay the balance when due, the mortgagee's remedy is limited to foreclosure and the borrower will not be personally liable for any deficiency resulting from the foreclosure.

*Id.* HUD goes on to address a variety of scenarios, including the one the Court confronts here: "If the mortgage is due and payable and the borrower (or estate) desires to retain ownership of the property, the mortgage debt must be repaid in full. Lenders may assist the borrower (or estate) in obtaining other financing to pay off the HECM loan in full." *Id.* at 3. Courts defer to an agency's interpretation of its own regulation as "controlling" unless it is plainly erroneous or inconsistent with the regulation. *Auer v. Robbins*, 519 U.S. 452, 461 (1997). It does not strike me as either. Accordingly, even assuming that (1) HUD was required to procure a timely appraisal and failed to do so and (2) an agent told Defendants they could pay off the loan for less than the full amount, HUD's actions would not warrant voiding the foreclosure.

For all of these compelling reasons, I find that Defendants's first and sixth affirmative defenses are insufficient and cannot be maintained under any set of circumstances that exist in this case. Because the defenses, as stated, "cannot succeed" in defeating Plaintiff's foreclosure claim, I recommend that the Court strike them. To the extent Plaintiff is simply articulating the relevant legal standard within the sixth defense, I note that striking the defense would not preclude Plaintiff from asserting a more detailed argument as to how that standard should be applied when the merits of Plaintiff's claim are under consideration.

## II.    Second Affirmative Defense:  Failure to State a Claim

Defendants' Second Affirmative Defense is that "Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted." Am. Answer ¶ 136. Plaintiff moves to strike this defense as well, characterizing it as a "one-sentence recital" that is part of an unacceptable "laundry list." Mot. to Strike at 12.

I agree that this bare-bones, boilerplate defense does not give adequate notice to Plaintiff. As explained above, Rule 8(b)(1)(A) requires a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). In addition, an affirmative defense "must be stated so as to give notice to a claimant, 'who can then use the discovery process to investigate more fully the factual basis supporting the defense.'" *United States Welding, Inc. v. Tecsys, Inc.*, No. 14-cv-00778-REB-MEH, 2015 WL 3542702, at *2 (D. Colo. June 4, 2015) (quoting *Michaud v. Greenberg & Sada, P.C.*, No. 11-cv-01015-RPM-MEH, 2011 WL 2885952, at *4 (D. Colo. July 18, 2011)). The second affirmative defense does not come close to meeting these requirements.

I recognize that Defendants are currently proceeding pro se. But it would be improper for the Court to construct arguments on their behalf simply because of that status, *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997), and Defendants do not provide any additional

14

details regarding the substance of this defense in their response.   Although Defendants parse through some of the other affirmative defenses individually, they do not attempt to substantiate this one.   It may be that they inserted this defense as a placeholder, seeking to satisfy the mandate in Federal Rule of Civil Procedure 12(b)(6) that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required" or asserted by motion.   *See Echostar Satellite, L.L.C. v. Persian Broadcasting Co., Inc.*, No. 05-cv-00466-PSF-MEH, 2006 WL 446087, at *2 (D. Colo. Feb. 22, 2006); Fed. R. Civ. P. 12(b)(6).   Nonetheless, "issues will be deemed waived if they are not adequately briefed."   *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).   Furthermore, my review of the Amended Complaint and the Motion to Strike convinces me that Plaintiff has adequately stated a claim for foreclosure.   Plaintiff has alleged a continuing default and "the fact of [a borrower's] continuing default is, by itself, justification and support for HUD's decision to foreclose."   *United States v. Victory Highway Vill., Inc.*, 662 F.2d 488, 496 (8th Cir. 1981).

Accordingly, I recommend striking the second affirmative defense as well.   I note that striking this defense would not preclude Defendants from raising it later in this litigation as permitted by Federal Rule of Civil Procedure 12(h)(2) or otherwise.   "The defense of failure to state a claim can be raised at any time, including at trial."   *Chavez v. Thornton*, No. 05-cv-00607-REB-MEH, 2007 WL 2908293, at *1 (D. Colo. Oct. 3, 2007).

## III.    Third Affirmative Defense:  Estoppel

The third affirmative defense is estoppel.[2]   Am. Answer ¶ 137.   Defendants allege that they

---

[2]Although estoppel substantially overlaps with the waiver, laches, and unclean-hands defenses, I deem these defenses to be distinct enough to warrant a separate analysis and address each one independently.

continued to pay for property taxes, homeowners' insurance, utilities, and maintenance for over three and one-half years in reliance upon Plaintiff's representation that they could pay off the loan for ninety-five percent of the appraised value as of 2014. *Id.*; *see also* Resp. at 3. But even if Plaintiff's agent did make such a representation, an estoppel defense cannot succeed.

The Tenth Circuit has stated that "[i]t is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances." *FDIC v. Hulsey*, 22 F.3d 1472, 1490 (10th Cir. 1994). Assuming it is even available, the defense requires a showing of "affirmative misconduct"—which "is a high hurdle for the asserting party to overcome." *Id.* "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, or failure to follow agency guidelines does not constitute affirmative misconduct." *Bd. of Cty. Comm'rs v. Isaac*, 18 F.3d 1492, 1499 (10th Cir. 1994). Here, Defendants focus extensively on appraisal delays caused by Plaintiff and describe Plaintiff's conduct in terms of negligence and neglect. *See, e.g.*, Am. Answer at 9 n.8 (discussing "HUD's negligent refusal to timely appraise the Property"); Resp. at 7 (stating that "the agency neglected its responsibility to Defendants and to the public purse" by refusing to let them pay off the loan at the reduced rate); *id.* at 19 (characterizing HUD's treatment of Defendants as "a multi-year neglect of its responsibilities"). It is clear from *Hulsey*, however, that neither a lengthy delay in processing nor erroneous advice of a government agent constitutes affirmative misconduct. *See* 22 F.3d at 1490.

