# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

    Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ, and
WILLIAM J. GOLZ,

    Defendants.

---

## PLAINTIFF'S LIMITED OBJECTION TO THE
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Plaintiff Benjamin S. Carson, Secretary of Housing and Urban Development ("HUD"), respectfully submits that the Court should accept the Recommendation of United States Magistrate Judge Hegarty (Doc. 118) and grant HUD's Motion to Strike Defendants' Affirmative Defenses (Doc. 71).

However, HUD respectfully submits this objection for the limited purpose of clarifying and correcting one of the alternative grounds discussed in the Recommendation. As an alternative reason for recommending that two of Defendants' affirmative defenses be stricken, Judge Hegarty looked to a HUD policy clarification set forth in a Mortgagee Letter that HUD issued in 2008. *See* Doc. 118 at 13 (citing Doc. 71-5 (HUD Mortgagee Letter 2008-38)). That Mortgagee Letter was rescinded in 2011. HUD therefore objects to the small and severable portion of the Recommendation that relied on the rescinded HUD Mortgagee Letter.

1

Because the rest of the Recommendation rightly found separate and independently sufficient reasons why Defendants' affirmative defenses cannot succeed under any set of circumstances, the Court should accept and adopt the remainder of the Recommendation and grant HUD's motion to strike in its entirety.

## BACKGROUND

This case arises out of a reverse mortgage. In January 2002, Verna Mae Golz entered into a Home Equity Conversion Mortgage ("HECM") loan, commonly referred to as a "reverse mortgage." She entered into this mortgage with a private lender, Financial Freedom Senior Funding Corp. ("Financial Freedom"). Ms. Golz's HECM loan allowed her to withdraw loan advances borrowed against the value of the property securing the loan. Ms. Golz did not have to repay these advances until she moved or passed away. The property securing her loan is in Nederland, Colorado (the "Property"). Amended Complaint ("AC"), Doc. 31, ¶¶ 20, 29-32.

The mortgage was insured by HUD. Under the National Housing Act, 12 U.S.C. § 1715z-20, HUD is authorized to provide mortgage insurance to lenders that make HECM loans. This insurance serves as protection for lenders, thereby encouraging lenders to make credit available to borrowers. The loan agreement and deeds of trust Ms. Golz signed in 2002 reflect HUD's role as insurer. AC ¶¶ 19, 24, 29-32, 36.

HUD paid the insurance claim. By the end of 2011, Ms. Golz had accrued a balance of over $241,080, and Financial Freedom submitted an insurance claim to HUD. HUD paid out $242,013.06 to Financial Freedom on its insurance claim. HUD then received the deed of trust on the Property originally held by Financial Freedom ("First Deed of Trust"). Additionally, HUD is the holder of its own deed of trust made to HUD by Ms. Golz when the loan was

originated ("Second Deed of Trust," and together with the First Deed of Trust, the "Deeds of Trust"). AC ¶¶ 39-44.

On May 16, 2014, Ms. Golz passed away. Under the terms of her loan and the Deeds of Trust, her death made her loan balance fully due and payable. AC ¶¶ 46-48. Four years have passed since Ms. Golz died. All the while, Ms. Golz's son, Dr. William J. Golz—the personal representative and sole heir of the Estate—has continued to use the Property as a second home. Amended Answer, Doc. 64, page 1 and ¶ 12. But the Estate has not repaid the balance it owes.

HUD now brings this foreclosure claim. AC ¶¶ 4-9, 45, 65. In their Amended Answer, Defendants' primary contention was that HUD allegedly failed to comply with its own HECM insurance regulations, and that HUD's alleged failure to comply with those regulations bars HUD from foreclosing on the Property. Defendants also contended: (a) the Amended Complaint fails to state a claim; (b) this action is barred by estoppel, laches, and/or waiver; and (c) HUD is barred from foreclosure because of supposed unclean hands arising from an alleged trespass of the Property and other supposed "acts of bad faith."

Defendants raised these contentions as affirmative defenses, and on December 13, 2017, HUD filed a Motion to Strike Defendants' Affirmative Defenses. Doc. 71. Defendants filed their Response on February 2, 2018. Doc. 81. HUD then filed a Reply on February 16, 2018. Doc. 84.

On August 28, 2018, Judge Hegarty issued a Recommendation that HUD's Motion to Strike Defendants' Affirmative Defenses be granted in its entirety. Doc. 118 at 2. The Recommendation rightly determined that all of the affirmative defenses were insufficient as a matter of law.

## ANALYSIS

In their First and Sixth affirmative defenses, Dr. Golz and the Estate claimed that HUD's foreclosure is contrary to the National Housing Act and federal regulations, and that HUD's decision to foreclose was arbitrary and capricious. Both of those purported defenses relied on a fundamentally flawed misconception of a HUD HECM insurance regulation.

