FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 17 2018

JEFFREY P. COLWELL
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-1152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

     Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ and WILLIAM J. GOLZ,[1]

     Defendants.

---

### NOTICE OF ERRATA
### IN
### DEFENDANT'S OBJECTIONS (DOC. 120)*
### TO THE MAGISTRATE'S RECOMMENDATION (DOC. 118)

---

#### COMMENT

     Other responsibilities, which included, but were not limited to, completion of a petition for a writ of mandamus filed in the Tenth Circuit on September 11, 2018, left very little time for Defendant to proofread his objections which had to be delivered to FedEx by September 13 to meet the September 14 filing deadline. This Notice of Errata is to correct mechanical and grammatical errors, to provide needed citations to pleadings and statutes, and to provided clarification of certain issues in Doc. 120. Exhibit B is a black-line of Doc. 120. Exhibit A is the complete corrected document and supersedes and replaces Doc. 120.

    *[PLEASE NOTE: DOC. 120 IS SUPERSEDED AND REPLACED BY EXHIBIT A.]

---

1  For the reasons discussed in Doc. 120, at 1, Defendant files this pleading solely in his personal capacity.

1

DATED this 15th day of September, 2018.

Respectfully Submitted,



William J. Golz, Ph.D.
Defendant, Pro Se
29714 N. 152nd Way
Scottsdale, AZ 85262
Phone/Facsimile: (480) 816-5019
Email: wgolz@alumni.lsu.edu

2

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-1152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

      Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ and WILLIAM J. GOLZ,

      Defendants.

---

**DEFENDANT'S CORRECTED OBJECTIONS**
**(TO SUPERSEDE DOC. 120)**
**TO THE MAGISTRATE'S RECOMMENDATION (DOC. 118)**

---

Magistrate Judge Michael E. Hegarty has not published any opinions to the Court on the issue of whether or not William J. Golz, Ph.D., ("Defendant" or "Dr. Golz"), may represent the Estate subsequent to the May 8, 2018 minute order (Doc. 112) stating that "Dr. Golz's motion [to dismiss the Estate (Doc. 103), filed April 25] may be contingent on whether he may properly seek any relief on behalf of the Estate[.]" Without leave from the Court to do otherwise, Defendant is restricted to filing this Objection solely in his personal capacity.

### FACTUAL BACKGROUND AND PRELIMINARY OBJECTIONS

In a letter dated April 21, 2015, Defendant requested that HUD grant a short delay in foreclosure to allow for a valid appraisal of the property when the snowpack melted. (Doc. 64, ¶ 103). In a May 18, letter, Plaintiff replied: "On behalf of Secretary Juli[á]n Castro, thank you for your letter of April 21 … this letter will serve as the agency's final response. As such, unfortunately, your mother's reverse mortgage loan will be referred for foreclosure on or about May 18,

1

2015." (Doc. 64, ¶ 108). Whereas it was the only avenue open to prevent foreclosure, Defendant, on advice of counsel, used an appraisal he had obtained in the course of satisfying his responsibilities to the Estate, and, on June 3, 2015, sent checks to the Secretary for 95% of that appraised value. (Doc. 64, ¶ 109; *see also* Doc. 87, at 3, ¶ 1 to 4, ¶ 1). Defendant received a June 16 letter in reply: "HUD has voided your checks, Checks 960 and 961, and is returning them to you with this letter." (Doc. 64, ¶ 110).

Dr. Golz and a Nederland attorney persisted in their requests to the agency to conduct an appraisal and allow the Estate to pay off the loan. Millicent Potts, HUD Associate General Counsel for the Office of Insured Housing replied, on September 8, 2015: "HUD has already issued its final agency determination [the "FAD"]... in letters dated May 18, 2015 and June 16, 2015, no further action will be taken by the Department to facilitate a sale[1] of the subject property to the Estate. As you were advised, HUD has begun its process for foreclosing on the property and will continue this process." (Doc. 64, ¶ 117).

At all times since May 18, 2015, consistent with Ms. Potts' final agency determination having the force of law, unless and until rescinded, HUD has refused all efforts by the Estate and Dr. Golz to pay off the loan. One year after HUD's issuance of its FAD, HUD had still not initiated foreclosure, and on May-11, June-6, and July-6, 2016, ignoring constructive notice from Defendant and his wife to cease and desist, HUD's agents trespassed onto the fenced property, in-

---

1   In their letters and their pleadings, HUD and their attorneys have repeatedly used the term "sale" as though the agency has a posessory right to the property. They do not. Their rights and responsibilities are identical to those of the private lender that originated the loan. As assignee, HUD assumed the role of a private mortgagee with the rights defined in the mortgage contract. The Secretary is suing in his private capacity, and his foreclosure is debt collection, subject, with very few exceptions, to any affirmative defense that may be raised against any private lender. *See infra.*

cluding when Defendant's family, the legal tenants of the Estate, were home. (*See* Doc. 64, ¶¶ 122 and 123).

On August 2, 2016, Defendant sent a letter to the Secretary, copied to Assistant United States Attorney Kevin Traskos, stating that any future trespasses without advance permission would be in violation of the Colorado criminal trespass statute (C.R.S. § 4-502, *et seq.*) and that a monitored security alarm would be installed on the property. (*See* Doc. 64, ¶¶ 124 and 125). Defendant reiterated the admonition not to trespass in an October 9, 2016 letter to the two AUSAs that Mr. Traskos had assigned to the matter. (*See* Doc. 64, ¶ 126).

While Defendant's Arizona attorney, the Honorable Thomas Horne, was engaged in ongoing discussions with the AUSAs about the agency's rescinding their FAD, on December 2, 2016, the Boulder County Sheriff's Office (the "BCSO") interdicted two individuals who had damaged the property, installed a "HUD lock", and were inside the dwelling (the "forcible entry"). Those individuals, whom identified themselves to the responding detective as HUD contractors, proffered a HUD Property Access Record and a work order falsely stating that HUD had acquired the property, both of which are in evidence in BCSO Case No. 16-7379. (*See* Doc. 64, ¶¶ 127-129 and Exs. A and B).

On January 11, 2017, BCSO advised Defendant and his wife that neither HUD staff nor Tracy Willingham, Project Manager for BLM Companies LLC, the HUD contractor that had issued the work order for the forcible entry, would return BCSO Paralegal Cindy Bussard's or Sergeant William Manes' telephone messages and emails. (Doc 64, Exs. C and D). On January 12, 2017, Defendant and his wife wrote their second in a series of letters to request that (then Acting) United States Attorney Robert Troyer investigate to determine if attorneys from his of-

fice had been involved and to identify any federal employees or contractors who falsely stated that the property was a HUD acquisition or who had disbursed or received agency funds to pay for the felony forcible entry. (; *See* Doc. 90, at 7, ¶ 3 to 8, ¶ 1 and n.6).

That there is a clear nexus between BLM's Project Manager, Tracy Willingham, the agency – presumably the office that would normally manage properties referred for foreclosure, HUD's Regional Office of General Counsel in Denver (the "HUD's Regional OGC") – and the United States Attorney's Office for the District of Colorado (the "USAO"), is undisputed, for written in red across the bottom of Plaintiff's Exhibit 71-7, three pages from BCSO Case No. 16-7379, is "Records Request[,] Recipient Tracy Willingham - BLM January 20, 2017[.]" Ms. Willingham then had to have known that BCSO was trying to contact her no later than January 20, 2017, the date of her above records request for BCSO Case No. 16-7379, which includes Sergeant Manes' December 27, 2016 email to Ms. Willingham.  (Doc. 64, Ex. D).

