**FILED**
**IN THE UNITED STATES DISTRICT COURT** UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF COLORADO** DENVER, COLORADO

JAN 03 2019

Civil Action No. 17-cv-1152-RBJ-MEH
JEFFREY P. COLWELL
CLERK

BENJAMIN S. CARSON, Secretary of Housing and Urban Development, _____

     Plaintiff,

v.

ESTATE OF VERNA MAE GOLZ and WILLIAM J. GOLZ,

     Defendants.

---

### DEFENDANT'S MOTION TO EXTEND TIME TO RESPOND TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 127)

---

Defendant William J. Golz files this Motion solely in his capacity as a natural person for the reasons discussed in his prior pleadings. See Doc. 120, at 1; Doc. 121, Ex. A, at 1.

#### PRELIMINARY STATEMENT

Defendant (movant and petitioner in the Tenth Circuit Court of Appeals) filed a September-11, 2018 petition for a writ of mandamus to disqualify the magistrate and an October-16, 2018 motion for a stay and writ of prohibition to the district court. All were denied by the Tenth Circuit's October-25, 2018 order. Appellate Case 18-1373.

Upon receipt of the Tenth Circuit's order, Defendant (applicant in the Supreme Court of the United States) began researching and writing an application to stay district court proceedings and its October-4, 2018 order pending Defendant's petition for a writ of mandamus or prohibition for consideration by the Supreme Court. That application for a stay was completed on December

25, hand delivered to the Court on December 27, 2018, and added to the docket on January 2, 2019.  Supreme Court docket number 18A692.

A copy of the application for a stay to the Supreme Court (Ex. A), indispensable support-ing-documents from the application's appendices A and D (Ex. B), and an index to documents referenced in the application (Ex. C) are provided with this Motion.

### Good Cause Exists for an Extension of Time

1.  From October 25, 2018, Defendant devoted all his time to the application for a stay through its completion on December 25.  Defendant then began researching and drafting a petition to the Supreme Court for mandamus and prohibition which (irrespective of that Court's ruling on the application for a stay) must be completed in tandem with the re-search and response to Plaintiff's motion for summary judgment ("Plaintiff's Motion");

2.  Defendant will be challenging (with affidavits and discovery requests) facts that Plain-tiff's Motion has certified to the district court as true and indisputable;

3.  Defendant's response will include a motion for leave to amend his answer consistent with the district court's October-4, 2018 order, to incorporate previously unknown facts pro-vided in Plaintiff's Motion, and to add counterclaims and claims for setoff (that could not have been filed any earlier) predicated upon the government's acts of December 2, 2016 when its agents forcibly entered, installed a "HUD lock" on, and (asserting false claims of ownership) searched Defendant's home.[1]

---

1   Plaintiff and its counsel have stated that "Defendant's wife called the Sheriff's Office and asked them to go to the Property[,]" Doc. 123, at 7, n.4, which is immaterial: Defendant's understanding is that the Sheriff's Office responded to the 911 call from ADT Security Services; even if they had responded to the later call from Defendant's wife, she did not give her permission to conduct a search nor would a

For the good cause provided above, Defendant requests an additional twenty-one (21) days, until January 28, 2019, to respond to Plaintiff's Motion.

### DUTY TO CONFER

Pursuant to D.C.COLO.LCivR. 7.1(a), undersigned Defendant certifies that he transmitted a memorandum vie email to Plaintiff's counsel which concluded: "As I understand you may be on furlough, and in the event you are, like some federal employees, prohibited from working voluntarily, I will submit the motion with a note indicating that I did not receive your reply and thus presume that the motion is not unopposed." Whereas Defendant was not in receipt of an email reply from Plaintiff's counsel by the time the motion had to be delivered to FedEx for overnight delivery, Defendant presumes that this motion is not unopposed.

DATED this 2nd day of January, 2019.

Respectfully Submitted,

William J. Golz, Ph.D.
*Defendant, Pro Se*
29714 North 152nd Way
Scottsdale, Arizona 85262
Phone: (480) 816-5019

---

search have been permitted under the rules of plain view, exigent circumstances, or as a safety check: Defendant and his attorney were told by the responding officer (who stated same in his report) that he believed Phillip Cuizon and Wesley Scott who proffered the HUD Property Access Record, Doc. 64-1, and BLM LLC work order, Doc. 64-2, supported by "Zach", Doc. 64, at 28, ¶ 129 and n.17, who stated that Defendant's home had been acquired by HUD. Predicated upon those false documents and statements to the responding officer, Messrs. Cuizon and Scott, acting as agents of the government, conducted a search by escorting the officer through the home as they opened every door.

# Exhibit A

No. 18A – _____

# IN THE SUPREME COURT
## *of the*
# UNITED STATES

William J. Golz,

*Applicant,*

*v.*

Benjamin S. Carson, Secretary of Housing and Urban Development,

*Respondent.*

### ON APPLICATION TO STAY AN ORDER AND PROCEEDINGS IN THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF COLORADO

## Application to Stay District Court Order and Proceedings
### *Pending Applicant's*
## Petition to this Court
### *for a*
## Writ of Mandamus or Prohibition

### TO THE HONORABLE SONIA SOTOMAYOR
### ASSOCIATE JUSTICE OF THE SUPREME COURT OF THE UNITED STATES
### *and*
### CIRCUIT JUSTICE FOR THE TENTH CIRCUIT

William J. Golz, Ph.D.
*Applicant, Pro Se*
29714 North 152nd Way
Scottsdale, Arizona 85262
E-mail: wgolz@alumni.lsu.edu
Phone: (480) 816-5019


SUPREME COURT U.S.
POLICE OFFICE

2018 DEC 27 P 1:27

i

# TABLE OF CONTENTS

Table of Appendices.................................................................ii

Table of Authorities................................................................iii

Introduction...........................................................................1

    Questions (1) and (2)...........................................................1

Statement of the Case.............................................................2

    A.  Factual Background........................................................2

    B.  The Government's Claim of Right Under a Contract Contrary to Law.......7

Proceedings Below...................................................................10

    A.  District Court................................................................10

        (i)  Proceedings through August 2018....................................10

        (ii) Authorities, extrajudicial source of bias,
             and disqualification pursuant to 28 U.S.C. § 455.............12

            (a) Authorities..............................................................12

            (b) Extrajudicial source of bias....................................13

            (c) Disqualification pursuant to § 455..........................14

    B.  Appeals Court...............................................................15

        (i)  Petition for a writ of mandamus.....................................16

        (ii) Petition for a writ of prohibition....................................23

            (a) The Contract Contrary to Law vanished
              when conflated with the unclean hands defense.................23

            (b) Comment: authority supports an unclean hands
              defense to HUD's equitable remedy of foreclosure.............24

            (c) The district court's grant of possessory interest to HUD......26

Reasons this Stay Should be Granted.........................................28

    A.  A Majority of this Court is Likely to Grant the
        Extraordinary Writs which Address Questions of Public Importance.......28

    B.  Irreparable Harm Will Result if this Court Denies the Stay......................29

ii

(i)  The district court's order licensing the forcible entry
      is a meaningful interference with Applicant's possessory
      interest and an infringement of his Fourth Amendment rights......29

(ii) Any infringement of one's
      constitutional rights inflicts an irreparable harm...........................31

Conclusion....................................................................................................32

### TABLE OF APPENDICES

**APPENDIX A**

    Contents.............................................................................................i

    Supporting Documents...............................................................A1–3

    Notices of Errata and Exhibit 9.................................................A4–26

    Petition for Writ of Mandamus and Exhibits 1–8..................A27–111

**APPENDIX B**

    Contents.............................................................................................i

    Notice of Errata and Exhibit 6...................................................B1–6

    Pet. for Writ of Prohibition and Mot. to Stay and Exhibits 1–5 .............B7–106

**APPENDIX C**

    Contents.............................................................................................i

    Oct.-25, 2018 Order of the U.S. App. Ct. for the Tenth Cir........................C1–8

**APPENDIX D** (ADDENDUM TO SUPPORTING DOCUMENTS)

    Contents.............................................................................................i

    Supporting Documents...............................................................D1–7

iii

## TABLE OF AUTHORITIES

CASES

### Federal

*Deseret Apartments v. United States,*
  250 F.2d 457 (10th Cir. 1957)......................................................24–25,26

*Elrod v. Burns,*[1]
  427 U.S. 347 (1976)..........................................................................31

*Free the Nipple Fort Collins v. City of Fort Collins,*
  237 F. Supp. 3d 1126 (D. Colo. 2017)................................................31–32

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010)........................................................................28–29

*Lane v. Page,*
  272 F.R.D. 581 (D.N.M. 2011)..............................................................22

*Liljeberg v. Health Services Acquisition Corp.,*
  486 U.S. 865 (1988)....................................................................13,15,19

*Mazel v. Hopkins (In re Hopkins),*
  No. 7-13-11871 TA (Bankr. D.N.M. May 29, 2014).............................21–22

*Moran v. Clarke,*
  296 F.3d 638 (8th Cir. 2002)................................................................15

*Murchison, In re*
  349 U.S. 133 (1955)............................................................................12

*Potashnick v. Port City Constr. Co.,*
  609 F.2d 1101 (5th Cir. 1980)...............................................................15

*Preston v. U.S.,*
  923 F.2d 731 (9th Cir. 1991)..............................................13,15,19,27,28

