FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAY 13 2019

JEFFREY P. COLWELL
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-CV-01152-RBJ-MEH

BENJAMIN S. CARSON, Secretary of Housing and Urban Development,

   Plaintiff,

v.

WILLIAM J. GOLZ,

   Defendant.

---

**MOTION FOR THE DISTRICT JUDGE TO RETRACT HIS
MISREPRESENTATION THAT ANNETTE GOLZ'S AUDIO RECORDING OF
THE JANUARY 23, 2019 TELECONFERENCE WAS "SURREPTITIOUS"
AND TO CORRECT CERTAIN OTHER MISREPRESENTATIONS OF FACT
IN HIS ORDER (ECF 177)**

---

   As Defendant learned from a professor of linguistics, sweeping misrep-

resentations are often found in very short passages. This is true in the District

Judge's May 8, 2019 Order. ECF 177. Defendant William Golz files this Motion to

request that the District Judge correct certain misrepresentations of fact, in support

of which Defendant states as follows:

### PRELIMINARY STATEMENT

   District Judge Brooke Jackson continues to ignore his own automati-

cally disqualifying acts and to ply the record with the red herring that fraud and vi-

olations of federal law by both judicial officers that are obvious on the face of the

1

record, see ECF 176, can be described as a mere "belief that the magistrate judge was biased." ECF 177.

Judge Jackson and Magistrate Michael Hegarty were both disqualified in May 2018 for their affirmative acts in concert with Plaintiff's counsel to perpetrate a fraudulent misrepresentation of settled law upon Defendant, a pro se litigant. Magistrate Hegarty was further disqualified by his coercive threats and other violations of federal law at the January 23, 2019 status conference (the "January 23 conference"). Judge Jackson was further disqualified for defaming Annette Golz in his March 1, 2019 order, ECF 155, to discredit her written testimony and for repeatedly blocking a hearing to reconstruct the facts of the January 23 conference. ECF 176, at 19–25.

Judge Jackson continued his libelous attack in his recent Order misrepresenting that Mrs. Golz's recording of the January 23 phone call, which is allowed by federal and state law, was *surreptitious* — "stealthily or fraudulently done." *Infra*. As Judge Jackson knows this imputation of an improper motive to Mrs. Golz requires him to have ascertained her state of mind and actions. These are factual matters of which the Judge could have no knowledge. His attacks make him demonstrably unfit and automatically disqualify him from making any rulings in this case consequent to which he had no statutory authority to issue any orders.

## I.    MATERIAL MISREPRESENTATIONS IN, AND REQUIRED CORRECTIONS TO, THE ORDER (ECF 177)

**(A)**  **Annette Golz's Recording of the Telephone Call from Plaintiff's Counsel Complied with all Federal and State Laws and is Admissible Under the Federal Rules of Evidence; Judge Jackson's Assertion that it was "Surreptitious" is Calumnious**

The District Judge impugns Mrs. Golz's audio recording of the telephone call she received from Plaintiff's counsel by misrepresenting that, "if proceedings were surreptitiously recorded in Magistrate Hegartys [*sic*] court, that is entirely inappropriate." ECF 177. Beginning with *if*, that conditional statement attempts to imply that there may be no recording at all. That question could have, should have, and would have been answered in front of an impartial judge but for the strenuous efforts by Judge Jackson to obstruct the required hearing. The balance of his statement relies upon the operative terms *surreptitious* and *Magistrate Hegarty's court* to arrive at the conclusion that the recording was *inappropriate*. It offers an easy deconstruction:

*Inappropriate* has no legal meaning, so the conclusion is vacuous.

*Surreptitious,* however, is libelous. It means, "[s]tealthily or fraudulently done, taken away, or introduced." *Black's Law Dictionary* 1296 (5th ed. 1979). Judge Jackson thus imputes an improper motive to Mrs. Golz's state of mind and actions which are factual matters of which he could have no knowledge. This is more than mere prejudice—it is Judge Jackson's demonstration of a willingness to disavow his oath and fiduciary duty to perpetuate a calculating misrepresentation

3

of law by defaming a woman he has never met for actions lawfully carried out in her own home:

The term *in Magistrate Hegarty's court* can only be Judge Jackson's effort to misrepresent that there was a violation of D.C.COLO.LCivR 83.1 which restricts the use of cameras and recording devices, "in a United States Courthouse or any *location* in which court business and proceedings are conducted." (emphasis added). *Location* means, "[s]ite or place where something is or should be located." Mrs. Golz was *located* in her own home, in Arizona, and the phone call originated from Colorado. See ECF 176, Exhibit C, at 11.

