# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 17-CV-01152-RBJ-MEH

MARCIA FUDGE, Secretary of Housing and Urban Development,

    Plaintiff,

v.

WILLIAM GOLZ,

    Defendant.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
12:15 pm, May 04, 2022
JEFFREY P. COLWELL, CLERK

## RESPONSE TO MOTION FOR APPROVAL OF NOTICE OF SALE

The background section documents facts that are important to the public record of this case to correct a substantive misrepresentation made by the District Judge in the background section of his order on Plaintiff's motion to lift the stay and to address issues in this case that were affected materially by facts published in 2021. The conclusion demonstrates that Plaintiff's motion is moot.

### BACKGROUND

In the summer of 2016, William Golz and his wife Annette Golz (the "Golzes") transmitted over 150 pages of delivery verified correspondence to Kevin Traskos. Exh. A, at 2.[1] That correspondence included several demands that Mr. Traskos direct his client, Housing and Urban Development (HUD), Region VIII, to stop criminally trespassing on the Golzes' fenced Property and looking into the windows when their son was home. On December 2, 2016, police apprehended two men with HUD documents who had driven two cargo vans from Colorado Springs, forcibly entered,

---

1 Exhibit A is a list of witnesses that have knowledge of the facts documented in Exhibit B.

1

and changed the lock on the Golzes' home (the "forcible entry"). The responding officer spoke by cell phone with Region VIII attorney Zach Mountin (Exh. A, at 2) who falsely stated that HUD had foreclosed and was in possession of the Property. The officer was asked to search the home and complied. Exh. B, at 2 ¶¶ 2–3.[2]

The Golzes' letters dated December 25, 2016 through May 8, 2017 documented the felony forcible entry and requested an investigation from Acting U.S. Attorney Robert Troyer. Messrs. Traskos and Mountin knew about those allegations before and after the start of litigation and knew they were required to disqualify their offices—the U.S. Attorney's Office for Colorado and HUD, Region VIII, respectively. They did the opposite. On May 9, 2017, they filed this foreclosure which the docket states was "assigned" (not randomly assigned) to Judge Hegarty. Mr. Mountin was agency counsel. The Golzes learned through their own efforts in 2018 that Messrs. Mountin and Traskos had been mentored by Judge Hegarty and asked him to recuse. Judge Hegarty refused. He did not issue a promised scheduling order thus ensuring that his mentees could face no consequences for their actions. *Id.*, at 3 ¶ 1–4 ¶ 2.

Public documents indicate that in the fall of 2017, after this case had been assigned to Judge Hegarty, Mr. Traskos volunteered for the District Court's standing merit selection panel which considers the appointment and reappointment of federal magistrate judges. Mr. Traskos' precise starting date is not crucial, only that

---

2  Exhibit B is an eight-page letter that can be read in fifteen minutes. The letter catalogs facts in footnotes with pinpoint citations to the record on appeal and to the letter's exhibits.

he knew, or was required to have known, well in advance of his June 24, 2021 appointment to the Merit Selection Panel (Exh. 4 of Exh. B) that he would be called upon to consider the reappointment of Judge Hegarty in February 2022 to another eight-year term worth 1.6-million dollars in salary.[3,4] Mr. Traskos' appointment to the Panel where he could protect Judge Hegarty's reappointment has the appearance of a quid pro quo for Judge Hegarty's sitting on this case and protecting Mr. Traskos.

Judge Jackson's April 19, 2022 order reasserted Plaintiff's moot and abandoned claim that, "Ms. Golz defaulted when she left the property and moved to Arizona sometime in or before 2014." ECF No. 225, at 1 ¶ 3.

First, Plaintiff's claim that Verna Mae's Nederland home was not her principal residence was denied in the pleadings. ECF No. 64, at 7 ¶ 50.

Second, that Verna Mae regarded her Nederland home as the place to which she would always return is supported by her cash register receipt for Post Office Box 328 paid for with her personal check in 2010; pictures of her at her home and at a local restaurant dated in 2013; and her Colorado Driver License with a renewal date in 2013. ECF No. 103, at 9 & Exhs. B,D,E.

---

3   $201,112 per year. 28 U.S.C. § 634; http://www.uscourts.gov/judges-judgeships/judicial-compensation.

4   If merit selection panels were formed by random selection, for a typical panel with seven attorney-positions, and over 18-thousand licensed attorneys in Colorado (http://www.barassociationdirectory.com/co/), the probability that any attorney would be selected by random draw is about 0.039 percent which equates to a 99.961-percent probability against any one attorney being randomly selected.

Third, no possibility of a default existed because, "Verna Mae" had no duty "to satisfy principal residency by residing in her home for some minimum number of days in any given calendar year, in particular after 2004 when the Lender's Seminal Breach deprived her of the means to make her home minimally habitable." ECF No. 122, at 9 n.2; *id.*, at 7–8 & 20–27; ECF No. 116, at 9–55.

Fourth, Plaintiff alleged that Verna Mae moved to Arizona to state an absurd cause for foreclosure against the Estate before she died to preclude Dr. Golz's affirmative defenses. ECF No. 126, at 36:2–12. That cause became moot when the Estate's Closing Statement was filed in this proceeding on May 7, 2018. ECF No. 108, at 6–7. HUD abandoned that claim when it failed to apply to reopen the Estate.