Because estoppel is rarely applied against the government, and because Defendants have not convinced me that they could satisfy the "high hurdle" of showing affirmative misconduct by Plaintiff even if such a defense was available, I recommend that the estoppel defense be stricken.

## IV.    Fourth Affirmative Defense:  Laches

The fourth affirmative defense is laches. Laches may be asserted to deny relief to a party whose unexcused or unreasonable delay in enforcing his or her rights has prejudiced the party

against whom he or she seeks relief. *Robbins v. People*, 107 P.3d 384, 388 (Colo. 2005); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 949 (10th Cir. 2002) ("[T]he defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay.") (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). Here, Defendants assert that Plaintiff's delay in filing this action was unreasonable and caused them prejudice. *See* Am. Answer ¶ 138.

I see no unreasonable delay, given that the pleadings establish that bad weather played a significant role in the time required to secure an appraisal. Nor do I see prejudice to Defendants, as any delay in filing the suit actually afforded them continued access to (and enjoyment of) the property. Besides, this defense, too, is legally insufficient. The government is not subject to laches when it brings a lawsuit, such as this one, to enforce its rights. This notion has been well established for almost two centuries. *See Chesapeake & Del. Canal Co. v. United States*, 250 U.S. 123, 125 (1919) ("That the doctrine of laches is not applicable to the government was announced . . . in 1821."). It has been applied to a claim assigned to the Federal Housing Administrator acting on behalf of the United States. *See United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights."). It has also been applied in a lawsuit by the government to recover defaulted student loans. *See United States v. Distefano*, 279 F.3d 1241, 1245 n.2 (10th Cir. 2002) ("[L]aches may not be asserted against the United States in an action brought to enforce a public right or a public interest."). I see no reason why these rulings should not be extended to this foreclosure case, so I recommend that the laches defense be stricken.

## V.     Fifth Affirmative Defense:  Waiver

For their fifth affirmative defense, Defendants state: "From paragraphs 137 and 138 and the allegations above, the Secretary's unreasonable delay and prior statements upon which Defendants

relied constituted a voluntary and intentional waiver of the Secretary's right to bring this action." Am. Answer ¶ 139.

The waiver defense fares no better than its counterparts, as it runs afoul of yet another well-established principle:   The law does not permit government employees to waive statutory requirements by their actions. *Wilber Nat'l Bank of Oneonta v. United States*, 294 U.S. 120, 123 (1935). "[T]he general rule is that the United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit." *Id.*; *accord Sanders v. Comm'r of Internal Revenue*, 225 F.2d 629, 634 (10th Cir. 1955) ("It is equally well established that the United States may not be estopped by the unauthorized acts of its agents nor may such agents waive the rights of the United States by their unauthorized acts."). "[T]hose dealing with an agent of the United States must be held to have had notice of the limitation of his authority." *Wilber Nat'l Bank*, 294 U.S. at 123–24.

Moreover, I am not persuaded that under the circumstances presented here Defendants were deceived or misled to their detriment or that they had  adequate reason to suppose Ms. Golz's loan agreement would not be enforced or that the foreclosure provided for by that agreement could be waived. *See id.* at 124.   To the contrary, it appears from the record that although Plaintiff was actively seeking to avoid foreclosure if at all possible for Defendants' benefit, it never relinquished its right to foreclose.   For these reasons, I recommend that the waiver defense also be stricken.

## VI.    Seventh Affirmative Defense: Unclean Hands

Defendants' seventh and final affirmative defense is an unclean-hands defense.   Defendants allege that "Plaintiff committed numerous acts of bad faith," which include a series of mailing and clerical errors and forcible entry into Ms. Golz's former home. *See* Am. Answer ¶ 141.   Defendants cannot succeed on this defense either.

Simply put, unclean hands is not a valid defense to HUD foreclosure.   The Supreme Court

has "rejected the unclean hands defense where a private suit serves important public purposes." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995).  And courts across the country have found protecting the public treasury through foreclosure by HUD to be an important public purpose.  *See, e.g.*, *United States v. Winthrop Towers*, 542 F. Supp. 1042, 1044 (N.D. Ill. 1982) ("In deciding whether to foreclose on a seriously defaulting mortgagor, it is appropriate that HUD consider as a predominant factor the federal policy to protect and preserve public monies which make up the assets of HUD's insurance fund."); *accord United States v. Winthrop Towers*, 628 F.2d 1028, 1038 (7th Cir. 1980) (recognizing "HUD's unarguable duty to protect the public treasury").  Against this backdrop, the Honorable William J. Martinez applied *McKennon* and struck an unclean-hands defense in the context of the FHA in *McFadden v. Meeker Housing Authority*, No. 16-cv-2304-WJM-GPG, 2018 WL 3368411, at *3 (D. Colo. July 10, 2018) (citing cases).

Because it is so clear to me that an unclean-hands defense is not available under the present circumstances, I do not conduct a detailed analysis of the parties' supplemental arguments.  I do find it compelling, though, that the deeds of trust explicitly provide HUD with the right to enter and manage the Property.  *See* Mot. to Strike at 19–20 & Exhs. 71-1 & 71-2.  Consequently, I recommend striking Defendants' seventh affirmative defense as well.

## CONCLUSION

I respectfully recommend that the Court grant Plaintiff's Motion to Strike Defendants' Affirmative Defenses to Plaintiff's Foreclosure Claim [filed December 13, 2017; ECF No. 71] in its entirety.[3]

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo

Dated at Denver, Colorado, this 28th day of August, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).