The regulation that Defendants sought to rely on, 24 C.F.R. § 206.125, falls within the portion of HUD's regulations covering claim procedures that lenders, as insureds, must follow in order to submit insurance claims to HUD, as insurer. *See* 24 C.F.R. §§ 206.123-129 ("Claim Procedure").[1] Notably, these regulations do not impose any freestanding obligations on any party, not even lenders. Instead, they simply set forth procedures for lenders to follow if—and only if—they want to submit an insurance claim to HUD. *See* 53 Fed. Reg. 43,156-01 at 43,159-60 (Oct. 25, 1988) (explaining how Subpart C claim procedures, including 24 C.F.R. § 206.125, operate); *see also* Doc. 71 at 6-7.

Judge Hegarty determined "after a painstaking review that neither the first nor the sixth affirmative defense can succeed under any circumstances for a host of reasons." Doc. 118 at 10. The Recommendation went on to detail several independent reasons why these affirmative defenses could not succeed, including that Defendants were seeking to apply 24 C.F.R. § 206.125 out of context, that the regulations "do not apply to Defendants' scenario," and that "it seems beyond dispute that the regulation relied upon by Defendants does not confer any benefits upon them, as the heir and estate of the borrower." Doc. 118 at 10-12.

---

[1] 24 C.F.R. § 206.125 was amended effective September 19, 2017. The parties' briefs relied on the pre-September 2017 version, a copy of which was attached as Exhibit 3 to Plaintiff's Motion to Strike. *See* Doc. 118 at 9 n.1; Doc. 71-3.

4

In addition to those reasons for striking Defendants' affirmative defenses, Judge Hegarty's fifth and final reason rested on a HUD policy clarification in a HUD Mortgagee Letter from 2008. He explained that: "Fifth, and finally, these two affirmative defenses cannot succeed because their viability depends on Defendants' ability to pay off the outstanding loan balance by tendering only ninety-five percent of the appraised value of the property …. HUD has provided a policy clarification … which seems to state that this type of partial payment is not even permissible." Doc. 118 at 12-13 (citing Doc. 71-5 (HUD Mortgagee Letter 2008-38)).

This fifth and final reason was in error because that 2008 Mortgagee Letter had been rescinded. It was rescinded in 2011, and HUD issued new guidance in the form of HECM Servicing Frequently Asked Questions in July 2011. The 2008 Mortgagee Letter and the 2011 guidance were attached as exhibits to HUD's Motion to Strike as part of an explanation of a court decision that had relied on the 2008 Mortgagee Letter. *See* Doc. 71 at 9-10 & 10 n.4 (discussing *Chandler* v. *Wells Fargo Bank, N.A.*, No. 11-03831 SC, 2014 WL 31315 (N.D. Cal. Jan. 3, 2014), *aff'd*, 637 F.App'x 413 (9th Cir. 2016) (unpublished)). But as both HUD and Defendants recognized in their briefing, HUD Mortgagee Letter 2008-38 is no longer operative.[2] Therefore, the Court should not adopt this fifth and final reason.

---

[2] *See, e.g.*, Plaintiff's Motion to Strike (Doc. 71) at pages 9-10 ("In guidance HUD issued in July 2011, HUD opened that option [95% value sale] to estates, but the precatory language of that guidance makes clear that it is an option available at the lender's discretion, not an estate's right."); *id.* at 10 n.4 ("If the Court reaches that question in this case, HUD's 2011 guidance provides the answer…"); Defendants' Response to Plaintiff's Motion to Strike (Doc. 81) at page 10 ("As noted in *Chandler*, ML 2008-38 was superseded when 'in July 2011, HUD issued new guidance…'"); Plaintiff's Reply in Support of Motion to Strike (Doc. 84) at pages 11-12 ("The FAQs told lenders that HUD would interpret the term 'sale' in 24 C.F.R. § 206.125(c) to include 'any post-death conveyance.' That meant that – if a lender so chose – a borrower's estate or heirs 'may satisfy the HECM debt by paying … 95% of the current appraised value of the property and the lender could still submit an insurance claim to HUD.'").

Nevertheless, Defendants' first and sixth affirmative defenses still fail as a matter of law. Each of the other reasons in the Recommendation is an independently sufficient basis—apart from any reliance on HUD Mortgagee Letter 2008-38—for the Court to strike Defendants' first and sixth affirmative defenses. *See* Doc. 118 at 10-12, 14 ("For all of these compelling reasons, I find that Defendants' first and sixth affirmative defenses are insufficient and cannot be maintained under any set of circumstances that exist in this case.").

Furthermore, Dr. Golz's argument that he has a "right" to compel HUD to accept a partial payment based on an appraisal that Dr. Golz ordered himself is no defense to foreclosure.