## I.   OBJECTIONS

### A.   FIRST OBJECTION: ABRIDGMENT OF DUE PROCESS

For reasons that include those discussed in Defendant's pleadings in the instant matter that were filed on and subsequent to the April 16, 2018 status conference, and those provided by in re William J. Golz (filed September 11, 2018 in the Tenth Circuit as a Petition for a Writ of Mandamus, Case No. 18-1373) Judge Hegarty's conduct of the pretrial proceedings in this matter reflects both the appearance of bias and actual bias.  The Magistrate's actions, including his orders and recommendations, must therefore be vacated as they are tainted by his prejudices in this case, which is an abridgment of the right to due process guaranteed to Defendant. (U.S. Const. art. V).

4

**B.   SECOND OBJECTION: AN UNCLEAN HANDS DEFENSE IS CLEARLY AVAILABLE TO DEFENDANT FOR THE OPERATIVE FACTS**

HUD's acts of bad faith, bordering on fraud, included six feints at immediate foreclo-

sure in 2015, three trespasses onto Defendant's (fenced) property in 2016, in defiance of Defen-

dant's cease and desist notices, and a felony trespass that Judge Hegarty mischaracterizes as "a

series of mailing and clerical errors and forcible entry into Ms. Golz's former home[,]" (Doc.

118, at 18, § VI).   Moreover, Dr. Golz, not HUD, currently owns the home, where, as discussed

in Defendant's pleadings (Doc. 81, at 8-10, § II), and in subsection (i), below, the Secretary as-

sumed the Notes and Deeds of Trust attendant to which HUD's legal position is no different than

that of the private mortgagee that originated the loan.

### *(i)   There is a large body of caselaw applicable to the operative facts*

On May 9, 2017, Plaintiff filed suit in his private capacity to enforce the equitable

remedy of foreclosure (as provided for in 42 U.S.C. § 1404a, to fulfill the functions of the United

States Housing Act of 1937, as amended, § 1437, *et seq.*).   Whereas the United States is suing in

its proprietary capacity, Defendant is entitled to affirmative defenses that include unclean hands,

as provided for by a large body of firmly established caselaw:

Some of the existing authority that is particularly applicable to the operative facts, is

*United States v. Georgia-Pacific Company*, 421 F.2d 92, 103 (9th Cir. 1970), where the Ninth

Circuit, considering both equitable estoppel and unclean hands against the government, held:

"The Government comes before this Court seeking the equitable remedy of specific perfor-

mance, a decree for which can be denied if the plaintiff has not come into court with clean hands.

*Pope Mfg. Company v. Gormully*, 144 U.S. 224, 236-237,12 S.Ct. 632,36 L.Ed. 414 (1892),

*Cathcart v. Robinson*, 5 Pet. 264, 276,8 L.Ed. 120 (1831)." The *Georgia-Pacific* court also cited to *United States v. The Thekla*, 266 U.S. 328, 339-40 (1924), where the Supreme Court had held: " 'When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter.' *See* 1 A.L.R.2d 338, 340-341; Comment, *16 Geo.Wash.L.Rev.* 273, 274 (1948)."

The foundations of the legal theory applied in *Georgia-Pacific* are discussed in *McQuagge v. United States*, 197 F. Supp. 460 (W.D. La. 1961). The *McQuagge* court noted that, as "distinguished from the situation where the sovereign is seeking to enforce a public right or protect a public interest, for example, eminent domain or an exercise of the taxing power [or discrimination in employment or public housing][,] ... [w]hen the government enters the market place [ ] and puts itself in the position of one of its citizens seeking to enforce a contractual right (*i.e.*, one which arises from express consent rather than sovereignty), it submits to the same rules which govern legal relations among its subjects. *United States v. Oklahoma Gas Electric*, 8 Cir., 1924, 297 F. 575, *United States v. The Thekla*, 1924, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313."

### (ii)   *Judge Hegarty eschews a large body of well established caselaw applicable to Defendant's defense and cites instead to a smattering of inapposite cases*

In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 354 (1995), Justice Kennedy opened his opinion with the note, "The question before us is whether an employee discharged in violation of the Age Discrimination in Employment Act of 1967 is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing[.]" This case is as clearly inapposite to the operative facts as the next case:

6

Continuing with one of the progeny of *McKennon*, the Magistrate explains that District Judge "Martinez applied *McKennon* and struck an unclean-hands defense in the context of the FHA in *McFadden v. Meeker Housing Authority*, No. 16-cv-2304-WJM-GPG, 2018 WL 3368411, at *3 (D. Colo. July 10, 2018) (citing cases)." Here, Judge Hegarty's use of the acronym FHA without clearly identifying it as the Fair Housing Act (42 U.S.C. § 3601, *et seq.*) is nonstandard and, not identifying it as, like *McKennon*, a discrimination suit, could mislead the reader into believing that *McFadden* was a legitimate authority that supported the Magistrate's Recommendation.

The two cases, *McFadden* and *McKennon,* are clearly inapposite to the facts of the *Estate of Verna Mae Golz,*[2] as is *Winthrop Towers,*[2] which, as discussed in Defendant's Response, (Doc. 81, at 6, ¶ 3 to 7, ¶ 2), was a foreclosure on multiple defaults on a $4,720,700 loan. Against the background of three wholly inapplicable cases, Judge Hegarty incongruously states that: "because it is so clear to me that an unclean-hands defense is not available under the present circumstances, I do not conduct a detailed analysis of the parties' supplemental arguments."

### C. THIRD OBJECTION: IF PARAGRAPH 23 OF THE DEEDS OF TRUST WERE TO PERMIT ACTIONS THAT VIOLATED CRIMINAL STATUTES, THAT WOULD LEAD IMMEDIATELY TO MULTIPLE CONSTITUTIONAL QUESTIONS

In his Recommendation (Doc. 118, at 19), Magistrate Hegarty makes the astounding claim that "I do find it compelling [ ] that the deeds of trust explicitly provide HUD with the right to enter and manage the Property[.]" It is more than a little surprising, and a disappointment, that a federal magistrate would so blithely sweep aside the protections provided for a

---

2  *See United States v. Winthrop Towers*, 542 F. Supp. 1042, 1044 (N.D. Ill. 1982); and *United States v. Winthrop Towers*, 628 F.2d 1028, 1031 (7th Cir. 1980).

dwelling's occupants that lie in Colorado's Forcible Entry and Detainer statute and the Colorado Criminal Code,[3] and, by disposing of those laws, derogate the private property rights embodied in our Constitution:

As discussed in Defendant's pleadings (*e.g.*, Doc. 81, at 17), even when a mortgagee has been able to make a plausible claim that they believed a home was vacant or abandoned, courts have held that under a lien theory, as in Colorado, lender in possession clauses are void for being contrary to statute and can grant neither a right of entry nor to change the locks on a mortgagor's property, where the latter has been held an impermissible assertion of a possessory interest.[4]

Defendant's dwelling was not vacant and Plaintiff has admitted to knowing that it was occupied by Dr. Golz and his family. (Doc. 64, a ¶ 127). Nevertheless, while represented by the USAO, Plaintiff chose not to follow prescribed law for a foreclosure but instead to order their contractor to (as reported by witnesses) make a forcible entry by destroying the front storm door, breaking open the front door lock with a sledge hammer, and excluding the Golz family by installing a "HUD lock." (Doc. 64, ¶¶ 127-131).