*S.E.C. v. Nacchio,*
  438 F. Supp. 2D 1266 (D. Colo. 2006)...................................................26

*Soldal v. Cook County,*
  506 U.S. 56 (1992)......................................................................9,23,28

*Truax v. Corrigan,*
  257 U.S. 312 (1921)............................................................................22

*U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.,*
  No. 13-CV-2041-LRR (N.D. Iowa Nov. 19, 2014)...................................26

---

1   Secondary citations were verified from the text of the source except as annotated otherwise.

iv

*United States v. Jacobsen*,
    466 U.S. 109 (1984)............................................................9,23,27–28

*United States v. James Daniel Good Real Property*,
    510 U.S. 43 (1993)..............................................................10,23

*United States v. Olander*,
    584 F.2d 876 (9th Cir. 1978)...............................................17

*Williams v. Pennsylvania*,
    136 S. Ct. 1899 (2016)........................................................18

**State**

*Cantina Grill v. City & Cnty. of Denver Cnty. Bd. of Equalization*,
    344 P.3d 870 (Colo. 2015)...................................................30–31

*People v. Hollenbeck*,
    944 P.2d 537 (Colo. App. 1997)..........................................9

*People v. Johnson*,
    906 P.2d 122 (Colo. 1995)...................................................9

*Stachnik v. Winkel*,
    394 Mich. 375 (Mich. 1975)................................................25–26

**UNITED STATES CONSTITUTION**

U.S. Const. amend. IV..............................................................9,23,28,29,31

U.S. Const. amend. V...............................................................10,12,22,23

**STATUTES**

**United States Code**

18 U.S.C. § 2(b)........................................................................9

18 U.S.C. § 3.............................................................................9

18 U.S.C. § 1001.......................................................................9

28 U.S.C. § 455.......................................................................*passim*

28 U.S.C. § 455(a)....................................................................13,17,28

28 U.S.C. § 455(b)....................................................................28

28 U.S.C. § 455(e)....................................................................15,17

**Colorado Revised Statutes**

Colo. Rev. Stat. §§ 13-40-101–123.........................................9

v

Colo. Rev. Stat. § 18-4-203...................................................................9

Colo. Rev. Stat. § 18-4-501(d)............................................................9

Colo. Rev. Stat. § 18-4-502..............................................................5,9

Colo. Rev. Stat. § 18-4-503..............................................................5,9

Colo. Rev. Stat. § 18-4-504.................................................................5

Colo. Rev. Stat. § 38-35-117...............................................................9

**RULES**

**Code of Conduct for United States Judges**

Canon 3C(1).........................................................................................17

Canon 3C(1)(a)....................................................................................17

**Federal Rules of Civil Procedure**

Fed.R.Civ.P. 12(f)...........................................................................21–22

**OTHER**

Jennifer K. Robbennolt & Matthew Taksin, *Can judges determine their own impartiality?* A.P.A., Monitor on Psychology (Feb. 2010) https://www.apa.org/ monitor/2010/ 02/jn.aspx...........................................18–19

## INTRODUCTION

Applicant (defendant in the district court and movant and petitioner in the court of appeals) submitted a petition for a writ of mandamus (see App. A) and motion to stay and petition for a writ of prohibition (App. B) which the Tenth Circuit denied in an October-25, 2018 order (App. C).[1]  For the past nine weeks, Applicant—who was a public-school teacher with degrees not in law but in engineering and mathematics —devoted all of his time to researching and writing this Application which could not have been completed one day earlier.  Appendices A and B are referenced in this Application as a way to furnish key facts without the additional delay that would have been incurred in preparing a draft petition to address the following questions to the Court:

> (1) Whether a federal magistrate judge can refuse disclosure and waive his own disqualification in a proceeding where well-pleaded facts require discovery and trial that may reasonably lead to charges of professional misconduct, loss of employment, disbarment, or criminal prosecution for attorneys whom the magistrate hired and supervised, one over a four-year period, the other as a summer intern.

> (2) Whether the district court has the jurisdiction to grant Housing and Urban Development a possessory interest under a Colorado deed of trust pursuant to which it can forcibly enter, change the lock on, and search Applicant's home in violation of Colorado statute and rights this Court has held are protected by the Constitution.

---

1   References to appendices are by alphanumeric page where the leading capital-letter identifies the appendix in which the ordinal page is located, e.g., B17–21 refers to the seventeenth through twenty-first pages in App. B.

2

## STATEMENT OF THE CASE

### A.   Factual Background

On January 18, 2002, Applicant's late-mother Verna Mae Golz entered into a reverse-mortgage loan (the "Loan") secured by her home at 130 Beaver Creek Drive, Nederland, Colorado ("Home").   Notwithstanding the appraiser's report to the lender that only the Home and Lot 19 (the "Property") were appraised for the $246,000 Loan, the lender also liened Lot 2—separate vacant land valued at $103,000 for which Verna Mae received no consideration. Doc. 116, Ex. A.[2,3]

In a 2004 drought, when Verna Mae's well ran dry, she could not borrow against or sell Lot 2 to drill a new well, and the Home has since had no onsite source of potable water.   Verna Mae's pleas to Housing and Urban Development ("HUD" or the "agency") and the lender to release Lot 2 were unavailing, until July 2011 when she initiated a lawsuit and the lender immediately released Lot 2 — valued then at $14,000, half the cost of a new well — assigning the Loan to the Secretary in December 2011.

Verna Mae was with Applicant's family when she died on May 16, 2014. Since that date, as personal representative and sole devisee of his late-mother's estate, Applicant has had right of title to the Property.[4]  On May 23, 2014,

---

2   Documents cited by number are from *Benjamin S. Carson, Secretary of Housing and Urban Development v. Estate of Verna Mae Golz, et al.* (No. 17-cv-1152) (D. Colo.).

3   On July 12, 2016, Applicant transmitted the Loan-origination documents with appraisal reports to HUD and Kevin Traskos, Civil Division Chief for the U.S. Attorney's Office for the District of Colorado.  The lender's fraud (breach) is clear on the face of those documents.

4   On April 23, 2018, a Colorado probate attorney notarized and subsequently filed a personal-representative's deed transferring the Property from the Estate, *cum onere*, to Applicant.

3

Applicant made the first of many requests to HUD for a payoff balance, which agency regulations set at 95% of a (valid) appraisal performed within thirty days of HUD's receipt of notice of a mortgagor's death (the "95% FMV"). In reply to a September-17 letter from Applicant's probate attorney, a HUD-headquarters administrator affixed Secretary Julián Castro's name to an October-8, 2014 letter stating that an appraiser would contact Applicant whom could pay off the Loan at the 95% FMV.

No appraiser contacted Applicant, whom, on November 8, 2014 wrote to Secretary Castro again to advise that winter snows at the Property's 8,600-foot elevation would soon make a valid appraisal impracticable. Despite, or perhaps because of, that letter HUD did not have an appraiser contact Applicant until January 2015. A HUD-appraiser scheduled an appointment which he canceled with a January-8 email after Applicant had advised him of the below-ground defects. Applicant was contacted by a second appraiser on January 20 stating that HUD had directed him to do a rush appraisal in two days, with a blizzard advisory in effect through January 22, the Property already covered in snow, and the hand-dug well buried.[5]

When the snow-pack melted, HUD resumed its refusal to order an appraisal, stated it would initiate foreclosure immediately, and voided and returned Applicant's bank-verified checks tendering payment of the Loan based upon a HUD-Roster appraiser's report paid for by Applicant. On September 8, 2015, HUD Asso-

---

5   HUD exempts appraisers from moving "plant life, soil, snow, ice or debris that obstructs access or visibility." HUD Handbook 4150.2, App. D, at D-3; https://www.hud.gov/sites/documents/41502APPDHSGH.PDF.

4

ciate General Counsel for the Office of Insured Housing, Millicent Potts, refused Applicant's requests to order an appraisal stating that: "HUD has already issued its final agency determination [the "FAD"] ... has begun its process for foreclosing on the property and will continue the process."  HUD had threatened immediate foreclosure six times by October 6, 2015.

HUD did not initiate foreclosure, whereupon its regulations would have required performance of an appraisal and acceptance of an heir's payoff.  On May 4, 2016, Applicant wrote to the Secretary seeking redress from Ms. Potts' FAD which violated agency regulations.  On May 11, a HUD agent entered onto the Property.  On June 6, 2016, a HUD agent returned and peered into the windows when Applicant's son was inside.  Applicant responded immediately with a June-6 cease-and-desist letter to the Secretary.

In a letter dated nine days later, June 15, Applicant was advised that HUD had referred the Loan for collection to the U.S. Attorney's Office for the District of Colorado (the "USAO").  By June 27, 2016, Applicant had transmitted 139-pages of documentation regarding the Property to USAO Civil Division Chief Kevin Traskos.  The transmittals included notice to Mr. Traskos that Applicant's family was occupying the Home and that HUD must not enter onto the Property again without prior permission.

In spite of the cease-and-desist notices, HUD's agent trespassed on July 6.  On July 12, 2016, Applicant transmitted an additional forty-seven pages of

5

documentation to Mr. Traskos.[6] On August 2, 2016, Applicant sent a twelve-page transmittal to Mr. Traskos advising that HUD's July-6 entry had been a criminal trespass, that a security alarm would be installed in the Home, and that any future entry onto the Property by HUD or its agents without prior notice or permission would be a criminal trespass. A84–93. That letter provided Mr. Traskos with a copy of Colo. Rev. Stat. §§ 18-4-502–504 which defines criminal trespass. A95–96.