At the inception of the teleconference, Mrs. Golz told Magistrate Hegarty that she had answered the phone only because, as the Court had been duly noticed, Defendant was not home and not available. Magistrate Hegarty should have terminated the call immediately but instead continued talking for nine minutes–vexing Mrs. Golz with repeated, coercive threats against her husband based upon the fraudulent misrepresentation of law that Judge Jackson, Magistrate Hegarty, and Plaintiff's counsel had initiated in May 2018. See ECF 176, at 16–18.

Arizona law, Colorado law, and federal law all permit the recording of phone calls by any party to the call. *E.g., United States v. John J. Johnson*, No. H-92-152 (S.D. Tex.), United States' Memorandum of Law on Admissibility of Tapes and Transcripts (Feb. 15, 1994),[1] included herewith as Exhibit A. Moreover, Mrs.

---

1   https://www.justice.gov/atr/case-document/memorandum-law-admissibility-tapes-and-transcripts

Golz's recording has public importance because it provides evidence of a federal magistrate judge intentionally violating a federal law — including, but not limited to, 28 U.S.C. §§ 351-364, the Judicial Conduct and Disability Act of 1980 — during an official court proceeding.

Judge Jackson's calumnious attack on Mrs. Golz's recording as *surreptitious* and *in Magistrate Hegarty's court* was — like his March-1 attack accusing her of attempting to practice law without a license and of perjury, see ECF 176, 23–25 — impugned her character and prejudiced her written testimony[2] regarding Magistrate Hegarty's violations of law at the January 23 conference.  As Judge Jackson knows, Defendant is entitled to a hearing to admit testimony and evidence not only from Mrs. Golz but from Meredith Callan, Magistrate Hegarty, Courtroom Deputy Molly Davenport, and Assistant United States Attorney Jasand Mock, and, to orders to the Clerk to provide information about the FTR equipment and the metadata.  Judge Jackson is intimately familiar with courtroom recording-equipment and with the legal issues presented when transcripts are missing critical portions of a judicial officer's courtroom orders and statements. *See A Just Cause v. United States*, 45 F.Supp.3d 1258 (D.Colo. 2014).

Unlike in *A Just Cause*, where the *Banks* defendants had no recording of District Judge Christine Arguello's statements that were alleged to have violated

---

2   "[A] tape of a recorded conversation also may be admitted when a witness has been attacked for recent fabrication of [her] testimony." *Johnson*, at 5, ¶ 3.

their rights, Defendant has proffered Mrs. Golz's written testimony under penalty of perjury and her admissible audio recording of Magistrate Hegarty's coercive threats and violations of court rules, his ethical canon, and federal law. Instead of honoring his oath and his fiduciary duty to provide Defendant with a hearing under an impartial judicial officer, Judge Jackson misused the power of his office to obstruct a hearing and defeat Defendant's efforts to obtain justice.

**(B)   Defendant Moved the Court to Open the Final Judgment, ECF 176, Because the Judicial Officers' Participation in a Fraud and Other Disqualifying Misconduct Deprived them of the Authority to Make Any Rulings**

Defendant's Motion to Open the Final Judgment requested that the Court "[v]acate its recommendations, orders, and final judgment as void due [to] the unmistakable bias prevalent on the face of the record — manifest from May 2018 in the seminal misrepresentation of authority to maintain an action against a non-existent estate." ECF 176, at 27, ¶ (1).

In the alternative, Defendant requested, "a hearing of all facts concomitant to the fraudulent misrepresentation of the claim against the Estate — including, but not limited to, the facts of December 18, 2018 to January 23, 2019 — under an impartial judicial officer: in the Federal District Court for the District of Arizona or, if the law so allows, in the jurisdiction of another United States attorney's office in another district court within this circuit." ECF 176, at 28, ¶ (2), as corrected in the Errata filed on May 10, 2019 (not yet docketed).