After May 7, 2018, Judges Jackson and Hegarty perpetuated Plaintiff's claim against the Estate using jurisdiction the court did not have over an estate that did not exist. ECF No. 163, at 5 ¶ 1. On May 8, Judge Hegarty claimed to have authority to reject the Estate's Closing Statement. Exh. B, at 4 ¶ 3. On May 17, Jasand Mock (Exh. A, at 1) represented that Plaintiff had standing to foreclose against a nonexistent estate which had no interest in the Property, stating, "Dr. Golz's motion to dismiss the Estate should be denied." ECF No. 115, at 1 ¶ 1.

In December 2018 and January 2019, a Denver lawyer, Meredith Callan, stating she was acting on Judge Hegarty's behalf, sent an email, a letter, and recorded several voice messages for Dr. Golz soliciting him as a client. When Dr. Golz did not reply, Judge Hegarty scheduled a January 23, 2019 conference, ex-

tended an ex parte invitation to Ms. Callan, and stated, "the Government is simply going to win this case because an estate can't represent itself. It has to be represented by a lawyer". Exh. B, at 5 ¶ 1. Judge Hegarty broke the law and Ms. Callan breached her rules of professional conduct.

Judge Hegarty's minute order of January 23, 2019 stated, "Meredith Callan, pro bono counsel[, was] contacted to represent the [closed] Estate of Verna Mae Golz." Judge Jackson knew from another of his cases with Judge Hegarty that he had violated material provisions of the local rule for appointing pro bono counsel. Exh. B, at 5 ¶ 2–7 ¶ 1. In his March 1, 2019 order, Judge Jackson nevertheless stated, "I reviewed the file entries for the period December 18, 2018 to January 23, 2019. I found absolutely nothing indicating any improper conduct by Magistrate Judge Hegarty." ECF No. 155, at 3 ¶ 2.

With the belief that Judge Jackson and Hegarty's affirmative actions in this case demonstrated actual bias against Dr. Golz and for the Plaintiff, on May 6, 2019, Dr. Golz filed audio CDs and transcripts of Ms. Callan's voice messages and the January 23, 2019 hearing with a motion to reopen the court's final order and judgment, to disqualify Judges Hegarty and Jackson, and to vacate the proceedings or, in the alternative, to permit an evidentiary hearing by an impartial judge. ECF No. 176, at 26–28. Judge Jackson rejected all of those requests in a text entry. ECF No. 177.

Judge Jackson's claim of being ignorant of laws violated in this case and his peremptory rejection of recusal parallels a pattern that the Chief Justice identified as posing a serious ethics problem. *The Wall Street Journal*, on September 28, 2021, "identified 36 conflicts by one judge in Colorado, R. Brooke Jackson"[5] whom, when contacted by phone and told that the law required him to recuse on those cases, professed ignorance, stating, "That's news to me." In his year-end report, the Chief Justice noted that, "For most of the judges involved (a total of 83 of the 131), the *Journal* reported one or two lapses over the nine-year period. … But for those judges who had multiple violations, or professed ignorance of the ethics rule, there is a more serious problem of inadequate ethics training."[6]

That the appeals panel did not reverse Judge Jackson is unfortunate in that it magnifies the problem of, "a judiciary for various reasons already losing the trust of the American people, and … [that] the federal judiciary is to a large extent charged with policing itself—a task for which they are not well equipped".[7] That the Supreme Court did not grant certiorari in this case did not speak to the merits. And no court or jury has considered this case in light of the new facts published in 2021.

---

5 James V. Grimaldi, Coulter Jones, and Joe Palazzolo, *131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest*, WALL ST. J., Sept. 28, 2021, available at http://archive.md/TMyHa) .

6 *2021 Year-End Report on the Federal Judiciary*, Dec. 31, 2021, www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf

7 Tanner Stening, *Federal judges' financial conflicts add to mistrust of the judicial system*, Jan. 11, 2022, http://news.northeastern.edu/2022/01/11/federal-judges-financial-conflicts/ .

## CONCLUSION

Mr. Mock's Christmas Eve-2021 letter rejecting the Golzes' refinancing based on the Property's current appraised value included a payoff statement showing a balance of $345,246.05. ECF No. 224-2.  Following those instructions, Dr. Golz mailed a letter to Novad enclosing the payoff statement and a cashier's check dated April 21, 2022 in the amount of $355,000 payable to HUD. Exh. C.  On April 26, 2022, "L. McCoy" signed the proof of delivery for the letter and its enclosures (Exh. D), acknowledging in his own writing that he had received it at the address listed for Novad on the payoff statement, which provides for the return of funds in excess of the payoff amount.  The motion for approval of the notice of sale became moot on April 26, 2022 when the loan was paid in full.[8]

DATED the 3rd day of May, 2022.

                                           Respectfully submitted,

                                           William Golz, Ph.D.
                                           29714 North 152nd Way
                                           Scottsdale, Arizona 85262
                                           Phone/Facsimile: (480) 816-5019
                                           *Defendant, Pro Se*

---

8  Mr. Mock and agency counsel Kenneth Roland each received a copy of the letter to Novad with its enclosures by certified mail on April 28, 2022. Exh. E.