*First*, the 2011 FAQs made clear that the short-sale option is available at the insured lender's discretion. It is not an estate's right. The FAQs told lenders that HUD would interpret the term "sale" in 24 C.F.R. § 206.125(c) of HUD's Claim Procedures to include "any post-death conveyance." That meant that—if a lender so chose—a borrower's estate or heirs "may satisfy the HECM debt by paying … 95% of the current appraised value of the property" and the lender could still submit an insurance claim to HUD. Doc. 71-4 FAQs 1 &2. But the FAQs did not give heirs the ability to require the lender to accept such a "sale." The FAQs put an interpretation on the term "sale" in HUD's Claim Procedures regulations for lenders to make an insurance claim on HUD, but those regulations do not confer any rights on borrowers. *See* Doc. 118 at 12; Doc. 71 at 9-11; Doc. 84 at 11-12; *Johnson* v. *World Alliance Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016) ("HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement.").[3]

---

[3] The regulation is not incorporated into Ms. Golz's mortgage. *See* Doc. 118 at 12. Dr. Golz also argued that "Defendant is entitled to rely" on the FAQs. Doc. 81 at 12. But Ms. Golz entered into the mortgage agreements in 2002—nearly a decade before the FAQs were issued.

*Second*, HUD's regulations do not require HUD to accept a short sale based on an estate's own appraisal of the property. The appraisal required by the regulations is meant to protect HUD's interest. *See* Doc. 118 at 12; Doc. 71 at 7, 10. As the Recommendation found, Dr. Golz and the Estate sought to "pay off the outstanding loan balance by tendering only ninety-five percent of the appraised value of the property, *based on an appraisal they procured themselves*." Doc. 118 at 12-13 (emphasis added). The Estate's conflict of interest in conducting its own appraisal is obvious. The Estate, controlled by Dr. Golz, wants to sell the Property to Dr. Golz, at a price determined by an appraiser hired by Dr. Golz. *See* Amended Answer ¶ 107. If the sale were to go through on his terms, Dr. Golz would pay only $118,750 to cancel a secured debt of more than $250,000. Doc. 118 at 4-5.

Here, HUD did not accept Dr. Golz's purported appraisal. As HUD explained to Dr. Golz in a letter quoted at paragraph 112 of the Amended Answer (Doc. 64), even after rescission of the 2008 Mortgagee Letter:

> HUD's longstanding interpretation of the appraisal requirement set forth in its regulations at 24 C.F.R. 206.125(b) is that, for the purpose of determining the value of any mortgaged property for sale or satisfaction by a HECM borrower or their heirs, HUD will only accept appraisals that are performed by FHA Roster Appraisers and are **ordered by and delivered directly to HUD** or its loan servicer. HUD does not deviate from this interpretation and, in fact, has furthered it through the publication of Handbook 4330.1, Chapter 13 and, more recently, Mortgagee Letter 2015-10.

If HUD were to permit a sale of the Property to Dr. Golz at 95% of the appraised value, that appraisal would have to be conducted by an appraiser selected by HUD and reflect the current value of the property.

**CONCLUSION**

The Court should accept Judge Hegarty's Recommendation and grant HUD's Motion to Strike Defendants' Affirmative Defenses in its entirety. But, for the reasons set forth above, the Court should not adopt that small and severable portion of Judge Hegarty's Recommendation (the last paragraph of page 12 and all of page 13) that relied on HUD guidance that has been superseded. HUD has no objection to the remainder of the Recommendation.[4]

Dated this 11th day of September 2018.

ROBERT C. TROYER
United States Attorney
District of Colorado

s/Jasand Mock
*Jasand Mock*
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
(303) 454-0411 (facsimile)
jasand.mock@usdoj.gov
*Counsel for Benjamin S. Carson,*
*Secretary of Housing and Urban Development*

---

[4] In an effort to avoid unnecessarily multiplying briefing submitted to this Court concerning the Recommendation, AUSA Mock sent Dr. Golz a letter by e-mail on August 31, 2018. (Dr. Golz refuses to confer in person or by phone.) In that letter, AUSA Mock explained that "Plaintiff believes that reliance on HUD Mortgagee Letter 2008-38 in the Recommendation was misplaced" and that "Plaintiff will not seek to have that portion of the Recommendation adopted by the Court and will not oppose Defendants' objection to that portion of the Recommendation." AUSA Mock asked Dr. Golz to let him know if Defendants planned to object "and, if so, whether [they] plan to raise a particular objection to the issue discussed above regarding Mortgagee Letter 2008-38." Dr. Golz responded: "I have no comment to your correspondence of August 31, 2018 because the substance of that letter is inconsistent with the objections that I will be making to the Magistrate's recommendation." It was therefore necessary for Plaintiff to file this limited objection to ensure that the Recommendation's reliance on the rescinded HUD Mortgagee letter is corrected.

# CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2018, I filed the foregoing and the attached exhibits with the Clerk of Court using the CM/ECF system, which will send notification of such filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

I hereby further certify that I will send the foregoing, all unpublished cases cited therein, and the attached exhibits to the following non-CM/ECF participants in the manner indicated by each non-participant's name:

> William J. Golz, Ph.D. (by U.S. mail and e-mail)
> 29714 N. 152nd Way
> Scottsdale, AZ 85262
> wgolz@alumni.lsu.edu

s/Jasand Mock
*Jasand Mock*
Assistant United States Attorney