---

3  *See* C.R.S. §§ 13-40-101(1) and 13-40-102; Doc. No. 64, at ¶¶ 127-131 and Exs. A-D; Doc. 90, at 3-9 (Factual Background §§ I and II).

4  In *Jordan v. Nationstar Mortg*, LLC, NO: 2:14-CV-0175-TOR (E.D. Wash. Mar. 9, 2017), the court held that the Federal Housing Finance Agency must seek possessory rights through established foreclosure processes, that to allow otherwise would be contrary to public policy, and that this was neither unreasonably burdensome nor susceptible to federal preemption. Like Washington, Colorado is a lien theory state, where C.R.S. § 38-35-117 provides that "[m]ortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien."

Magistrate Hegarty recommends that the Court adopt the argument advanced by Plaintiff and his attorneys that the Deeds of Trust grant magical powers, allowing them to violate criminal statutes whereby, even though Defendant has claimed that "'HUD and their agents' committed a criminal trespass, forcible entry, and criminal mischief, and had intent to commit burglary under Colorado law[, n]one of Defendants' claims have any merit for the simple reason that the Deeds of Trust expressly authorize HUD to enter upon and manage the property." (Doc. 71, at 18, ¶ 1). That argument is self defeating because, to any extent that the Deeds of Trust would purport to permit HUD to destroy Defendant's property and break into his home without a court order, that portion of the contract would be void for being in violation of statute. The legal fallacy that would result if one were to adopt the Magistrate's Recommendation and accept Plaintiff's position of law is clear in that the Court would then be faced with constitutional crises:

Judge Hegarty's Recommendation would remove the hurdle of due process, where the Secretary could, upon notification of the death of the original borrower, dispatch a federal contractor to remove a mortgagor's locks with a sledge hammer and install a "HUD lock". The Secretary, in the interest of "the federal policy to protect and preserve public monies which make up the assets of HUD's insurance fund[,]" (Doc. 118, at 19, ¶ 1), could then invoke the Single Family Mortgage Foreclosure Act (12 U.S.C. § 3751 *et seq.*) and conclude a foreclosure in as few as 21 days (§ 3758), with no due-process hearing of any kind,[5] *i.e.*, the Court lets pecuniary expedience make a handmaiden of the law.

---

5  Legal scholars and federal courts have observed with sober concern that the Single Family Mortgage "Foreclosure Act 'combine[s] the harshest features of foreclosure processes currently in existence under state laws' and 'provide[s] the least protection to defaulting borrowers in comparison with the laws in each of the fifty states.' " *E.g.*, *Nelson v. United States Secretary of Hous.*, (MD Fla, Nov. 4, 2011, No. 3-10-cv-118-J-37MCR) 2011 U.S. Dist. Lexis 128088, *3.

Next, any mortgagor with a model HECM trust deed and note, which HUD requires all mortgagees to use, and which includes a lender in possession clause, would be denied the equal protection of the private property laws.  This would include, as in the instant case, the criminal codes that proscribe a forcible entry, destruction of property, trespass, and burglary, which are intended to protect a dwelling's occupants, not the property's owner.  The facts specific to Defendant's case are widely applicable because many reverse mortgages become due and payable when the borrower dies.  HUD has litigated a number of such cases, where a family member, such as a non-borrowing spouse, was living in the home.[6]  If the Court were to extend to the Secretary this kind of contractual "right to enter- and manage the property[,]" *i.e.*, to effect a posessory right by force, HUD's contractors, paid by Congress, could break down the door of an occupied dwelling and the occupants would be bereft of a legal remedy.

Extending the contractual right to the Secretary to enter a dwelling without court order would also abrogate the Fourth Amendment's protections.  One can argue very generally from the facts specific to HUD's forcible entry into Defendant's dwelling, where well pleaded facts and agency policy support the allegation that HUD's break in was coordinated between HUD's Regional OGC and the USAO. (*See* Doc. 90, at 6-9).  Defendant's neighbor, a witness in BCSO Case No. 16-7379, arrived at the property before the responding officer and was present when HUD's contractors, Phillip Cuizon and Wesley Scott, led the officer through Defendant's dwelling, opening every door, including the garage, *i.e.*, HUD's contractors facilitated an illegal search.  Some of the questions Defendant hopes to answer with discovery and trial is who di-

---

6  HUD states that their contractor was sent to "winterize" Defendant's property (*see* Doc. 71, at 18, n.8), where HUD's contractual guidelines required the utilities to be turned off and the pipes and toilet to be filled with anti-freeze, which is called a freeze out, and it is illegal.

rected them to facilitate the search and for what were Messrs. Scott and Cuizon told to search.

Adopting the Magistrate's Recommendation has broad consequences where, using the resulting

decision, law enforcement could search, at a minimum, any dwelling with a Secretary held re-

verse mortgage by asserting that the agency believed some event of default had occurred, as con-

sistent with Mr. Traskos' Civil Division's advising that HUD had not:

> [committed a] criminal trespass by virtue of their entry onto the property on De-
> cember 2, 2016," because " '[u]pon acceleration under Paragraph 9 [of the Deeds
> of Trust]'–which occurred no later than May 16, 2014 [the date of Verna Mae
> Golz's death] HUD–'(in person, by agent or by judicially appointed receiver) shall
> be entitled to enter upon, take possession of and manage the Property[.]' Deeds of
> Trust ¶ 23[.]

The Court's ruling that a contract can permit a forcible entry without court order, would be im-

mediately applicable to a very large number of dwellings, in Colorado alone, that law enforce-

ment may want to search but where only suspicion is present, not probable cause. This is dan-

gerous ground.

It is in no way hyperbole to state that the consensus reached by Plaintiff, the United

States Attorney, and Magistrate Hegarty is that – to the exclusion of trying facts that may lead to

serious consequences for government attorneys and federal contractors that carried out those at-

torneys' orders – the Federal District Court for the District of Colorado should shred the Consti-

tution.

### D.   FOURTH OBJECTION: THE SECRETARY IS ESTOPPED BY THE FACTS

The body of caselaw cited above in § B(i)  is applicable to estoppel for the current set

of facts:  Paraphrasing Defendant's Response  in Doc. 81, at 11, in a September-17, 2014 letter

addressed to the Secretary, HUD administrators, and the agency's mortgage servicer, Defendant's

Arizona probate counsel, Jon Kitchel, made the following statements:

> 3.  Dr. Golz requests exercise of the right of family sale pursuant to 24 CFR [§]
> 206.125(c)
>
> 4.  Dr. Golz requests appraisal of the property pursuant to 24 CFR [§] 206.125(b)
>
> Please schedule the appraisal on or before October 3, 2014, as Dr. Golz, Personal
> Representative, will be available on almost any day before that date to meet the
> appraiser and provide access to the Property.  To schedule a time and date, the ap-
> praiser may contact Dr. Golz at [Dr. and Mrs. Golz's cell-phone and home-tele-
> phone numbers were provided].