Two days later, on August 4, 2016, Assistant U.S. Attorneys ("AUSA"s) Elizabeth Froehlke and Shiwon Choe contacted Applicant whose attorney's ongoing dialogue with the AUSAs included exchanges of emails in November. On December 2, 2016, the Boulder County Sheriff's Office (the "BCSO") responded to an alarm and interdicted two men, Wesley Scott and Phillip Cuizon, inside Applicant's Home. Messrs. Cuizon and Scott, employed by HUD-contractor BLM Companies LLC ("BLM"), had destroyed the dead-bolted storm-door, broken through the front door, and installed a "HUD lock" to exclude Applicant's family; proffering HUD documents falsely stating that the Property was owned by HUD, the men then conducted the responding officer on a search opening every door in the Home (collectively, the "forcible entry").

Over the next five months, Applicant wrote a series of letters to Acting U.S. Attorney Robert Troyer to provide facts and make requests for an investigation of the forcible entry. The first letter was a five-page complaint on December 25, 2016 that documented the nearly 200-pages of correspondence sent to Mr. Traskos.

---

6   See n.3, *supra*, p.2.

6

On January 8, 2017, Applicant sent Mr. Troyer a sixty-one-page chronology of HUD's multi-year pattern of acts of intimidation and oppression that culminated in the forcible entry. See A49, ¶ 1 to A52, ¶ 1.

On January 11, 2017, the BCSO provided Applicant with the records from its investigation of the forcible entry. BCSO Case 16-7379 (the "BCSO File"). Therein, Sergeant William Manes' reported that his voice messages and emails were not returned by HUD-supervisor John Denny or BLM-manager Tracy Willingham. A67.  In a January-12 letter, Applicant provided Mr. Troyer with a copy of a December-27, 2016 email wherein Sgt. Manes had requested Ms. Willingham's reply "ASAP" to discuss the "burglary/trespass, criminal mischief and other property damage ... by BLM CO, LLC[.]" A68.  Eight days later, on January 20, 2017, the BCSO Records Section provided a copy of the BCSO File to Ms. Willingham which was delivered to the USAO Civil Division, see D1, requiring coordination among the USAO Civil Division, BLM, and HUD—per agency policy, its Office of General Counsel ("OGC"). See n.7, *infra*, pp. 7–8.

Mr. Troyer did not reply to the seventy-pages of correspondence he had received from Applicant between December 25 and January 12, 2017.  On April 27, Applicant wrote to Mr. Troyer noting the USAO's conflict and asking that the investigation-request be transmitted to the U.S. Attorney General.  In a May-3 letter, Mr. Troyer responding through AUSA J. Chris Larson denied Applicant's requests. Six days later, on May 9, 2017, the USAO filed the instant foreclosure action.

7

**B.    The Government's Claim of Right Under a Contract Contrary to Law**

Department of Justice attorneys are sworn to defend the Constitution, and as officers of the court, their particularized professional-responsibilities include not making false statements of law to a person who is not their client and acting with candor before the tribunal.   Whereas contracts, property, and constitutional law are required coursework for every first-year law student, it cannot be dismissed as a mistake of law when an attorney advises their client to take actions that rely upon, or files court documents that ask the court to enforce, a contract that violates state statute or abridges a constitutionally protected right. See B11, ¶ 2 to B12, ¶ 1 and n.20.

In a June-6, 2017 letter, AUSA Choe advised Applicant that "HUD staff" did not "commit a criminal trespass by virtue of their entry onto the property on December 2, 2016," because:

> "[u]pon acceleration under Paragraph 9 [of the Deeds of Trust]"—which occurred no later than May 16, 2014—HUD "<u>(in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property</u>[.]" Deeds of Trust ¶ 23.

(emphasis added) (the part of the above text set in underline will be the "Lender in Possession Clause").

HUD, its attorneys in its OGC, its Office of Regional Counsel in Denver, and the USAO Civil Division (collectively, the "Government")[7] were noticed and

---

7    "Per agency policy, when a Secretary Held Mortgage is referred for routine foreclosure it is managed by Regional Counsel[,]" whereby HUD's contractor BLM would, presumably, have

8

admit that at all relevant times Applicant has had right of title to and, with his family, has been the lawful occupant of the Property. A61, ¶ 127.  By November 10, 2017, AUSAs Froehlke and Choe had submitted their resignations to the USAO, but the Government's court-filings continued to assert the Lender in Possession Clause as a license for HUD's forcible entry.

In the Government's motion to strike, the agency's current attorney of record, AUSA Jasand Mock, states that "HUD and their agents" could not have,

> committed a criminal trespass, forcible entry, and criminal mischief, and had intent to commit bur-glary under Colorado law. None of Defendants' claims have any merit for the simple reason that the Deeds of Trust expressly authorize HUD to en-ter upon and manage the property.

Doc. 71 at 18, ¶ 1 (emphasis added).  The Government's claim that the Lender in Possession Clause permitted the forcible entry, and other violations of law concomi-tant thereto, ask the court to enforce a "Contract Contrary to Law":

The HUD documents fraudulently stating that the agency owned the Property on December 2, 2016, which Messrs. Scott and Cuizon proffered to the re-sponding officer, are in evidence in the BCSO File. D6–7. A federal employee's mak-ing false statements with the intent of having HUD issue a work order or disburse agency funds to pay BLM or Messrs. Cuizon and Scott to commit acts prohibited by Colorado statute and the Constitution would violate federal law, including, but not

---

been "directed to carry out the forcible entry by [Regional Counsel] with the concurrence of the agency's attorneys at the USAO." See A52, ¶ 3 to A55, ¶ 1 (discussion of the facts with ci-tations to agency policy).

9

necessarily limited to, 18 U.S.C. §§ 2(b), 3, and 1001. Whereas the forcible entry was executed without court order, it was a per se violation of Colorado's forcible entry and detainer act. Colo. Rev. Stat. §§ 13-40-101–123; see also § 38-35-117. The facts alleged constitute criminal trespass, §§ 18-4-502 or 503, felony criminal-mischief, § 18-4-501(d), and second-degree burglary. § 18-4-203.[8]

This Court granted certiorari to *Soldal v. Cook County*, 506 U.S. 56 (1992), to consider whether the Soldals' Fourth Amendment rights were implicated in an Illinois forcible entry and detainer action, executed under color of law. In Illinois, like Colorado, "a tenant cannot be dispossessed absent a judgment of eviction." *Id.,* at 58. Here, the Court also explained that temporarily dispossessing the Soldals of their home violated their Fourth Amendment rights because a "'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)." *Soldal*, 506 U.S. at 61. Applying the standard in *Soldal* and *Jabobsen*, the Government's break-in, false statements of ownership, and installation of a "HUD lock" to exclude the Golzes was a meaningful interference and a seizure.

The Government asserts that their forcible entry and seizure of the Home was lawful because the Lender in Possession Clause permitted "HUD ... to enter upon, take possession of and manage the Property[.]" This Court remanded a

---

8   As noted in *People v. Hollenbeck*, 944 P.2d 537, 539 (Colo. App. 1997), "[t]he law of burglary was designed to protect the dweller, and hence, the controlling question is occupancy rather than ownership. *People v. Johnson*, 906 P.2d 122[, 125] (Colo. 1995)."

10

civil forfeiture for nearly identical language, holding that "the Government's own submission, [claiming that] the seizure gave it the right to charge rent, to condition occupancy, and even to evict the occupants[,]" violated the Due Process Clause. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993).

PROCEEDINGS BELOW

**A.    District Court**

   **(i)    Proceedings through August 2018**

On May 9, 2017, the Government filed *Estate of Golz* on behalf of the Secretary who is suing in his private capacity for the equitable remedy of foreclosure. See B30, at ¶ 2. The case was assigned to U.S. Magistrate Judge Michael Hegarty who was sole judicial-officer until April 9, 2018, when pretrial proceedings were referred to him.

Facts alleging Mr. Traskos' and HUD Trial Attorney Zachary Mountin's involvement in the forcible entry were documented in Applicant's filings beginning in 2017. A38, n.28.[9] Applicant learned from an outside source in early April 2018 that Magistrate Hegarty had hired and supervised Messrs. Mountin and Traskos (the "magistrate's colleagues"). Applicant was able to independently verify certain facts by the evening of April 15, 2018 which he documented in a memorandum which upon completion at about 3:00 a.m. on April 16 he emailed to all parties and the magistrate.[10] The memorandum requested that the magistrate vacate the pretrial conference scheduled for that morning at 10 a.m. (the "status conference")

---

9   See also n.7, *supra*, p. 7.

10   The email communication complied with the magistrate's practice standards. See A80–82.

11

to allow for deliberation of the facts regarding his duty to the court to disqualify himself.

The magistrate overruled Applicant's verbal objection to holding the status conference, A14:22–15:2, and issued a peremptory rule: "I'm not going to re-cuse myself under any circumstances, because these are just simply not conflicts." A15:3–5. The magistrate proffered a dissimilar set of circumstances to which Appli-cant replied with a clarification: "Yes, but what we're here about is decisions that you could make as to whether or not the circumstances of this trespass were crimi-nal, and the potential consequences to Mr. Trascos [sic] and to Zachary Mountain [sic][.]" A15:21–25.