It is not hyperbole to describe Judge Jackson's orders from ECF 155 on as a continuing prevarication to evade admitting to his own misconduct and that of his judicial colleague Magistrate Hegarty.  The May-8 Order misrepresents that Judge Jackson's disqualification and lack of authority to issue any orders can be addressed by pursuing "a right to raise your objection to our rulings in a timely appeal."

When judicial officers partake in an obvious fraud with a plaintiff's counsel, repeatedly libel a woman whom is a defendant's witness, and obstruct a trial to prejudice the defendant, they are automatically disqualified. 28 U.S. Code § 455; and see ECF 176, at 27, nn. 25 and 26.  The suggestion that it suffices to address the end result of that misconduct in an appeal with no consequences to the judicial officers places the burden unfairly on that defendant by abrogating the consequences Congress set forth in 28 U.S.C. §§ 351-364.

**(C)     Defendant Began Transmitting Court Documents to All Parties by Email on February 27, 2019 when Judge Jackson's Document Specialist Claimed that he Did Not Receive Hand Delivered Documents when Defendant had a Stamped Copy**

There would be no record had Mrs. Golz not recorded the January 23 conference because Magistrate Hegarty and his Courtroom Deputy purportedly failed in their statutory duty to make a record of an official court proceeding.  A month later, on February 27, 2019, Judge Jackson's document specialist represented that he was not in possession of documents when Mrs. Golz had proof they

7

had been filed two days prior.  Thereafter, the only way for Defendant to ensure that Judge Jackson was receiving documents was to transmit copies to the Judge via email.  Defendant provided good cause for doing that in his February 27, 2019 email to Judge Jackson: "This afternoon, my wife, Annette Golz, called and spoke with Derek, who stated that he did not have the attached document. ... As shown on attachment (1), the document was hand delivered to the Clerk on Monday, February 25 at 2:44 p.m. ... This is to request that Judge Jackson print out and deliver the attached documents ... to his Document Specialist Derek and instruct him to file them immediately."  Defendant paid a courier to deliver a second copy consequent to which Derek filed both copies. See the Docket for (out-of-sequence) ECF Nos. 153, 152, 154.

The District Judge did not at any time during the ten-week period that intervened from February 27 to May 8, 2019 request that Defendant cease using email to transmit documents.  It was disingenuous and showed a disregard for candor when Judge Jackson misrepresented that Defendant had sent, "inappropriate emails to Chambers[,]" when it is the Judge that is responsible for his document specialist whose claim of not being in possession of documents that had been filed two days prior gave rise to the need to transmit extra copies of all documents by email.

## II.   SUMMARY AND CONCLUSION

Corrections are required as enumerated in I(A)–(C).

Judge Jackson and Magistrate Hegarty were both, equally and auto-matically, disqualified when they elected to participate in a fraudulent misrepresen-tation of law with Plaintiff's counsel beginning in May 2018.  Magistrate Hegarty was disqualified again for his separate act of making coercive threats and violating federal law at the January 23 conference.  Judge Jackson was disqualified again for his separate acts of repeatedly defaming Mrs. Golz to discredit her testimony to prejudice Defendant's case and for repeatedly obstructing a hearing to cover up the culmination of the fraud and the violations of federal law at the January 23 confer-ence.

Both judicial officers were disqualified by facts on the face of the record long before Judge Jackson issued his final judgment which is a nullity and any process that would issue therefrom an abuse.

## DUTY TO CONFER

Pursuant to D.C.COLO.LCivR. 7.1(a), Defendant conferred with Plain-tiff's counsel via email, whom replied, "Plaintiff takes no position on your motion."

DATED this 10th day of May, 2019.

Respectfully Submitted to the Court,



William J. Golz, Ph.D.
*Defendant, Pro Se*
29714 North 152nd Way
Scottsdale, Arizona 85262
Phone: (480) 816-5019

# Exhibit A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.:  H-92-152 |
| | ) | |
| JOHN J. JOHNSON, | ) | |
| | ) | (filed 2/15/94) |
| Defendant. | ) | |

## MEMORANDUM OF LAW ON ADMISSIBILITY
## OF TAPES AND TRANSCRIPTS

This memorandum of law is submitted in support of the government's offer of tapes and transcripts into evidence.  The government respectfully submits that said exhibits are admissible and should be received into evidence.