(Doc. 81, Exhibit N; *and see* Doc. 64, ¶ 88).  Ivery Himes, the Director of HUD's Office of Sin-

gle Family Asset Management, in an October-10, 2014 letter replying to Mr. Kitchel stated, in

relevant part:

> On behalf of Secretary Castro, thank you for your letter of September 17, 2014, re-
> garding the late Ms. Verna Mae Golz's Home Equity Conversion Mortgage.
> ...
>
> Dr. Golz may pursue the family sale option ... for the lesser of the loan balance or 95
> percent of the appraised value.  HUD's current Loan Servicing Contractor, Novad
> Management Consulting (Novad) will order the appraisal.  The assigned appraiser
> will contact Dr. Golz to schedule a date and time to conduct the appraisal.

(Doc. 81, Exhibit O; *see also* Doc. 64, ¶¶ 88 and 114(iii); *and see* Doc. 64, ¶ 110, where Ms.

Himes' Deputy Director of OSFAM, Mark Malec, referred to "HUD regulations and require-

ments at 24 C.F.R. § 206.125(b) and (c)" as governing Defendant's request to pay off the loan).

Ms. Himes, and her Deputy, Mr. Malec, as those responsible for disposition of the property,

knew, or must reasonably have been assumed to have known, how agency regulations in §

206.125 were to be applied.

If, as Plaintiff argues, and as Judge Hegarty concurs, HUD is not required to comply with § 206.125, then Ms. Himes' representation that she was writing to Defendant "[o]n behalf of Secretary Castro" was a clear act of affirmative misconduct: the use of the agency head's name in a letter promising to do something that the agency is not required to, or must not do, is equivalent to a licensed engineer intern removing a stamp from a professional engineer's desk drawer and affixing it to plans that the engineer intern then proffers to a client as having been approved by the professional engineer.

In reliance on Ms. Himes' concealment, and misrepresentation, of the true facts, Defendant's family has paid over $17,000 in taxes, homeowners insurance, and maintenance. (*See* Doc. 81, at 14 ¶ 3). That amount does not include the many-more thousands of dollars the Golz family has invested in repairs to the bathroom, interior painting, the roof, replacement of deteriorated structural-framing members, replacement of siding, and exterior painting, which Defendant's family has completed across the front of the dwelling.

The Magistrate recommends awarding a hefty profit to Plaintiff for Ms. Himes' intentional misconduct by having the Court award the Secretary the market appreciation (27% for the period May 2014 to May 2017 alone)[7] while taxing Defendant for the costs of homeowners insurance, utilities, maintenance, property taxes, repairs and improvements, which Defendant currently estimates to be in excess of $30,000.

The two cases that the Magistrate cites to support his recommendation, *FDIC v. Hulsey*, 22 F.3d 1472, 1490 (10th Cir. 1994) and *Bd. of Cty. Comm'rs v. Isaac*, 18 F.3d 1492,

---

7  *See* Doc. 81, at 14, ¶ 3 and n.4, which cites to HUD's Comprehensive Housing Market Analysis for Boulder County, available at https://www.hudusergov/portal/publications/pdf/BoulderCO-comp-17.pdf, at 9, ¶ 2.

1499 (10th Cir. 1994), are inapposite.  The case on point for the operative facts is *Georgia-Pa-cific*, supported by *McQuagge. Supra.*

**E.    FIFTH OBJECTION: PLAINTIFF FORCED THIS FORECLOSURE INTO THE COURTS, AND THE MISREPRESENTATION THAT THE AGENCY TOOK ANY ACTION TO AVOID THIS FORECLOSURE IS BELIED BY HUD's OWN FAD**

The Recommendation refers to Plaintiff's allegation that "it advised the Estate that the loan was fully due and payable and tried to recover the balance owed without proceeding to fore-closure. Am. Compl. ¶¶ 53–54." That assertion is belied by Millicent Potts' September 8, 2015 FAD, which states:

> HUD has already issued its final agency determination … in letters dated  May 18, 2015 and June 16, 2015, no further action will be taken by the Department to facili-tate a sale of the subject property to the Estate. As you were advised, HUD has begun its process for foreclosing on the property and will continue this process.

(Doc. 64, ¶ 117).

HUD forced this loan into a foreclosure.

**F.    SIXTH OBJECTION: PLAINTIFF'S FORECLOSURE IS ARBITRARY, CAPRICIOUS AND CONTRARY TO LAW**

In his Recommendation, Magistrate Hegarty states:

> "[M]ortgagee" is not defined within 24 C.F.R. §§ 206.123–129, and the parties spar over whether the lender or HUD is the "mortgagee" here. But the remaining language of Section 206.125, its context, and historical documents all clearly support Plaintiff's position that the lender is the mortgagee. Of particular note, the terms "mortgagee" and "HUD" are not used interchangeably in these sources. Both terms often appear in the same sentence, reflecting the fact that the mortgagee and HUD are effectively counter-parties to a mortgage insurance contract.

(Doc.118, at 10 ¶ 3, and 11, ¶ 1).  This is erroneous for several reasons: as Defendant has ex-plained in his pleadings, when the Secretary paid the insurance claim to the originating lender the counter-party relationship ceased to exist and HUD became the mortgagee with the rights and re-

14

sponsibilities, *i.e.*, in privity with, Financial Freedom, and moreover, mortgagee and mortgagor were defined by Congress in the National Housing Act (12 U.S.C. § 1701, *et seq.*), upon which this entire body of administrative law rests. This discussion, and the issue of the Secretary's rights and responsibilities as mortgagee are directly relevant to the forthcoming objection that Defendant will make to Plaintiff's limited objection (Doc. 119).

## III.   CONCLUSION

On due process grounds, Magistrate Hegarty omitted to disclose, which is equivalent to concealment of, his close professional relationships with Messrs. Kevin Traskos and Zachary Mountin, which are centrally relevant to his disqualification from this matter, on a date now many months, or a year, past, consequent to which the Magistrate's Recommendation, along with his other orders and actions in this matter, are vitiated due to bias, both in appearance and in fact. Secondary to the abridgment of due process, Judge Hegarty's Recommendation should be vacated in its entirety in any case on the substantive grounds that it is erroneous and contrary to statute and firmly established caselaw, and it asks the Court to abrogate protections guaranteed by the Constitution.

DATED this 15th day of September, 2018.

Respectfully Submitted,

William J. Golz, Ph.D.
Defendant, Pro Se
29714 N. 152nd Way
Scottsdale, AZ 85262
Phone/Facsimile: (480) 816-5019
Email: wgolz@alumni.lsu.edu

15

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-1152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

   Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ and WILLIAM J. GOLZ,

   Defendants.

---

## <u>BLACK-LINE OF ERRATA</u><br><u>IN</u><br>DEFENDANT'S OBJECTIONS <u>(DOC. 120)</u><br>TO THE MAGISTRATE'S RECOMMENDATION (DOC. 118)

---

Magistrate Judge Michael E. Hegarty has not published any opinions to the Court on the issue of whether or not William J. Golz, Ph.D., ("Defendant" or "Dr. Golz")‚ may represent the Estate subsequent to ~~his~~ the May 8, 2018 minute order (Doc. 112)‚ stating that "Dr. Golz's motion [to dismiss the Estate (Doc. 103), filed April 25] may be contingent on whether he may properly seek any relief on behalf of the Estate[.]" Without leave from the Court to do otherwise, Defendant is restricted to filing this Objection solely in his personal capacity.