On April 19, 2018, Applicant filed a motion, Doc. 100, to request that U.S. District Judge R. Brooke Jackson vacate the order of reference to the magis-trate. A70–78. The case had been assigned to Judge Jackson only ten days earlier, on April 10. Ninety-nine docket entries had been filed over the prior eleven-months, May 2017 to April 2018. The court filings — documenting acts of many individuals, federal contractors, and the Government over a span of three years, 2014 to 2017, included exhibits, inspection reports, and evidence from the BCSO File. Notwith-standing the depth and breadth of the record, the district judge was so confident that Applicant's motion detailing facts and the extrajudicial source of the magis-trate's bias had no merit that he denied it in a one-sentence text entry the day after it was filed. A30, ¶ 2 and n.10.

12

The magistrate announced at the status conference that, "a recommendation [by Judge Jackson] can take six months to eight months or more to get decided. And we can't afford to just let the case sit around that long. So there will be a recommendation out within probably a week or two." A16:4–9. When May, June, and then July, passed, Applicant believed that with an opportunity to reflect on his duty to the court the magistrate would come to recognize that the facts clearly disqualified him and that his position was untenable. Four-and-one-half months after the status conference, on August 28, 2018, the magistrate issued his recommendation.

Magistrate Hegarty's recommendation was not relevant in the petition for a mandate that Applicant immediately began writing which incorporated no facts from the trial-court record beyond May 2018 and was predicated upon the extrajudicial factors and appearance of bias that had been presented in the recusal motions submitted to the magistrate and district judge in April 2018.

### (ii)   Authorities, extrajudicial source of bias, and disqualification pursuant to 28 U.S.C. § 455

#### (a)   Authorities

This Court, in *In re Murchison*, 349 U.S. 133 (1955), stated that "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *Id.*, at 136.

13

In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. (1988), Justice Stevens writing for the Court stated: "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Id.*, at 865.  In *Liljeberg*, the Court affirmed the Fifth Circuit's order vacating the final judgment of U.S. District Judge Robert Collins—a member of the Board of Trustees for Loyola University, a third party that could have benefited from the judge's decisions.

In *Preston v. U.S.*, 923 F.2d 731 (9th Cir. 1991), the court noted that the current "standard for ... recusal under 28 U.S.C. § 455 ... involves ascertaining 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Id.*, at 734 (citation omitted).  Prior to his appointment to the federal bench in 1985, Judge J. Spencer "Letts was 'of counsel' to the law firm of Latham Watkins.  The law firm represented Hughes Aircraft Company....  Although Hughes was never a party to the litigation before Judge Letts," *id.*, at 732, the appeals court vacated the judge's final "judgment which relieved the government of liability to the heirs eliminat[ing] any claim the government would have had against Hughes for indemnification[,]" *id.*, at 735, because an impartial observer could reasonably have inferred that the judge's opinion may have been influenced by his partiality to Latham Watkins or Hughes.

**(b)    Extrajudicial source of bias**

The facts on record indicate that the magistrate supervised Mr. Traskos from 2002 to 2006, A1–2, and mentored Mr. Mountin as a summer intern

14

from May through August 2008, A3, whereafter Mr. Mountin found employment as a research assistant to Professor Melissa Hart[11] who is married to Mr. Traskos. D2. Whatever recommendations were, or were not, involved in Mr. Mountin's August-2008 move from employment with Magistrate Hegarty to Professor Hart, it is clear that these people have had close working relationships.

Applicant introduced the subject of the magistrate's colleagues at the status conference. The magistrate, without speaking their names, offered only that "any contact I've had [was] more than 12 years ago[,]" A15:19–20, which would have been 2006. Whether it has been twelve years or ten, or months, or weeks is immaterial when the question is whether an objective observer would believe that Magistrate Hegarty could be impartial when making recommendations and discovery decisions that could provide absolution for, or result in prosecution of, Mr. Traskos or Mr. Mountin for misconduct and crimes. The answer is obvious.

(c)     **Disqualification pursuant to § 455**

The perception that Magistrate Hegarty may misuse his position to protect close colleagues from consequences for participating in a crime would certainly create no less an appearance of bias in the mind of an impartial observer

---

11 From January to August 2018, Mr. Mountin was on hiatus from HUD clerking for Justice Hart at the Colorado Supreme Court. A3. In November 2018, Applicant learned that while Professor Hart was faculty adviser for *The University of Colorado Law Review,* Mr. Mountin was on the Board of Editors for Volume 80 (2009), D3, and Editor in Chief for Volume 81 (2010). D4. That relationship *may* be only collateral but it raises questions relevant to whether it would have been likely for Messrs. Mountin and Traskos to have conferred prior to the forcible entry and how close these people were, or are, to Magistrate Hegarty who did not disclose those facts for the record.

---

15

than that Judges Collins and Letts may misuse their positions to protect the financial interests of Loyola or Hughes, respectively.

As this Court stated in *Liljeberg*, 486 U.S. at 866: "[I]t is remarkable — and quite inexcusable — that Judge Collins failed to recuse himself on March 24, 1982 [when he was in receipt of actual knowledge of Loyola's interests]. A full disclosure at that time would have completely removed any basis for questioning the judge's impartiality and would have made it possible for a different judge to decide whether the interests — and appearance — of justice would have been served[.]" *See also Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir. 2002) ("We find particularly worrisome the district court's failure to disclose this conflict himself, as permitted by section 455(e).").

In vacating Judge Letts' decision in *Preston*, 923 F.2d at 735–36, the court quoted "the words of the Fifth Circuit that '[t]he unfairness and expense which results from disqualification . . . can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned.' *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1115 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980)."

## B.    Appeals Court

Applicant's petitions to the court of appeals for writs of mandamus and prohibition raise separate issues and are amenable to separate discussions.

16

**(i)    Petition for a writ of mandamus**

The petition for writ of mandate submitted to the appeals court pre-
sented Question (1) which offers an uncomplicated set of extrajudicial disqualifying
factors that can be summarized as follows: Applicant's 2017 district-court filings ar-
ticulated the forcible entry in an affirmative defense and in potential counterclaims
and claims for setoff which can be added at any time consistent with facts discov-
ered during the litigation.  Facts now in the trial record are sufficient to the reason-
able inference that Mr. Traskos and, possibly, Mr. Mountin had advance knowledge
of, were involved in, or have information material to the participation of other fed-
eral employees and contractors in criminal acts concomitant to torts associated with
the forcible entry.  The facts pleaded, including exhibits from the BCSO File, sup-
port the inference that the Government's acts of December 2, 2016 involved crimi-
nal intent to commit felonies against Applicant's family and to violate their consti-
tutionally protected rights.  These allegations merit development of a complete fac-
tual-record.

On October 4, 2018, less than a week after Applicant had responded to
the Government's objection to the magistrate's recommendation, the district judge
issued his seventeen-page order, Doc. 125 (the "October-4 order"). See B89.  Absent
any fact finding, the October-4 order absolved the magistrate's colleagues of any
possible involvement in the forcible entry; consequent to that ruling, the criteria for
appearance of bias when a judge is in position to shield close colleagues from serious

17

consequences was obviated and replaced by the more-facile standard of mere ac-
quaintanceship.[12]

When the October-4 order exculpated Messrs. Traskos and Mountin, it
simultaneously relieved the magistrate of any responsibility he would have had to
disclose and disqualify himself pursuant to 28 U.S.C. §§ 455(a),(e) and the Code of
Conduct for United States Judges. See Canon 3C(1)(a); *and see United States v.
Olander*, 584 F.2d 876, 882 (9th Cir. 1978) ("Both Canon 3C(1) and § 455(a) provide
for a judge's disqualification in any proceeding 'in which his impartiality might rea-
sonably be questioned."); and see A5, § I, then A38–43, § III.B (providing details of
the conduct of the status conference not discussed in this Application).

The appeals court did not consider Question (2) but uncritically
adopted the district court's conclusions in whole, stating that: "As the district court
explained, the past professional relationships that Dr. Golz has identified are too re-
mote in time to suggest, without more, that Judge Hegarty is biased in favor of the
two attorneys in question." See C6. There is, as discussed in this Application and in
the trial-court record, a great deal more which cannot be found on the face of the
pleadings and requires discovery and trial.

The appeals court's background-section, concluding with an inset 500-
word passage (the "quoted passage") from the October-4 order, begins:

---

12 The objective disqualifying factors became manifest before the case was assigned to the dis-
trict judge who, on April 20, 2018, ruled that the magistrate was not biased; with regard to
that issue, the October-4 order is, by definition, an *ex post facto* rationale for a decision the
judge had made and published almost six months before.

18

> The motion to recuse was properly directed to Judge Hegarty in the first instance. He found that there was no conflict. At least implicitly he found that a reasonable person, knowing all the relevant facts, would not harbor doubts about his impartiality.

C4.  The record of the status conference, Doc. 126, does not support Judge Jackson's presumption that the magistrate ever considered whether "a reasonable person, knowing all the relevant facts, would not harbor doubts[.]"  At present, "all the relevant facts" are known only to the magistrate who did not utter Messrs. Mountin's or Traskos' name prior to curtailing the discussion.  The judge's presumption is also in conflict with the magistrate's all-inclusive statement that "I'm not going to recuse myself under any circumstances[.]"  That statement admits of no interpretation and means that the magistrate would not recuse himself even in the circumstance where an impartial observer would conclude from the facts that there was an appearance of bias.