I
## RECORDED CONVERSATIONS ARE ADMISSIBLE
## IN EVIDENCE IF RECORDED WITH THE PERMISSION
## OF ONE OF THE PARTIES TO THE CONVERSATION

In a criminal prosecution, taped conversations between the defendant and another which were recorded without the defendant's knowledge or consent but with the consent of the other party are admissible and do not violate the defendant's Fourth and Fifth Amendment rights.  United States v. White, 401 U.S. 745 (1971); Lopez v. United States, 373 U.S. 427 (1963); United States v. Caracci, 446 F.2d 173 (5th Cir.), cert. denied, 404 U.S. 881 (1971).  The consent of one party to the conversation eliminates

any claim of illegality as to the recording per se even when the government had

participated in the recording.  United States v. Fanning, 477 F.2d 45 (5th Cir. 1973),

cert. denied, 414 U.S. 1006 (1974).  The Fourth Amendment does not protect "a

wrongdoer's misplaced belief that a person to whom he voluntarily confides his

wrongdoing will not reveal it."  Hoffa v. United States, 385 U.S. 293, 302 (1966).  Where

it is proper to testify about oral conversations, taped records of those conversations are

admissible.  Lopez, 373 U.S. at 387.  See also United States v. Conroy, 589 F.2d 1258,

1264 (5th Cir.), cert. denied, 444 U.S. 831 (1979) ("If the informant may reveal the

conversation at a later time, he may contemporaneously transmit it to third persons").


II
TAPE RECORDINGS OF CONVERSATIONS
ARE ADMISSIBLE ONCE THE GOVERNMENT
LAYS THE PROPER FOUNDATION


The controlling authority in this Circuit on the authentication of tapes is

United States v. Biggins, 551 F.2d 64 (5th Cir. 1977).  In Biggins, the Fifth Circuit held

that the party introducing a tape into evidence has the burden of going forward with

sufficient evidence to show the recording is an accurate reproduction of the

conversation recorded.  In a criminal trial, generally this will require the government to

show: (1) the competency of the operator; (2) the fidelity of the recording equipment; (3)

the absence of material deletions, additions, or alterations in the relevant part of the

tape; and (4) the identification of the relevant speakers.  Id. at 66.  Although this is the

preferred foundation, there are not strict particularized standards governing the

admissibility of tapes since the purpose of the inquiry is to establish and ensure the

-2-

accuracy of the recording.  United States v. Hughes, 658 F.2d 317, 322 (5th Cir. 1981), cert. denied, 455 U.S. 922 (1982); see also United States v. Stone, 960 F.2d 426, 436 (5th Cir. 1992) (the Biggins factors are not meant to require "formalistic adherence" at the expense of the trial judge's discretion).  The trial judge has broad discretion to determining whether this burden has been satisfied, and his determination will not be disturbed absent extraordinary circumstances.  Hughes, 658 F.2d at 323; Biggins, 551 F.2d at 66-67.

The first two requirements are satisfied by testimony from the person who recorded the conversation that he was familiar with the equipment and that it was in proper working order at the time of the recording.

Evidence sufficient to satisfy the accuracy element may be direct or circumstantial.  United States v. Bright, 630 F.2d 804 (5th Cir. 1980); United States v. Haldeman, 559 F.2d 31, 107 (D.C. Cir. 1976), cert. denied, 431 U.S. 933 (1977). Where, with respect to a tape recording of a conversation between a prosecution witness and the defendant, the witness identifies the voices on the tape and states that the conversation was the one he had conducted with the defendant at the time the recording was made, such testimony by the witness meets the requirements for authenticating or identifying the testimony as a condition precedent to its admission. United States v. Albert, 595 F.2d 283 (5th Cir.), cert. denied, 444 U.S. 963 (1979). See also United States v. Lance, 853 F.2d 1177 (5th Cir. 1988).

Furthermore, if the witness who is testifying was present at the time the conversation was recorded, identifies the tape and acknowledges its accuracy, the

-3-

recording is admissible even though the witness did not retain custody of the tape.
United States v. Nace, 561 F.2d 763 (9th Cir. 1977).

All that is required is that a showing be made to the court that the recording has been preserved. Testimony that a tape recording has been in the continuous custody of the government since it was made and that no changes, additions or deletions were made to it is sufficient to show that the tape is accurate. United States v. Mendoza, 574 F.2d 1373 (5th Cir.), cert. denied, 439 U.S. 988 (1978).