## Factual Background and Preliminary Objections

In a letter dated April 21, 2015, Defendant requested that HUD grant a short delay in foreclosure to allow for a valid appraisal of the property when the snowpack melted. (Doc. 64, ¶ 103). In a May 18, letter, Plaintiff replied: "On behalf of Secretary Juli[á]n Castro, thank you for your letter of April 21 … this letter will serve as the agency's final response. As such, unfortu-

1

nately, your mother's reverse mortgage loan will be referred for foreclosure on or about May 18, 2015." (Doc. 64, ¶ 108).  Whereas it was the only avenue open to prevent foreclosure, Defendant, on advice of counsel, used an appraisal he had obtained in the course of satisfying his responsibilities to the Estate, and, on June 3, 2015, sent checks to the Secretary for 95% of that appraised value. (Doc. 64, ¶ 109; *see also* Doc. 87, at 3, ¶ 1 to 4, ¶ 1).  Defendant received a June 16 letter in reply: "HUD has voided your checks, Checks 960 and 961, and is returning them to you with this letter." (Doc. 64, ¶ 110).

Dr. Golz, and a Nederland attorney persisted in their requests to the agency to conduct an appraisal and allow the Estate to pay off the loan.  Millicent Potts, HUD Associate General Counsel for the Office of Insured Housing replied, on September 8, 2015:  "HUD has already issued its final agency determination [the "FAD"]… in letters dated -May 18, 2015 and June 16, 2015, no further action will be taken by the Department to facilitate a sale[1] of the subject property to the Estate. As you were advised, HUD has begun its process for foreclosing on the property and will continue this process." (Doc. 64, ¶ 117).

At all times since May 18, 2015, consistent with Ms. Potts' final agency determination having the force of law, unless and until rescinded, HUD has refused all efforts by the Estate and Dr. Golz to pay off the loan.  One year after HUD's issuance of its ~~final agency determination~~ FAD, HUD had still not initiated foreclosure, and on May-11, June-6, and July-6, 2016, ignoring constructive notice from Defendant and his wife to cease and desist, HUD's agents tres-

---

1  In their letters and their pleadings, HUD and their attorneys have repeatedly used the term "sale" as though the agency has a posessory right to the property.  They do not.  Their rights and responsibilities are identical to those of the private lender that originated the loan.  As assignee, HUD assumed the role of a private mortgagee with the rights defined in the mortgage contract.  The Secretary is suing in his private capacity, and his foreclosure is debt collection, subject, with very few exceptions, to any affirmative defense that may be raised against any private lender. *See infra.*

2

passed onto the fenced property, including when Defendant's family, the legal tenants of the Estate, were home. (*See* Doc. 64, ¶¶ 122 and 123).

On August 2, 2016, Defendant sent a letter to the Secretary, copied to Assistant United States Attorney Kevin Traskos, stating that any future trespasses without advance permission would be in violation of the Colorado criminal trespass statute (C.R.S. § 4-502, *et seq.*); and that a monitored security alarm would be installed on the property. (*See* Doc. 64, ¶¶ 124 and 125). Defendant reiterated the admonition not to trespass in an October 9, 2016 letter to the two AUSAs that Mr. Traskos had assigned to the matter. (*See* Doc. 64, ¶ 126).

While Defendant's Arizona attorney, the Honorable Thomas Horne, was engaged in ongoing discussions with the AUSAs about the agency's rescinding their FAD, on December 2, 2016, the Boulder County Sheriff's Office (the "BCSO") interdicted two individuals who had damaged the property, installed a "HUD lock", and were inside the dwelling: (the "forcible entry"). Those individuals, whom identified themselves to the responding detective as HUD contractors, profferinged a HUD Property Access Record and a work order falsely stating that HUD had acquired the property, both of which are in evidence in BCSO Case No. 16-7379. (*See* Doc. 64, ¶¶ 127-129 and Exs. A and B).

On January 11, 2017, BCSO advised Defendant and his wife that neither HUD staff nor Tracy Willingham, Project Manager for BLM Companies LLC, the HUD contractor that had issued the work order for the forcible entry, would return BCSO Paralegal Cindy Bussard's or Sergeant William Manes' telephone messages and emails. (Doc 64, Exs. C and D). On January 12, 2017, Defendant and his wife wrote their second in a series of letters to request that (then Acting) United States Attorney Robert Troyer investigate to determine if attorneys from his of-

3

fice had been involved and to identify any federal employees or contractors who falsely stated that the property was a HUD acquisition or who had disbursed or received agency funds to pay for the felony forcible entry. (Exhibit A; *See* Doc. 90, at 7, ¶ 3 to 8, ¶ 1 and n.6).

That there is a clear nexus between BLM's Project Manager, Tracy Willingham, the agency – presumably the office that would normally manage properties referred for foreclosure, HUD's Regional Office of General Counsel in Denver (the "HUD's Regional OGC") – and the United States Attorney's Office for the District of Colorado (the "USAO"), is undisputed, for written in red across the bottom of Plaintiff's Exhibit 71-7, three pages from BCSO Case No. 16-7379, is "Records Request[,] Recipient Tracy Willingham - BLM January 20, 2017[.]" Ms. Willingham then had to have known that BCSO was trying to contact her, if not earlier, then certainly no later than January 20, 2017, the date of her above records request for BCSO Case No. 16-7379, which contains includes Sergeant Manes' December 27, 2016 email to Ms. Willingham. (Doc. 64, Ex. D).

## I.   OBJECTIONS

### A.   FIRST OBJECTION: ABRIDGMENT OF DUE PROCESS

For reasons that include those discussed in Defendant's pleadings in the instant matter that were filed on and subsequent to the April 16, 2018 status conference, and those provided by in re William J. Golz, (filed September 11, 2018 in the Tenth Circuit, as a Petition for a Writ of Mandamus, Case No. 18-1373), Judge Hegarty's conduct of the pretrial proceedings in this matter reflects both the appearance of bias and actual bias. The Magistrate's actions, including his orders and recommendations, must therefore be vacated as they are tainted by his prejudices in

4

this case, which is an abridgment of the right to due process guaranteed to Defendant. (U.S. Const. art. V).

**B.   SECOND OBJECTION: AN UNCLEAN HANDS DEFENSE IS CLEARLY AVAILABLE TO DEFENDANT FOR THE OPERATIVE FACTS**

HUD's acts of bad faith, bordering on fraud, included six feints at immediate foreclosure in 2015, three trespasses onto ~~the~~ Defendant's (fenced) property in 2016, in defiance of Defendant's cease and desist notices, and a felony trespass~~, which~~ that Judge Hegarty mischaracterizes as "a series of mailing and clerical errors and forcible entry into Ms. Golz's former home[,]" (Doc. 118, at 18, § ~~7~~ VI).   Moreover, Dr. Golz, not HUD, currently owns the home, where, as discussed in Defendant's pleadings (Doc. 81, at 8-10, § II), and in subsection (i), below, the Secretary assumed the Notes and Deeds of Trust ~~whereby~~ attendant to which HUD's legal position is no different than that of the private mortgagee that originated the loan.