Nor is the magistrate's acquitting himself of bias a criterion in § 455 by which he may waive his own disqualification. As this Court has noted: "Bias is easy to attribute to others and difficult to discern in oneself." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016). "As noted by Judge Richard A. Posner in his book *How Judges Think* (Harvard University Press, 2008), '[w]e use introspection to acquit ourselves of accusations of bias, while using realistic notions of human behavior to identify bias in others.'"[13]

---

[13]  Jennifer K. Robbennolt, J.D., Ph.D., and Matthew Taksin, J.D., University of Illinois College of Law, *Can judges determine their own impartiality?* A.P.A., Monitor on Psychology, Vol. 41,

19

The quoted passage then goes on to "note as well that Mr. Traskos is not counsel of record in the present case[,]" which is not germane to the issue in question: in *Preston*, the heirs first motion to disqualify Judge Letts was submitted to Judge Terry Hatter, who "denied the motion because 'as [the heirs] readily admit, Hughes [is] not a party to [the] action; the only defendant is the United States.'" 923 F.2d at 732 (citation omitted). Citing to *Liljeberg*, the court in *Preston*, pointed out that "[t]he Supreme Court has never limited recusal requirements to cases in which the judge's conflict was with the parties named in the suit." 923 F.2d at 735.

The quoted passage continues that Mr. Traskos' "only relationship with the case documented by Dr. Golz [is] that in June, July and August 2016 Dr. Golz sent letters to him, as the Chief of the Civil Division[,]" which is misleading in that the judge omits to mention that court documents and exhibits show that Applicant sent hundreds of pages of correspondence to Mr. Traskos over three separate-months entreating him to stop his agency client from trespassing and peering into the windows of Applicant's family's Home.

The district court's conclusive ruling, absent any discovery, that Mr. Traskos could have had no foreknowledge of, or involvement in, the December-2, 2016 acts requires the presumption that Mr. Traskos was dismissive of his professional responsibilities. As Civil Division Chief, Mr. Traskos is a supervisory lawyer

---

No. 2, p. 24 (Feb. 2010). ("Psychologists have shown that individuals experience an illusion of objectivity: People believe they are objective (Pyszczynski and Greenberg, 1987), see themselves as more ethical and fair than others (Messick et al., 1985), and experience a 'bias blind spot,' the tendency to see bias in others but not in themselves (Pronin et al., 2004)); https://www.apa.org/ monitor/2010/ 02/jn.aspx.

20

whose responsibilities for this set of facts included: advising his agency client of Applicant's cease-and-desist letters; counseling HUD to discontinue its pattern of illegal behavior; and providing direction to his subordinate civil-division attorneys, including reviewing and approving pleadings, especially when the government's legal position involves a significant question of law as it does with respect to the forcible entry into Applicant's Home:

AUSA Choe's June-6 letter to Applicant stated that the Lender in Possession Clause permitted the Government's forcible entry. Following AUSA Froehlke's and Choe's resignation from the USAO in 2017, AUSA Mock became the USAO Civil Division's advocate for that position in court documents and in his official correspondence to Mr. Mountin and Applicant. *Infra.*

Although Applicant provided citations to statutes that had been violated, AUSA Mock continued to file documents urging the court to enforce the deed of trust to license the forcible entry. Even if it were not implausible to propose that both AUSAs Choe and Mock would put at risk their professional ethics by advocating for illegal contract-rights, without Mr. Traskos' knowledge and support, the USAO's unremitting defense of the Contract Contrary to Law would nonetheless raise significant legal issues and a host of questions, including:

> • Whether there were discussions between HUD's OGC, its Office of Regional Counsel in Denver, and the USAO Civil Division preceding the forcible entry and, if so, who took part in, and what was the substance of, those discussions;

21

- Whether HUD's OGC, its Office of Regional Counsel, or the USAO were involved in making the false statements that caused HUD to issue the work order and HUD Property Access Record that Messrs. Cuizon and Scott proffered to the responding officer. D6–7;

- Whether Messrs. Cuizon and Scott were told to expect local law-enforcement (since Mr. Traskos had been advised that the Home was alarmed) and for what were they told to facilitate the warrantless search;

- Who the individual was that identified himself on the phone to the responding officer as "Zach" who then falsely stated that the Home had been acquired by HUD and purchased by BLM. A62, n.17;

- Whether Colorado HUD-supervisor Mr. Denny and BLM-manager Ms. Willingham were instructed not to return Sgt. Manes' voice mail and email messages and, if they were, who told them to obstruct the BCSO investigation. A62, ¶ 130 and A63, n.18.

Answers to the above questions, and many others, are needed to find the facts material to this case which would remain hidden if one were to accept the district court's false-premise that it has surmised all findings of disputed fact and conclusions of contested law from a Rule 12(f) motion. In *Mazel v. Hopkins (In re Hopkins)*, No. 7-13-11871 TA, at *6–7 (Bankr. D.N.M. May 29, 2014), the district court reviewed the authorities and standards for motions to strike, noting that:

> [N]umerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor

22

> by the federal courts and are infrequently granted.
> Thus, in order to succeed on a Rule 12(f) motion to
> strike surplus matter from an answer, the federal
> courts have established a standard under which it
> must be shown that the allegations being chal-
> lenged are so unrelated to the plaintiff's claims as
> to be unworthy of any consideration as a defense
> and that their presence in the pleading throughout
> the proceeding will be prejudicial to the moving
> party. Wright & Miller, *Federal Practice and Proce-
> dure: Civil* 3d §1380, n.11 and accompanying text
> (footnotes omitted). This standard is accepted in
> New Mexico. *See Lane* [*v. Page*], 272 F.R.D. [581,]
> 587 [(D.N.M. 2011)] (citing Wright & Miller and
> compiling cases).

Rule 12(f) and the jurisprudential standards surveyed in *Mazel* are subordinate to

the constitutional principles of due process.   Chief Justice Taft, writing for the

Court in *Truax v. Corrigan*, 257 U.S. 312 (1921), offered this admonition regarding

the imperative of rendering judgment only after inquiry and trial:

> The due process clause requires that every [woman
> and] man shall have the protection of his day in
> court, and the benefit of the general law, a law
> which hears before it condemns, which proceeds not
> arbitrarily or capriciously but upon inquiry, and
> renders judgment only after trial, so that every citi-
> zen shall hold his life, liberty, property and immu-
> nities under the protection of the general rules
> which govern society. ... "This is a government of
> laws and not of men [and women]," "No [woman or]
> man is above the law," are all maxims showing the
> spirit in which legislatures, executives and courts
> are expected to make, execute and apply laws.

23

*Id.*, at 332.

Declining to exercise oversight in mandamus, the appeals court adopted the October-4 order which declared the question of the magistrate's bias moot because all necessary findings of fact and law had been inferred from a motion to strike which circumvents requirements of due process and the intent of § 455 as this Court has articulated them.

## (ii) Petition for a writ of prohibition

### (a) The Contract Contrary to Law vanished when conflated with the unclean hands defense

The appeals court did not address Question (2) on whether the district court has jurisdiction to grant a possessory interest to HUD under the Lender in Possession Clause which would permit the forcible entry.[14] Conflating that question with the separate issue of whether it was error for the district court to strike unclean hands as a legally insufficient defense to a HUD foreclosure, the appeals court made the following misstatement:

> The crux of Dr. Golz's second petition is a claim of error in the district court's granting of the Secretary's motion to strike his affirmative defenses, in particular his unclean-hands defense based upon the alleged forcible entry.

---

14 Applicant's October-16, 2018 motion to stay and petition for writ of prohibition cited to this Court's opinions in *Soldal, Jacobsen,* and *Good Real Property* in support of the requested relief of "a writ prohibiting the district court from … issuing opinions and orders that license the [G]overnment's contravention of … that right [Applicant's] family shares with all citizens 'to be secure in their persons, houses, papers, and effects' (U.S. Const. amend. IV)." B18, ¶ 1 and n.34.

24

C7, at ¶ 3. There is no occurrence of the words "affirmative" or "defense" in the peti-

tion, because, as discussed in both the petition to the appeals court and in this Ap-

plication, granting HUD a possessory right under the Contract Contrary to Law has

consequences that reach far beyond the clean hands doctrine.

Whereas the appeals court introduced the issue of the unclean hands

defense, and where the elimination of that defense is consistent with the magis-

trate's precluding a trial of the forcible entry to shield his colleagues, it has rele-

vance to the questions Applicant will present to this Court in a petition and thus

merits the comment below.

**(b)     Comment: authority supports an unclean hands defense
to HUD's equitable remedy of foreclosure**

The appeals panel stated that Magistrate Hegarty had "set forth his le-

gal analysis and concluded, as a matter of law, that 'unclean hands is not a valid de-

fense to HUD foreclosure.'" C3, ¶ 4.  The magistrate's one-paragraph analysis cited

to three cases which are inapplicable to *Estate of Golz* and disregarded applicable

countervailing-authority which includes a published Tenth Circuit opinion:

In *Deseret Apartments v. United States*, 250 F.2d 457 (10th Cir. 1957):

"The United States, acting for the Federal Housing Commissioner, brought [an] ac-

tion against Deseret Apartments, Inc., to foreclose a real estate and chattel mort-

gage on certain housing units constructed by Deseret." *Id.*, at 458.  The Tenth Cir-

cuit stated that, "unless the Government did something which in good conscience it

should not have done, or failed to do something fair dealing required it to do, it

25

comes into court with clean hands and is entitled to the equitable relief it obtained."
*Id.*, at 458.