Authenticity also may be shown by testimony by the witness who taped the conversation that he kept the tape for a period of time before turning it over to the government together with testimony from a government agent or attorney that the tape had been in his custody since it was given to him by the witness. United States v. Hykel, 461 F.2d 721 (3d Cir. 1972). An adequate chain of custody may be established by testimony from a government agent who had possession of the tape, thereby allaying any fears of tampering. United States v. Alston, 460 F.2d 48 (5th Cir.), cert. denied, 409 U.S. 871 (1972).

The fact that some unidentified person may have had access to a tape recording in the government's custody does not affect the reliability of the foundation evidence so as to preclude admission into evidence of the recording. Haldeman, 559 F.2d at 109. The government need not call every employee who may have had access to the tape. When the government's showing of continuity of possession of real evidence is reasonably adequate, and no evidence is offered by the defendant suggesting any laxity in the custodial procedures of the government or any reasons why the exhibit should be regarded as in any way untrustworthy, such evidence cannot be

-4-

deemed to have been improperly admitted on a theory of chain of custody.  Robinson v. United States, 283 F.2d 508 (D.C. Cir.), cert. denied, 364 U.S. 919 (1960).

The possibility of alterations to the tape need not be eliminated absolutely, but only as a reasonable possibility.  Moreover, the fact that a witness indicates he cannot be sure that certain statements were made on a particular date, rather than at some other time around that date, does not show that the tape recording, which intrinsically demonstrates that the conversation occurred on that date in question, was tampered with so as to preclude its admission into evidence.  Haldeman, 559 F.2d at 109.  See also United States v. Jacobs, 451 F.2d 530, 541-542 (5th Cir. 1971), cert. denied, 405 U.S. 955 (1972) ("It is self-evident that a tape recording would be more accurate than the recollection of a witness a year or more after the conversation had occurred").

In addition to the circumstances enumerated above, a tape of a recorded conversation also may be admitted when a witness has been attacked for recent fabrication of his testimony or improper motivation of his testimony, as a prior consistent statement used to rehabilitate that witness.  Albert, 595 F.2d at 289.

### III
### TRANSCRIPTS OF TAPED
### CONVERSATIONS ARE ADMISSIBLE

An authenticated transcript of a consensual tape recording is admissible to supplement the jury's hearing of the tape.  United States v. Onori, 535 F.2d 938 (5th Cir. 1976).  While the foundation for supplemental transcripts may be laid by having the person who made the transcript testify, the stenographer's testimony is unnecessary if

-5-

someone else who either heard the tape or participated in the conversation assumes

that task.  United States v. Rochan, 563 F.2d 1246 (5th Cir. 1977).  Permitting the jury

to have transcripts of tape recorded conversations between government witness and

the defendant is not error on the basis that it amounts to prejudicial emphasis of the

conversations.  Fountain v. United States, 384 F.2d 624 (5th Cir. 1967), cert. denied,

390 U.S. 1005 (1968).

                                        Respectfully submitted,


                                        _____"/s/"_____
                                        Jane E. Phillips


                                        _____"/s/"_____
                                        Joan E. Marshall


                                        Mark R. Rosman

                                        Attorneys
                                        U.S. Department of Justice
                                        Antitrust Division
                                        Earle Cabell Federal Building
                                        1100 Commerce Street, Room 8C6
                                        Dallas, Texas  75242-0898
                                        (214) 767-8051

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the government's Memorandum of Law on Admissibility of Tapes and Transcripts were sent via Federal Express this ____th day of February 1994, to

Mark R. Rosman

Attorney
U.S. Department of Justice
Antitrust Division
Earle Cabell Federal Building
1100 Commerce Street, Room 8C6
Dallas, Texas  75242-0898
(214) 767-8051

-7-

## CERTIFICATE OF SERVICE

I hereby certify that I will transmit the foregoing via Priority Mail on May 10, 2019

for delivery to the Clerk of the Federal District Court for the District of Colorado

whom will send notification of such filing to any party who has entered an

appearance in this matter to the email addresses on file with CM/ECF.

DATED this 10th day of May, 2019.

William J. Golz, Ph.D.
*Defendant, Pro Se*