*(i)   There is a large body of caselaw applicable to the operative facts*

On May 9, 2017, Plaintiff filed suit in his private capacity to enforce the equitable remedy of foreclosure (as provided for in 42 U.S.C. § 1404a, to fulfill the functions of the United States Housing Act of 1937, as amended, § 1437, *et seq.*).   Whereas the United States is suing in its proprietary capacity, Defendant is entitled to affirmative defenses that include unclean hands, as provided for by a large body of firmly established caselaw:

Some of the existing authority that is particularly applicable to the operative facts, is *United States v. Georgia-Pacific Company*, 421 F.2d 92, 103 (9th Cir. 1970), where the Ninth Circuit, considering both equitable estoppel and unclean hands against the government, held: "The Government comes before this Court seeking the equitable remedy of specific perfor-

5

mance, a decree for which can be denied if the plaintiff has not come into court with clean hands. *Pope Mfg. Company v. Gormully*, 144 U.S. 224, 236-237,12 S.Ct. 632,36 L.Ed. 414 (1892), *Cathcart v. Robinson*, 5 Pet. 264, 276,8 L.Ed. 120 (1831)." The *Georgia-Pacific* court also cited to *United States v. The Thekla*, 266 U.S. 328, 339-40 (1924), where the Supreme Court had held: " 'When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter.' *See* 1 A.L.R.2d 338, 340-341; Comment, *16 Geo.Wash.L.Rev.* 273, 274 (1948)."

Another holding whose underlying authorities include The foundations of the legal theory applied in *Georgia-Pacific Company* and that is applicable to the operative facts is are discussed in *McQuagge v. United States*, 197 F. Supp. 460 (W.D. La. 1961). The *McQuagge* court noted that, as "distinguished from the situation where the sovereign is seeking to enforce a public right or protect a public interest, for example, eminent domain or an exercise of the taxing power [or discrimination in employment or public housing][,] … [w]hen the government enters the market place [ ] and puts itself in the position of one of its citizens seeking to enforce a contractual right (*i.e.*, one which arises from express consent rather than sovereignty), it submits to the same rules which govern legal relations among its subjects. *United States v. Oklahoma Gas Electric*, 8 Cir., 1924, 297 F. 575, *United States v. The Thekla*, 1924, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313."

> **(ii)   Judge Hegarty eschews that a large body of well established caselaw applicable to Defendant's defense and cites instead to a smattering of inapposite cases**

6

In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 354 (1995), Justice Kennedy opened his opinion with the note, "The question before us is whether an employee discharged in violation of the Age Discrimination in Employment Act of 1967 is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing[.]" This case is as clearly inapposite to the operative facts as the next case:

Continuing with one of the progeny of *McKennon*, the Magistrate explains that District Judge "Martinez applied *McKennon* and struck an unclean-hands defense in the context of the FHA in *McFadden v. Meeker Housing Authority*, No. 16-cv-2304-WJM-GPG, 2018 WL 3368411, at *3 (D. Colo. July 10, 2018) (citing cases)." Here, Judge Hegarty's use of the acronym FHA without clearly identifying it as the Fair Housing Act (42 U.S.C. § 3601, *et seq.*) is nonstandard and, not identifying it as, like *McKennon*, ~~as~~ a discrimination suit, could mislead the reader into believing that *McFadden* was a legitimate authority that supported the Magistrate's Recommendation.

The two cases, *McFadden* and *McKennon,* are clearly inapposite to the facts of the *Estate of Verna Mae Golz*, as is *Winthrop Towers*,[2] which, as discussed in Defendant's Response, (Doc. 81, at 6, ¶ 3 to 7, ¶ 2), was a foreclosure on multiple defaults on a $4,720,700 loan. Against the background of three wholly inapplicable cases, Judge Hegarty incongruously states that: "because it is so clear to me that an unclean-hands defense is not available under the present circumstances, I do not conduct a detailed analysis of the parties' supplemental arguments."

---

2   *See United States v. Winthrop Towers*, 542 F. Supp. 1042, 1044 (N.D. Ill. 1982); and *United States v. Winthrop Towers*, 628 F.2d 1028, 1031 (7th Cir. 1980).

**C.   THIRD OBJECTION: IF PARAGRAPH 23 OF THE DEEDS OF TRUST WERE TO PERMIT ACTIONS THAT VIOLATED CRIMINAL STATUTES, THAT WOULD LEADS IMMEDIATELY TO A̶ MULTIPLE CONSTITUTIONAL QUESTIONS**

In his Recommendation (Doc. 118, at 19), Magistrate Hegarty makes the astounding claim that "I do find it compelling [ ] that the deeds of trust explicitly provide HUD with the right to enter and manage the Property[.]"  It is more than a little surprising, and a disappoint-ment, that a federal magistrate would so blithely sweep aside the protections provided for a dwelling's occupants that lie in Colorado's Forcible Entry and Detainer statute and the Colorado Criminal Code,[3] and, by disposing of those laws, derogate the private property rights embodied in our Constitution:

As discussed in Defendant's pleadings (*e.g.*, Doc. 81, at 1̶6̶-̶1̶7̶,̶ ̶§̶ ̶V̶.̶B̶), even when a mortgagee has been able to make a plausible claim that they believed a home was vacant or abandoned, courts have held that under a lien theory, as in Colorado, lender in possession clauses are void for being contrary to statute and can̶n̶o̶t̶ grant <u>neither</u> a right of entry <u>n</u>or to change the locks on a mortgagor's property, where the latter i̶s̶ <u>has been held</u> an impermissible assertion of a possessory interest.[4]

---

3   *See* C.R.S. §§ 13-40-101(1) and 13-40-102; Doc. No. 64, at ¶¶ 127-131 and Exs. A-D;  Doc. 90, at 3-9 (Factual Background §§ I and II).

4   In *Jordan v. Nationstar Mortg*, LLC, NO: 2:14-CV-0175-TOR (E.D. Wash. Mar. 9, 2017), the court held that the Federal Housing Finance Agency must seek possessory rights through established fore-closure processes, that to allow otherwise would be contrary to public policy, and that this was neither unreasonably burdensome nor susceptible to federal preemption. Like Washington, Colorado is a lien theory state, <u>where</u> C.R.S. § 38-35-117 provides that "[m]ortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation se-cured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien."

Defendant's dwelling was not vacant and Plaintiff has admitted to knowing that ~~De-fendant's property~~ it was occupied by Dr. Golz and his family. (Doc. 64, a ¶ 127). Nevertheless, while represented by the USAO, Plaintiff chose not to follow prescribed law for a foreclosure but instead to order their contractor to (as reported by witnesses) make a forcible entry by destroying the front storm door, ~~and~~ breaking open the front door lock with a sledge hammer, and ~~then,~~ excluding the Golz family by installing a "HUD lock," (Doc. 64, ¶¶ 127-131). ~~which Plaintiff de-scribes as "to enter upon and manage the property."~~

Magistrate Hegarty recommends that the Court adopt the argument advanced by Plaintiff and his attorneys, ~~arguing~~ that the Deeds of Trust ~~give them~~ grant magical powers, allowing them to violate criminal statutes whereby, ~~state that~~ even though Defendant has claimed that "'HUD and their agents' committed a criminal trespass, forcible entry, and criminal mischief, and had intent to commit burglary under Colorado law[, n]one of Defendants' claims have any merit for the simple reason that the Deeds of Trust expressly authorize HUD to enter upon and manage the property." ~~-~~(Doc. 71, at 18, ¶ 1). That argument is self defeating because, to any extent that the Deeds of Trust would purport to permit HUD to destroy Defendant's property and break into ~~the~~ his home without a court order, that portion of the contract would be void for being in violation of statute. The legal fallacy that would result if one were to adopt the Magistrate's Recommendation and accept Plaintiff's position of law is clear, ~~as~~ in that ~~the court~~ Court would then be faced with ~~two~~ constitutional crises:

~~If as~~ Judge Hegarty's Recommendation ~~suggests, the Court~~ would removes the hurdle of due process, where the Secretary could, ~~as he did in Defendant's case~~, upon notification of the death of the original borrower, ~~expediently~~ dispatch a federal contractor to remove ~~any~~ mort-

gagor's locks with a sledge hammer and install a "HUD lock" ~~thus excluding any family members or legal tenants without the impediment of seeking a court order~~. The ~~Recommendation then argues that the Court must acquiesce to precisely that action by the~~ Secretary, in the interest of "the federal policy to protect and preserve public monies which make up the assets of HUD's insurance fund[,]" (Doc. 118, at 19, ¶ 1), <u>could then invoke the Single Family Mortgage Foreclosure Act (12 U.S.C. § 3751 *et seq.*) and conclude a foreclosure in as few as 21 days (§ 3758),</u> <u>with no due-process hearing of any kind,</u>[5] *i.e.,* ~~to~~ the Court let<u>s</u> pecuniary expedience ~~serve as~~ make a handmaiden ~~to~~ <u>of</u> the law.