Even if one were to disregard HUD's refusal to order an appraisal from
May to December 2014, its attempt to conduct an invalid appraisal in January
2015, its refusal of Applicant's tender of payment and six foreclosure threats in
2015, and the trespasses and invasion of privacy in 2016, what remains is the
forcible entry which entailed falsification of a work order to facilitate a break-in,
search, lock change and seizure of Applicant's family's Home. That alone would
constitute "something which in good conscience [HUD] should not have done,"
whereby "the Government may not invoke the aid of a court of equity if for any rea-
son its conduct is such that it must be said it comes into court with unclean hands."
*Id.*, at 458.

Where *Deseret Apartments* makes the unclean hands defense applica-
ble to a HUD foreclosure in the Tenth Circuit, that defense to a suit by the federal
government seeking contract rights as it does in *Estate of Golz* is supported by a
body of established law. See B30, ¶ 3; B53, ¶ 1 to B54, ¶ 2. The Michigan Supreme
Court noting the general rule of equity that "[n]o citation of authority is necessary
to establish that one who seeks the aid of equity must come in with clean hands[,]"
observed that the "United States Supreme Court captured the essence of the maxim
when it said: The clean hands maxim is a self-imposed ordinance that closes the
doors of a court of equity to one tainted with inequitableness or bad faith relative to

26

the matter in which he seeks relief[.]" *Stachnik v. Winkel*, 394 Mich. 375, 382-83 (Mich. 1975) (internal quotation marks and brackets omitted).

Even in government-enforcement actions, the District of Colorado has neither held that unclean hands is legally insufficient nor has it allowed it to be thwarted with a motion to strike. In *S.E.C. v. Nacchio*, the court noted that "unclean hands ... cannot be adjudicated on the face of the pleadings, and must therefore await development of a more complete factual record." 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006). In *U.S. Commodity Futures Trading Comm'n v. U.S. Bank, N.A.*, No. 13-CV-2041-LRR, at *63, n.17 (N.D. Iowa Nov. 19, 2014), the court noted that, in the enforcement case it was trying, a higher standard applied to unclean hands as compared to "*Deseret Apartments, Inc.*, [which] was not in the context of a government enforcement action pursuant to a congressional mandate to serve the public interest."

    (c)    **The district court's grant of possessory interest to HUD**

The Government asserts that it did not "commit a criminal trespass by virtue of its entry onto the property on December 2, 2016," because Verna Mae signed deeds of trust that incorporated the Lender in Possession Clause, which reads, in relevant part:

> Lender[15] (in person, by agent or by judicially appointed receiver) <u>shall be entitled to enter upon, take possession of and manage the Property and to collect rents of the Property</u>[.]

---

15 The Secretary of HUD is defined as the Lender on the Second Deed of Trust. Doc. 31-5, at 2.

27

Doc. 31-5, at 8, ¶ 23 (emphasis added). In his recommendation, the magistrate embraced the Government's position, stating that:

> I do find it compelling [ ] that <u>the deeds of trust explicitly provide HUD with the right to enter and manage the Property</u>[,]

B83, ¶ 2 (emphasis added) which would avert a trial of facts of the forcible entry and thus preclude any adverse consequences for the magistrate's colleagues. *Cf.* *Preston*, 923 F.2d at 735 ("The existence of the indemnification clause also defeats the government's argument that denial of the recusal motion was harmless error. The judgment which relieved the government of liability to the heirs eliminated any claim the government would have had against Hughes for indemnification.").

In adopting the magistrate's recommendation, the district judge stated:

> The "trespasses" and "forcible entry" appear to have been consistent with the deed of trust, provided that HUD's decision to terminate its attempts to obtain an appraisal was reasonable[,]

(emphasis added), i.e., if the agency's executive decision to refuse Applicant an appraisal is deemed reasonable, that condition would be sufficient for the deed of trust to authorize HUD to violate Applicant's family's rights that are protected by Colorado statute and the Constitution.

In *Jacobsen*, Justice Stevens writing for the Court noted that "[w]hile the concept of a 'seizure' of property is not much discussed in our cases, this definition follows from our oft-repeated definition of the 'seizure' of a person within the

28

meaning of the Fourth Amendment — meaningful interference, however brief, with an individual's freedom of movement." 466 U.S. at 114, n.5 (citations omitted).   In *Soldal*, the Court stated that "[w]hat matters is the intrusion on the people's security from governmental interference. Therefore, the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all." 506 U.S. at 69.

Whereas the reasonableness of HUD's decision to refuse Applicant an appraisal does not provide a sufficient condition for the Government to violate Applicant's family's constitutionally protected rights, the October-4 order denying Applicant the protection of the law is bias where "[s]ection 455(b) [is applicable as it] also describes situations that create an apparent conflict, because it provides examples of situations in which a judge's 'impartiality might reasonably be questioned' pursuant to section 455(a)." *Preston*, 923 F.2d at 734 (citations omitted).

## REASONS THIS STAY SHOULD BE GRANTED

### A.    A Majority of this Court is Likely to Grant the Extraordinary Writs which Address Questions of Public Importance

The preceding arguments were provided to support the thesis that a majority of the Court will vote to issue the extraordinary writs. *E.g., see Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) ("To obtain a stay pending the filing and disposition of a petition for a writ of mandamus, an applicant must show a fair prospect that a majority of the Court will vote to grant mandamus[.]").

29

In *Hollingsworth,* the Court stated that it "will issue the writ of mandamus directly to a federal district court 'only where a question of public importance is involved, or where the question is of such a nature that it is peculiarly appropriate that such action by this court should be taken.'" 558 U.S. at 190 (citation omitted). The issues before the Court in this Application go to the district court's integrity, its jurisdiction, and its ministerial duty to afford to all parties the protection of the laws. These are significant public-policy questions which are appropriately addressed in a petition for a writ of mandamus and prohibition to the Court.

**B.    Irreparable Harm Will Result if this Court Denies the Stay**

**(i)    The district court's order licensing the forcible entry is a meaningful interference with Applicant's possessory interest and an infringement of his Fourth Amendment rights**

Up to this point, the discussion has focused on arguments for the petitions for extraordinary writs. As a matter meriting separate treatment, Applicant requests a stay of the district court's October-4 order which infringes constitutional rights the Court has held to be protected and imposes a particularized, continuous harm upon Applicant that is beyond pecuniary measure. A brief summary of facts will illustrate some of the manifest consequences of the constitutional harm.

Following the Government's forcible entry, Applicant's son Will gave up his college scholarship to live in Nederland where he would be available to meet law enforcement at the Property in the event of a repeat break-in by HUD's agents. In 2017, Annette Golz (Applicant's wife and Will's mother) required a series of reconstructive surgeries for melanoma. She was recovering in December 2017 and

30

wanted her family together for the holiday. On December 6, Applicant emailed Mr. Mountin and AUSA Mock whom replied in a December-7 email, copying Mr. Mountin, that "HUD has a contractual right under the Deeds of Trust to enter upon and manage the property." See D5.

On October 5, 2018, Will was in Arizona visiting his parents when Applicant received an email from AUSA Mock transmitting a copy of the October-4 order stating that "[t]he 'trespasses' and 'forcible entry' appear to have been consistent with the deed of trust[.]"  Given the brazenness of the Government's past acts and its unrelenting claims of a contractual right to forcibly enter and seize the Golzes' Home, Will boarded a flight back to Colorado on October 7 to protect the Property (where Will was unable to visit his mother on December 25 who has a procedure scheduled at an Arizona-hospital on December 27, 2018).

Whereas state law determines possessory interest for the circumstances in *Estate of Golz,* it is appropriate to look to the Supreme Court of Colorado, which, in *Cantina Grill v. City & Cnty. of Denver Cnty. Bd. of Equalization*, 344 P.3d 870 (Colo. 2015), provided the following guidance:

> We note that, in the real property context, a possessory interest necessarily connotes an interest that is exclusive. *Cf. Black's Law Dictionary* 1353 (10th ed. 2014) (defining possessory interest as '[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner'); *Restatement (First) of Prop.* § 7 (1936) (defining possessory interest as 'a physical relation to the land of a kind which gives a certain

31

> degree of physical control over the land, and an in-
> tent so to exercise such control as to exclude other
> members of society in general from any present oc-
> cupation of the land').

*Cantina Grill*, 344 P.3d at 874, n.1.

The October-4 order stated that if "HUD's decision to terminate its at-
tempts to obtain an appraisal [in 2015] was reasonable" the deed of trust could give
HUD the right to (the June-6 and July-6, 2016) trespass and to the (December-2,
2016) forcible entry when it installed a "HUD lock" to exclude the Golz family. The
district court's order that HUD could have a possessory interest enforceable by
strong hand is a meaningful interference with Applicant's possessory interest and
pursuant to this Court's opinions a seizure and thus an infringement of Applicant's
Fourth Amendment rights. No person should have to suffer these harms and no
court should be permitted to impose (or license) them.