Next, any mortgagor with a model HECM trust deed and note, which HUD requires all mortgagees to use, and which includes a lender in possession clause, would be denied the equal protection of the private property laws. This would include, as in the ~~the~~ instant case, the criminal codes that proscribe a forcible entry, destruction of property, trespass, and burglary, which are intended to protect a dwelling's occupants, not the property's owner. The facts specific to Defendant's case are widely applicable because many reverse mortgages become due and payable when the borrower dies. HUD has litigated a number of such cases, where a family member, such as a non-borrowing spouse, was living in the home.[6] If~~,~~ the Court were to extend to the Secretary ~~the~~ <u>this kind of contractual</u> "right <u>"</u>to enter ~~upon~~ <u>-</u> and manage the property[,]"

---

5   <u>Legal scholars and federal courts have observed with sober concern that the Single Family Mortgage "Foreclosure Act 'combine[s] the harshest features of foreclosure processes currently in existence under state laws' and 'provide[s] the least protection to defaulting borrowers in comparison with the laws in each of the fifty states.' " *E.g., Nelson v. United States Secretary of Hous.*, (MD Fla, Nov. 4, 2011, No. 3-10-cv-118-J-37MCR) 2011 U.S. Dist. Lexis 128088, *3.</u>

6   HUD states that their contractor was sent to "winterize" Defendant's property (*see* Doc. 71, at 18, n.8), where HUD's contractual guidelines required the utilities to be turned off and the pipes and toilet <u>to be</u> filled with anti-freeze, which is ~~commonly~~ called a freeze out, and it is illegal.

10

*i.e.*, to effect a posessory right by force, HUD's contractors, paid by Congress, could break down the door of an occupied dwelling~~, arguing from this Court's holding, that~~ and the occupants would be bereft of a legal remedy.~~be in violation of the law if they resisted HUD's right "to enter upon and manage the property."~~

~~Plaintiff asks, and the Magistrate recommends, that the Court turn away from~~ Extending the contractual right to the Secretary to enter a dwelling without court order would also abrogate the Fourth Amendment's protections. One can argue very generally from the facts specific to HUD's forcible entry into Defendant's dwelling. ~~Here,~~ where well pleaded facts and agency policy support the allegation that HUD's break in was coordinated between ~~the~~ HUD's Regional OGC and the USAO. (*See* Doc. 90, at 6-9). ~~The facts suggest that HUD's Regional OGC coordinated the forcible entry with USAO.~~ Defendant's neighbor, a witness ~~noted~~ in BCSO Case No. 16-7379, arrived at the property before the ~~BCSO~~ responding officer~~,~~ and was present when ~~the two~~ HUD's contractors, Phillip Cuizon and Wesley Scott, led the ~~responding~~ officer through Defendant's dwelling, opening every door, including the garage~~:~~. *i.e.*, HUD's contractors facilitated an illegal search. Some of the questions Defendant hopes to answer with discovery and trial is who directed them to facilitate the search and for what were Messrs. Scott and Cuizon told to search. Adopting the Magistrate's Recommendation has broad consequences where, using the resulting decision, law enforcement could search, at a minimum, any dwelling with a Secretary held reverse mortgage by asserting that the agency believed some event of default had occurred~~.~~, as consistent with Mr. Traskos' Civil Division's advis~~ing~~ed ~~Defendant~~ that HUD ~~did~~ had not:

> [committed a] criminal trespass by virtue of their entry onto the property on December 2, 2016," because " '[u]pon acceleration under Paragraph 9 [of the Deeds

of Trust]'–which occurred no later than May 16, 2014 [the date of Verna Mae Golz's death] HUD–'(in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property[.]' Deeds of Trust ¶ 23[.]

~~That Recommendation, of accepting a contract that allows~~The Court's ruling that a contract can permit a forcible entry without court order, would be immediately applicable to a very large number of dwellings, in Colorado alone, that law enforcement may want to search but where only suspicion is present, ~~but~~ not probable cause. .This is dangerous ground.

It is in no way hyperbole to state that the consensus reached by Plaintiff, the United States Attorney, and Magistrate Hegarty is that – to the exclusion of trying facts that may lead to serious consequences for government attorneys and federal contractors that carried out those attorneys' orders – the Federal District Court for the District of Colorado should shred the Constitution.

### D.   FOURTH OBJECTION: THE SECRETARY IS ESTOPPED BY THE FACTS

The body of caselaw cited above in § B(i) is applicable to estoppel for the current set of facts: Paraphrasing Defendant's Response (in Doc. 81, at 11), in a September-17, 2014 letter addressed to the Secretary, HUD administrators, and the agency's mortgage servicer, Defendant's Arizona probate counsel, Jon Kitchel, made the following statements:

3. Dr. Golz requests exercise of the right of family sale pursuant to 24 CFR [§] 206.125(c)

4. Dr. Golz requests appraisal of the property pursuant to 24 CFR [§] 206.125(b)

   Please schedule the appraisal on or before October 3, 2014, as Dr. Golz, Personal Representative, will be available on almost any day before that date to meet the appraiser and provide access to the Property. To schedule a time and date, the appraiser may contact Dr. Golz at [Dr. and Mrs. Golz's cell-phone and home-telephone numbers were provided].

(Doc. 81, Exhibit N; *and see* Doc. 64, ¶ 88). Ivery Himes, the Director of HUD's Office of Single Family Asset Management, in an October-10, 2014 letter replying to Mr. Kitchel stated, in relevant part:

> On behalf of Secretary Castro, thank you for your letter of September 17, 2014, regarding the late Ms. Verna Mae Golz's Home Equity Conversion Mortgage.
>
> ...
>
> Dr. Golz may pursue the family sale option ... for the lesser of the loan balance or 95 percent of the appraised value. HUD's current Loan Servicing Contractor, Novad Management Consulting (Novad) will order the appraisal. The assigned appraiser will contact Dr. Golz to schedule a date and time to conduct the appraisal.

(Doc. 81, Exhibit O; *see also* Doc. 64, ¶¶ 88 and 114(iii); *and see* Doc. 64, ¶ 110, where Ms. Himes' Deputy Director of OSFAM, Mark Malec, referred to "HUD regulations and requirements at 24 C.F.R. § 206.125(b) and (c)" as governing Defendant's request to pay off the loan). Ms. Himes, and her Deputy, Mr. Malec, as those responsible for disposition of the property, knew, or must reasonably have been assumed to have known, how agency ~~policy was~~ regulations in § 206.125 were to be applied.