### (ii)   Any infringement of one's constitutional rights inflicts an ir-reparable harm

The title of this section is paraphrased from *Free the Nipple Fort
Collins v. City of Fort Collins*, 237 F. Supp. 3d 1126 (D. Colo. 2017), where the dis-
trict judge cited for authority to *Elrod v. Burns*, 427 U.S. 347, 373 (1976), which was
also quoted for the "holding that the denial of a constitutional right 'for even mini-
mal periods of time, unquestionably constitutes irreparable injury'[,]" and that "any
time the government denies a person a constitutional right or protection, that per-
son's injury is serious." *Free the Nipple*, 237 F. Supp. 3D at 1134.

32

As the court goes on to explain in the same passage, but quoting from *Federal Practice and Procedure,* 11A Charles Alan Wright *et al.* (3d ed. 2014), when "an alleged deprivation of a constitutional right is involved ... most courts hold that no further showing of irreparable injury is necessary[,]" § 2948.1, and when "plaintiff is claiming the loss of a constitutional right, courts commonly rule that even a temporary loss outweighs any harm to defendant and that a preliminary injunction should issue[,]" § 2948.2 (parentheses omitted). *Free the Nipple,* 237 F. Supp. 3D at 1134.

## CONCLUSION

Applicant requests a stay of district court proceedings in *Estate of Golz* pending this Court's consideration of a writ of mandamus or prohibition to address questions of the district court's bias and its issuing of orders consistent with that bias that are contrary to law. Applicant also requests an immediate stay of the district court's October-4 order which licenses actions by HUD which infringe Applicant's rights that this Court has held to be protected by the Constitution.

DATED this 25th day of December, 2018.

Respectfully Submitted,



William J. Golz, Ph.D.
*Applicant, Pro Se*
29714 North 152nd Way
Scottsdale, Arizona 85262
E-mail: wgolz@alumni.lsu.edu
Phone: (480) 816-5019

## CERTIFICATE OF SERVICE

I hereby certify that I will transmit the foregoing Application to Stay an Order and Proceedings in the Federal District Court for the District of Colorado, prepared as required by Rule 33.2, to Thiel Press for hand delivery of three copies to the police booth at the North Drive of the Supreme Court building. I further certify that I will send one copy each to the following parties (via the manner indicated in parentheses):

Solicitor General of the United States
Room 5616
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001
(Priority Mail)

Hon. R. Brooke Jackson
United States District Judge
Alfred A. Arraj U.S. Courthouse, A938
901 19th Street
Denver, Colorado 80294
(Priority Mail)

I further certify under penalty of perjury that the foregoing is true and correct. Executed on this 25th day of December, 2018.



William J. Golz, Ph.D.
*Applicant, Pro Se*
29714 North 152nd Way
Scottsdale, Arizona 85262
E-mail: wgolz@alumni.lsu.edu
Phone: (480) 816-5019

# Exhibit B



About / Faculty & Authors / Info

# Michael E. Hegarty

*U.S. District Court (D-CO)*

**Honorable Michael Hegarty** is a graduate of Kansas State University (B.A. 1982, *cum laude*, Phi Beta Kappa) and the University of Kansas School of Law (J.D. 1986, *Order of the Coif*). He was on the editorial board of the Kansas Law Review. His education includes one year of graduate study at Justus Liebig Universitaet in Giessen, Germany. Judge Hegarty clerked for U.S. District Judge Dale Saffels (District of Kansas) from 1986-88. Following this judicial clerkship, Judge Hegarty worked as an Associate Attorney with the Washington, D.C. law firm of Arnold & Porter from 1988-90. His primary areas of practice were environmental and antitrust law. In 1990, Judge Hegarty transferred to the Denver office of Arnold & Porter, where his practice centered on environmental and natural resource law and securities fraud. In 1992, Judge Hegarty became an Assistant U.S. Attorney in the District of Colorado. His areas of practice included defending the United States and its agents in civil litigation, including employment discrimination, personal injury, federal appeals, Administrative Procedure Act suits, natural resource law, immigration cases, Social Security disability cases, Privacy Act/FOIA, prisoner habeas and *Bivens* claims, and other constitutional torts. He became the Chief of the Civil Division of the U.S. Attorney's Office in 2002 and remained in that position until 2006. On February 15, 2006, Judge Hegarty was sworn in as a United States Magistrate Judge for the District of Colorado. He was reappointed for a second term of eight years effective February 15, 2014.

(06/18)

Hegarty, Michael E., United States Magistrate Judge. *Faculty & Authors,* Colorado Bar Association, CLE, (Nov. 7, 2018), available at https://cle.cobar.org/About/Faculty-Authors/Info/CUSTOMERCD/30055

A1



About / Faculty & Authors / Info

# Kevin T. Traskos

*US Attorney's Office - District of Colorado*

**Kevin Traskos, Esq.,** is the Chief of the Civil Division at the United States Attorney's Office for the District of Colorado, where he manages attorneys who represent the federal government in civil lawsuits brought by or against the government. Kevin graduated from Yale University in 1992 and from the University of Michigan Law School in 1995. From 1995 to 1997 he served as a law clerk in the Southern District of New York for the Honorable Louis Stanton. He practiced as a civil litigator for several years at Arnold & Porter in Washington, D.C. and Denver before joining the United States Attorney's Office in 2002. Since joining the office, he has handled a wide variety of cases and has received a number of awards, including winning the Attorney General's Award, the Department of Justice's highest award, three times. He has served as a Director on the Board of the Faculty of Federal Advocates. He has also served on the U.S. District Court's Committee on Conduct from 2011 to 2016, and served as that Committee's Chair from 2014 to 2015.

(11/17)

Traskos, Kevin T., Chief of the Civil Division, United States Attorney's Office for the District of Colorado. *Faculty & Authors,* Colorado Bar Association, CLE, (Nov. 7, 2018), available at <u>https://cle.cobar.org/About/Faculty-Authors/Info/CUSTOMERCD/259440</u>



Mountin, Zachary P., HUD Trial Attorney. Linked-In, (Nov. 7, 2018), available at https://www.linkedin.com/in/zmountin/

This is Google's cache of http://www.uswestretiree.org/Media/2007/022407_01.htm. It is a snapshot of the page as it appeared on Oct 1, 2018 21:51:38 GMT. The current page could have changed in the meantime. Learn more.

**Full version**    Text-only version    View source

Tip: To quickly find your search term on this page, press **Ctrl+F** or **⌘-F** (Mac) and use the find bar.



# AUSWR

### THE ASSOCIATION OF U S WEST RETIREES

**Nacchio case mantra: Keep it simple**
**Prosecutors want to make sure jury understands story**
**By Jeff Smith**
**Rocky Mountain News**
**Saturday, February 24, 2007**

.....

**U.S. vs. Joe Nacchio prosecution team at a glance**

....

**• Kevin Traskos, assistant U.S. attorney for Colorado**

**Age:** 36
**Education:** Yale University, University of Michigan Law School
**Career:** Assistant U.S. attorney for Colorado since 2002 and deputy chief of the civil division since 2006.
**Key cases:** This week defended the U.S. Commerce Department in an employment discrimination allegation. Has been representing the National Archives in connection with the housing of documents related to the civil litigation over the 1999 Columbine school shootings.

....

**• Kevin Traskos** is married to Melissa Hart, a University of Colorado associate law professor and a granddaughter of the late Archibald Cox Jr., Watergate special prosecutor.

Jeff Smith, *Nacchio case mantra: Keep it simple, U.S. vs. Joe Nacchio prosecution team at a glance*, Rocky Mountain News (Feb. 24, 2007); viewed (Nov. 27, 2018), http://webcache.googleusercontent.com/search?q=cache:qVGqgLHH4RwJ:www. uswestretiree.org/Media/2007/022407 01.htm&hl=en&gl=us&strip=0&vwsrc=0

D2



Home › LR-V80-BOE

# LR-V80-BOE

## Volume 80 Board of Editors

| Managing Editor | | Editor-in-Chief |
|---|---|---|
| STEPHANIE N. GADDY | | BRENT N. JORDHEIM |

| Production Editors | Articles Editors |
|---|---|
| NANCY A. FITZGERALD | JONATHAN M. ALLEN (Lead) |
| (Technical) | JON. W. GREVILLIUS |
| BRENNA A. BRACKETT | MELANIE L. JORDAN |
| LINDSAY L. VANGILDER | |

### Casenote & Comment Editors
JESSICA A. BLACK
LEANNE B. HAMILTON
ALEXANDER R. KERR
TIFFANY A. TODD

### Resource Editor
JAIME E. SCHULER

### Associate Editors

| | | |
|---|---|---|
| SAMUEL BACON | EMILY HOLMES | ELIAS QUINN |
| KIMBERLY CORTEZ- | SCOTT HUMPHREYS | SEAN RATLIFF |
| RODRIGUEZ | REBECCA KLYMKOWSKY | JENNIFER ROSENTHAL |
| DEREK FREEMAN | JONATHAN LANGER | ANDY ROTTMAN |
| MELANIE GAVISK | MATTHEW MORRISON | BRITTA STUNKARD |
| ANNE HARRINGTON | KIMBERLY PERDUE | |

### Members

| | | |
|---|---|---|
| THOMAS ARANY | KATHARINE GRAY | NORMA PLACHE |
| CAROLINE BESS | GORDON HADFIELD | CARIN RAMIREZ |
| JOHN BOWLIN | JENNIFER HEAD | SARAH RECTOR |
| KELLY CRANDALL | MICHAEL KOPP | JEFFREY REZMOVIC |
| RYAN DAY | KRISTEN LARSON | MEGAN RHODES |
| SCOTT DRUSCH | ZACHARY MOUNTIN | KIMBERLY ROY |
| KEITH FEVURLY | MICHELE MULHAUSEN | CATHERINE RUHLAND |
| DANIEL FREDRICKSON | ANDREW PETROSKI | ASHLEY SPICER |
| STUART GILLESPIE | SAMANTHA PJESKY | KERRY VAN DER BURCH |