If, as Plaintiff argues, and as Judge Hegarty concurs, HUD is not required to comply with ~~24 C.F.R.~~ § 206.125, then Ms. Himes' representation that she was writing to Defendant "[o]n behalf of Secretary Castro" was a clear act of affirmative misconduct: the use of the agency head's name in a letter promising to do something that the agency is not required to, or must not do, is equivalent to a licensed engineer intern removing a stamp from a professional engineer's desk drawer and affixing it to plans that the engineer intern then proffers to a client as having been approved by the professional engineer.

13

In reliance on Ms. Himes' concealment, and misrepresentation, of the true facts, Defendant's family has paid over ~~seventeen thousand dollars~~ $17,000 in taxes, homeowners insurance, and ~~yard~~ maintenance. (*See* Doc. 81, at 14 ¶ 3). That amount does not include, the many-more thousands of dollars ~~T~~the Golzs family ha~~ve~~s invested in repairs to the bathroom ~~and~~, interior painting, ~~and badly needed repairs to~~ the roof, replacement of deteriorated structural-framing members, ~~and~~ replacement of siding, and exterior repainting, which Defendant's family has ~~already~~ completed across the front of the dwelling.

The Magistrate recommends awarding a hefty profit to Plaintiff for Ms. Himes' intentional mis~~representation~~conduct ~~of agency policy~~ by having the Court award the Secretary the market appreciation (27% for the period May 2014 to May 2017 alone)[7] while taxing Defendant for the costs of homeowners insurance, utilities, maintenance, property taxes, ~~and~~ repairs and improvements, which Defendant currently estimates to be in excess of $30,000.[7]

The two cases that the Magistrate cites to support ~~of~~ his recommendatio*n, FDIC v. Huls*ey, 22 F.3d 1472, 1490 (10th Cir. 1994) and *Bd. of Cty. Comm'rs v. Is*aac, 18 F.3d 1492, 1499 (10th Cir. 1994), are inapposite. The cases on point for the operative facts ~~are~~ is *Georgia-Pacific ~~Company~~* ~~and~~, supported by *McQuagge. Supra.*

       **E.**    **FIFTH OBJECTION: PLAINTIFF FORCED THIS FORECLOSURE IN~~TO~~ THE COURTS, AND THE MISREPRESENTATION THAT THE AGENCY TOOK ANY ACTION TO AVOID THIS FORECLOSURE IS BELIED BY HUD's OWN ~~FINAL AGENCY DETERMINATION~~ FAD**

---

7   *See* Doc. 81, at 14, ¶ 3 and n.4, which cites to HUD's Comprehensive Housing Market Analysis for Boulder County, available at https://www. hudusergov/portal/publications/pdf/BoulderCO-comp-17.pdf, at 9, ¶ 2.

~~Judge Hegarty notes~~The Recommendation refers to Plaintiff's allegation~~inalleg~~ that "it advised the Estate that the loan was fully due and payable and tried to recover the balance owed without proceeding to foreclosure. Am. Compl. ¶¶ 53–54."

That assertion is belied by Millicent Potts'~~, HUD Associate General Counsel for the Office of Insured Housing who replied, on~~ September 8, 2015 FAD, which states:

> HUD has already issued its final agency determination … in letters dated May 18, 2015 and June 16, 2015, no further action will be taken by the Department to facilitate a sale[8] of the subject property to the Estate. As you were advised, HUD has begun its process for foreclosing on the property and will continue this process.

(Doc. 64, ¶ 117).

HUD forced this loan into a foreclosure.

### ~~E~~F. SIXTH OBJECTION: PLAINTIFF'S FORECLOSURE IS ARBITRARY, CAPRICIOUS AND CONTRARY TO LAW

In his Recommendation, Magistrate Hegarty states:

> "~~m~~[M]ortgagee" is not defined within 24 C.F.R. §§ 206.123–129, and the parties spar over whether the lender or HUD is the "mortgagee" here. But the remaining language of Section 206.125, its context, and historical documents all clearly support Plaintiff's position that the lender is the mortgagee. Of particular note, the terms "mortgagee" and "HUD" are not used interchangeably in these sources. Both terms often appear in the same sentence, reflecting the fact that the mortgagee and HUD are effectively counter-parties to a mortgage insurance contract.

(Doc.118, at 10 ¶ 3, and 1~~8~~1, ¶ 1). This is erroneous for several reasons: as Defendant has explained in his pleadings, when the Secretary paid the insurance claim to the originating lender ~~the insurance contract,~~ the counter-party relationship ceased to exist and HUD became the mort-

---

8   In their letters and their pleadings, HUD and their attorneys have repeatedly used the term "sale" as though the agency has a posessory right to the property. They do not. Their rights and responsibilities are identical to those of the private lender that originated the loan. As assignee, HUD assumed the role of a private mortgagee with the rights defined in the mortgage contract. The Secretary is suing in his private capacity, and his foreclosure is debt collection, subject, with very few exceptions, to any affirmative defense that may be raised against any private lender. *See infra.*

gagee with the rights and responsibilities, *i.e.*, in privity with, Financial Freedom, and moreover, mortgagee and mortgagor ~~a~~were defined <u>by Congress</u> in the National Housing Act <u>(12 U.S.C. §</u> <u>1701, *et seq.*),</u> upon which this entire body of <u>administrative law</u>~~administrative~~ rests. This discussion, and the issue of the Secretary's <u>rights and</u> responsibilities <u>as mortgagee</u> ~~is~~ <u>are</u> directly relevant to the forthcoming objection that Defendant will make to Plaintiff's limited objection (Doc. 119).

### III.   CONCLUSION

On due process grounds, Magistrate Hegarty omitted to disclose, which is equivalent to concealment of, his close professional relationships with Messrs. Kevin Traskos and Zachary Mountin, which are centrally relevant to his disqualification from this matter, on a date now many months, or a year, past, consequent to which the Magistrate's Recommendation, along with his other orders and actions in this matter, are vitiated due to ~~undisclosed~~ bias, both in appearance and in fact. Secondary to ~~its~~ <u>the</u> abridgment of due process, Judge Hegarty's Recommendation -should be vacated in its entirety <u>in any case</u> on the substantive grounds that <u>it</u> is erroneous and contrary to <u>statute and</u> firmly established <u>case</u>law<u>, and it asks the Court to abrogate protec-</u> <u>tions guaranteed by the Constitution</u>.

DATED this 13th day of September, 2018.

Respectfully Submitted,



William J. Golz, Ph.D.
Defendant, Pro Se
29714 N. 152nd Way
Scottsdale, AZ 85262
Phone/Facsimile: (480) 816-5019
Email: wgolz@alumni.lsu.edu

17

## CERTIFICATE OF SERVICE

I hereby certify that I will transmit the foregoing by mail for delivery to the Clerk of Court whom will send notification of such filing to any party who has entered an appearance in this matter to the email addresses on file with CM/ECF. I hereby further certify that I will send the foregoing to the following, named, non-CM/ECF participants (via the manner indicated in parentheses):

DATED this 15th day of September, 2018,



William J. Golz, Ph.D.
Defendant, Pro Se
29714 N. 152nd Way
Scottsdale, Arizona 85262-6942
Phone/Facsimile: (480) 816-5019
Email: wgolz@alumni.lsu.edu