### Office Manager
MARTHA UTCHENIK

### Faculty Adviser
PROF. MELISSA HART

*The University of Colorado Law Review*, vol. 80, 2009; viewed Nov. 23, 2018, https://www.colorado.edu/law/lr-v80-boe



Home › LR-V51-BOE

# LR-V81-BOE

## Volume 81 Board of Editors

| Managing Editor<br>JENNIFER R. HEAD | | Editor-in-Chief<br>ZACHARY P. MOUNTIN |
|---|---|---|

| Production Editors<br>SAMANTHA M. PJESKY<br>(Technical)<br>KATHARINE M. GRAY<br>MICHELE K. MULHAUSEN | Articles Editors<br>DOUGLAS O. EDWARDS (Lead)<br>KEITH M. EDWARDS<br>KERRY J. VAN DER BURCH |
|---|---|

**Casenote & Comment Editors**
RISA N. BOROWICK
JOHN M. BOWLIN
KELLY B. CRANDALL
CATHERINE R. RUHLAND

**Resource Editor**
ANDREW S. PETROSKI

**Associate Editors**

| THOMAS A. ARANY | DANIEL K. FREDRICKSON | NORMA M. PLACHE |
|---|---|---|
| CAROLINE T. BESS | STUART C. GILLESPIE | CARIN J. RAMIREZ |
| RYAN P. DAY | GORDON M. HADFIELD | SARAH L. RECTOR |
| SCOTT W. DRUSCH | ASHLEY T. HARRINGTON | JEFFREY M. REZMOVIC |
| GRANT R. FEVURLY | MICHAEL A. KOPP | MEGAN D. RHODES |
|  | KRISTEN L. LARSON | KIMBERLY M. ROY |

**Members**

| BENJAMIN A. ABELL | JOHN C. HOELLE | LOUIS B. SAVAGE |
|---|---|---|
| DAVID R. ANDERSON | MICHAEL Y. LEY | JAMES R. SILVESTRO |
| ANDREW M. BECHEL | LOGAN R. MARTIN | SIERRA R. SMITH |
| KYLE R. BLACKMER | BRYAN MCCUTCHEON | CHARLES A. SOMMERS |
| ANNA DRONZEK | MATTHEW A. MONTGOMERY | MICHAEL S. TOLL |
| JEREMIAH J. FARRELLY | ANNA-LISA MULLIS | DEREK L. TURNER |
| SARAH E. FISCHMAN | EMILY M. NATION | JEFFREY M. VAN DERVEER |
| KATHRINE A. GERTH | JUSTINE M. PIERCE | DMITRY B. VILNER |
| KATHERINE R. GLEESON | ERIC L. ROBERTSON | EDWIN G. WINSTEAD |
| SARAH M. HART | ALEX SAN FILIPPO-ROSSER | ANDREAS S. WOKUTCH |

**Office Manager**
MARTHA UTCHENIK

**Faculty Adviser**
PROF. MELISSA HART

*The University of Colorado Law Review*, vol. 81, 2010; viewed Nov. 23, 2018, https://www.colorado.edu/law/lr-v81-boe

| Date | December 7, 2017 |
|------|------------------|
| **From** | William Golz, Ph.D. |
| **To** | Zachary Mountin, Esq.<br>Jasand Mock, Esq. |
| **Via** | Email |
| **Re** | December-7, 2017, 11:54 a.m., email from Mr. Jasand Mock. |

Dear Messrs. Mountin and Mock:

In the subject email, to which this letter is attached, Mr. Mock states that the Department of Housing and Urban Development ("HUD") "has a contractual right under the Deeds of Trust to enter upon and manage the property[,]" which would, at most, apply to "vacant or abandoned property."

As detailed in my correspondence to HUD and the US Attorney's Office for the District of Colorado – see, *e.g.,* Amended Answer to Amended Complaint, ECF 64 ¶¶ 122–131 – even if my late mother's signature were to have given HUD as the lender the right to break into her occupied home while she was alive – which it did not under state law and there is no basis for federal preemption – whether my family were to be regarded as the Property owners or as tenants of the estate, HUD was not permitted to forcibly enter into our home absent their complying with HUD policy (HUD Handbook 4000.1, III.A.2.s.viii) and the Colorado Forcible Entry and Detainer statute (C.R.S. § 13-40-101 *et seq.*) which require completion of a foreclosure sale and a court order. HUD's forced entry complied with neither and was an intentional and unlawful entry into the "dwelling of another" which is felony trespass (C.R.S. § 4-502) chargeable against the person or persons that issued the order for, or provided aid and advice to facilitate, the December-2, 2016 break-in at the Property.

The proposition that "HUD has a contractual right under the Deeds of Trust to enter upon and manage the property" when it is occupied is self defeating. As you know, any contract clause, including in the Deeds of Trust, that purports to require or permit any act that violates a statute, especially a criminal statute, is unenforceable and void as to that clause *ab initio.* It is not, however, my intent to educate you in the law with this letter, and the matter of the legal status of HUD's forced entry is now before the court in HUD's judicial foreclosure action and will be again in our court action under the Federal Tort Claims Act.

The reason for my email to which you replied was to request your assurance that HUD would not break into our home again so that I could calm my wife Annette whose condition, as I have explained, is fragile, due in large part to HUD's trespass at our Property one year ago. Annette, checking my email because I was out of town, read your statement that HUD had "a contractual right under the Deeds of Trust to enter upon" her Property and became very upset.

Sincerely,



William Golz, Ph.D.

D5

# Exhibit C

## INDEX TO DOCUMENTS REFERENCED

**Page(¶ or n)**
**Stay/Appendix**                                                                 **Doc/Pages**

5(¶1)/A84–93 & A95–96 ................................................................................81, Ex. G

6(¶1)/A49–52 ...............................................................................................90/3–6

6(¶2)/A67 ....................................................................................................64, Ex. C

6(¶2)/A68 ....................................................................................................64, Ex. D

6(¶2)/D1 ......................................................................................................71, Ex.7

7(¶1)/B11–12 ...........................................Mot. Stay and Pet. Writ of Prohibition[1]/5–6

8(¶1)/A61 .....................................................................................................64/27

8(¶3)/D6–7 ..................................................................................................64, Exs. A & B

8(n.7)/A52–55 ..............................................................................................90/6–9

10(¶2)/B30 ...................................................................................................124/4

10(¶3)/A38 ...............................................................................Pet. Writ of Mandamus[2]/12

10(n.10)/A80–82 ..........................................................................................100, Ex. A

11(¶2)/A14–15 .............................................................................................126/6–7

11(¶3)/A70–78 .............................................................................................100/all

11(¶3)/A30 ...................................................................................Pet. Writ of Mandamus/4

12(¶1)/A16 ...................................................................................................126/10

13(¶3)/A1–2 ..................................................................................(See Ex. B, *supra*)

14(¶1)/D2 ......................................................................................(See Ex. B, *supra*)

14(¶2)/A15 ...................................................................................................126/7

14(n.11)/A3 ...................................................................................(See Ex. B, *supra*)

16(¶2)/B89 ...................................................................................................125/all

17(¶2, Line 7)/A5 then (see below) ..........................................Errata to Pet. Writ of Mandamus[3]/2

17(¶2, Line 7)/A38–43 .............................................................Pet. Writ of Mandamus/12–17

17(¶2, Line 7)/A38–43 .............................................................Pet. Writ of Mandamus/12–17

17(¶3)/C6 ...................................................................................10th Cir. Order[4]/6

---

1   Appellate Case 18-1373, Docketed Oct. 16, 2018.

2   Appellate Case 18-1373, Docketed Sept. 11, 2018.

3   Appellate Case 18-1373, Docketed Oct. 25, 2018.

18(¶1)/C4......................................................................................................10th Cir. Order/4

21(¶1)/D6–7...........................................................................................64, Exs. A & B

21(¶1)/A62.............................................................................................................64/28

21(¶1)/A63.............................................................................................................64/29

23(n.14)/B18..............................................Mot. Stay and Pet. Writ of Prohibition/12

24(¶1)/C7......................................................................................................10th Cir. Order/7

24(¶3)/C3......................................................................................................10th Cir. Order/3

25(¶3)/B30.....................................................................................................124, Ex. A/4

25(¶3)/B53–54.............................................................................................121, Ex. A/5–6

27(¶1)/B83...........................................................................................................118/19

30(¶1)/D5...................................................................................(See Ex. B, *supra*)

---

4   Appellate Case 18-1373, Docketed Sept. 17, 2018.

## CERTIFICATE OF SERVICE

I hereby certify that I will transmit the foregoing by FedEx Overnight for delivery to the Clerk of Court whom will send notification of such filing to any party who has entered an appearance in this matter to the email addresses on file with CM/ECF.

DATED this 2nd day of January, 2019.



William J. Golz, Ph.D.
*Defendant, Pro Se*
29714 N. 152nd Way
Scottsdale, Arizona 85262-6942
Phone/Facsimile: (480) 816-5019